PILLSBURY WINTHROP SHAW PITTMAN LLP
William M. Sullivan, Jr.
Andrew M. Troop
Patrick J. Potter (*pro hac vice* motion pending)
Joshua I. Schlenger
1540 Broadway
New York, NY 10036
Telephone:  (212) 858-1000
Fax:  (212) 858-1500
E-mail: wsullivan@pillsburylaw.com

*Counsel for Defendants*
*Virginia Conservation Legacy Fund, Inc.*
*and ERP Compliant Fuels, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BLACK DIAMOND COMMERCIAL FINANCE, LLC, <br><br> *Plaintiff*, <br><br> -against- <br><br> VIRGINIA CONSERVATION LEGACY FUND, INC. and ERP COMPLIANT FUELS, LLC, <br><br> *Defendants*. | Adv. Proc. No. 15-01409 (MG) |
| VIRGINIA CONSERVATION LEGACY FUND, INC. and ERP COMPLIANT FUELS, LLC, <br><br> *Counterclaim-Plaintiffs*, <br><br> -against- <br><br> BLACK DIAMOND COMMERCIAL FINANCE, LLC, <br><br> *Counterclaim-Defendant*. | |

**ANSWER AND COUNTERCLAIM OF DEFENDANTS/COUNTERCLAIM-**
**PLAINTIFFS VIRGINIA CONSERVATION LEGACY FUND, INC. AND**
**ERP COMPLIANT FUELS, LLC**

Defendants Virginia Conservation Legacy Fund, Inc. ("VCLF") and ERP Compliant

Fuels, LLC ("ERP," and together with VCLF, "Defendants"), by and through their undersigned

counsel, hereby respond to plaintiff Black Diamond Commercial Finance, LLC's ("Plaintiff" or

"Black Diamond") Complaint, dated November 5, 2015,[1] and allege as follows.  To the extent

not expressly admitted herein, all allegations of the Complaint are denied.  Furthermore, the

section headings included herein are included only for purposes of clarity and organization, and

Defendants do not admit, but rather specifically deny, any factual or legal allegations in the

headings used in the Complaint.

### Nature of the Action

1.      Paragraph 1 of the Complaint is comprised, in whole or in part, of statements

constituting conclusions of law or characterizations of Plaintiff's legal contentions or the relief it

seeks, rather than allegations of fact to which a response is required.  To the extent that

Paragraph 1 may be deemed to contain allegations of fact, Defendants deny knowledge or

information sufficient to form a belief as to the truth of those allegations.

2.      Defendants admit the allegations in Paragraph 2 of the Complaint.

3.      Defendants deny the allegations in Paragraph 3 of the Complaint, except admit

that (a) VCLF sought third-party financing to consummate the transaction contemplated by the

VCLF APA (the "VCLF Transaction"); (b) VCLF's introduction to Black Diamond was

facilitated by Teneo, VCLF's financial advisor; and (c) Black Diamond is a Delaware limited

liability company that offers loans and other forms of financing to companies in multiple

industries.

4.      Paragraph 4 of the Complaint is comprised, in whole or in part, of conclusions of

law or characterizations of Plaintiff's legal contentions or the relief it seeks rather than

---

[1]   Unless otherwise noted, capitalized terms used herein have the meanings ascribed to them in the Complaint.

allegations of fact to which a response is required.  To the extent that Paragraph 4 may be

deemed to contain any allegations of fact, Defendants deny those allegations, except admit that,

on September 21, 2015, Black Diamond and Defendants entered into a Commitment Letter.

5.      Paragraph 5 of the Complaint is comprised, in whole or in part, of conclusions of

law or characterizations of Plaintiff's legal contentions or the relief it seeks rather than

allegations of fact to which a response is required.  To the extent that Paragraph 5 may be

deemed to contain any allegations of fact, Defendants deny those allegations, except admit that

VCLF did not agree to Black Diamond's e-mail dated October 23, 2015, which proposed

modifications to the terms of the Commitment Letter.

6.      Defendants deny the allegations in Paragraph 6 of the Complaint, except admit

that, on October 25, 2015, Defendants' counsel e-mailed a letter to Black Diamond's counsel

(the "First VCLF Letter"), which, among other things, denied that Defendants had ever agreed to

modifications of the Commitment Letter and requested that Black Diamond confirm by 6:30

p.m. eastern time that evening that it was prepared to close the transaction the following day.

7.      Defendants deny the allegations in Paragraph 7 of the Complaint, except admit

that Black Diamond's counsel sent Defendants' counsel an e-mail on October 25, 2015, in

response to the First VCLF Letter, in which Black Diamond's counsel confirmed, among other

things, that Black Diamond was not prepared to close the transaction the following day (the

"First Black Diamond E-mail").

8.      Defendants deny the allegations in Paragraph 8 of the Complaint, except admit

that:  (a) Defendants' counsel e-mailed to Black Diamond's counsel a letter, dated October 25,

2015, in response to the First Black Diamond E-mail (the "Second VCLF Letter"), in which

Defendants' counsel acknowledged, among other things, that Black Diamond confirmed that it

3

was not prepared to close the transaction the following day; (b) Black Diamond's counsel sent

Defendants' counsel an e-mail on October 25, 2015, in response to the Second VCLF Letter (the

"Second Black Diamond E-mail"), in which Black Diamond's counsel, among other things,

threatened to sue Defendants if they did not accept Black Diamond's proposed modifications to

the Commitment Letter; and (c) Defendants' counsel provided no further response to the Second

Black Diamond E-mail.

9.      Paragraph 9 of the Complaint is comprised, in whole or in part, of conclusions of

law or characterizations of Plaintiff's legal contentions or the relief it seeks rather than

allegations of fact to which a response is required.  To the extent that Paragraph 9 may be

deemed to contain any allegations of fact, Defendants deny those allegations.

10.     Paragraph 10 of the Complaint is comprised, in whole or in part, of conclusions of

law or characterizations of Plaintiff's legal contentions or the relief it seeks rather than

allegations of fact to which a response is required.  To the extent that Paragraph 10 may be

deemed to contain any allegations of fact, Defendants deny those allegations.

11.     Paragraph 11 of the Complaint is comprised, in whole or in part, of conclusions of

law or characterizations of Plaintiff's legal contentions or the relief it seeks rather than

allegations of fact to which a response is required.  To the extent that Paragraph 11 may be

deemed to contain any allegations of fact, Defendants deny those allegations.

### Parties

12.     Defendants deny knowledge or information sufficient to form a belief as to the

truth of the allegations in Paragraph 12 of the Complaint, except admit that Black Diamond is a

Delaware limited liability company that offers loans and other forms of financing to companies

in multiple industries.

13.     Defendants deny the allegations of Paragraph 13 of the Complaint, except admit that VCLF is a 501(c)(3) Virginia non-profit entity that seeks to conserve Virginia's natural resources to address climate change, educate the public, and provide public access and enjoyment of the outdoors.

14.     Defendants deny the allegations of Paragraph 14 of the Complaint, except admit that ERP is a Virginia limited liability corporation that is partially owned by VCLF, created for the purpose of consummating the VCLF Transaction.

## Jurisdiction and Venue

15.     Paragraph 15 of the Complaint is comprised, in whole or in part, of conclusions of law or characterizations of Plaintiff's legal contentions or the relief it seeks rather than allegations of fact to which a response is required.  To the extent that Paragraph 15 may be deemed to contain any allegations of fact, Defendants deny those allegations, except admit that: (a) New York was the location for the Patriot bankruptcy auction; (b) certain of the negotiations among Black Diamond, VCLF, and ERP regarding the Commitment Letter were conducted in New York; and (c) the Commitment Letter was executed in New York.

16.     Paragraph 16 of the Complaint is comprised, in whole or in part, of conclusions of law or characterizations of Plaintiff's legal contentions or the relief it seeks rather than allegations of fact to which a response is required.  To the extent that Paragraph 16 may be deemed to contain any allegations of fact, Defendants deny those allegations, except admit that none of the parties in this action resides in New York.

17.     Paragraph 17 of the Complaint is comprised, in whole or in part, of conclusions of law or characterizations of Plaintiff's legal contentions or the relief it seeks rather than allegations of fact to which a response is required.  To the extent that Paragraph 17 may be

deemed to contain any allegations of fact, Defendandants deny those allegations, except admit

that the Commitment Letter provides that it "shall be governed by, and construed in accordance

with, the laws of the State of New York."  Ex. B to Complaint (Commitment Letter), at 4.

### Factual Background

I.    **VCLF Enters Into an Asset Purchase Agreement with Patriot.**

18.    Defendants admit the allegations in Paragraph 18 of the Complaint.

19.    Defendants admit the allegations in Paragraph 19 of the Complaint.

20.    Defendants admit the allegations in Paragraph 20 of the Complaint, to the extent

that:  (a) the VCLF APA contains the language quoted in Paragraph 20 of the Complaint; and (b)

on August 17, 2015, Patriot submitted to the Bankruptcy Court its *Debtors' Amended Joint Plan

of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code*, which proposed the sale of

substantially all of Patriot's assets, including the assets that VCLF had agreed to purchase under

the VCLF APA.

21.    Defendants admit the allegations in Paragraph 21 of the Complaint.

II.    **VCLF Negotiates with Black Diamond to Obtain Financing.**

22.    Defendants deny the allegations in Paragraph 22 of the Complaint, except admit

that:  (a) VCLF sought third-party financing in connection with the VCLF Transaction; (b)

VCLF approached Black Diamond through VCLF's financial advisor Teneo; and (c) VCLF

agreed to meet with Black Diamond on September 13, 2015.

23.    Defendants admit the allegations in Paragraph 23 of the Complaint, except deny

knowledge or information sufficient to form a belief as to the truth of the allegation, "This was

important to Black Diamond because FMC had a relatively short remaining life."

24.    Defendants admit the allegations in Paragraph 24 of the Complaint, except deny

knowledge or information sufficient to form a belief as to the truth of the allegation, "Following

the meeting, Black Diamond's outside counsel, Schulte Roth & Zabel LLP ("Schulte"), began

drafting the Commitment Letter."

25.     Defendants deny the allegations in Paragraph 25 of the Complaint, except admit

that, on September 21, 2015, Black Diamond and Schulte met with VCLF at Teneo's offices in

New York City to complete the negotiation of the Commitment Letter and to discuss the Patriot

bankruptcy auction that was scheduled to begin later that day.

**III.     Black Diamond and VCLF Execute the Commitment Letter and Black Diamond
        Begins Due Diligence.**

26.     Defendants deny the allegations in Paragraph 26 of the Complaint, except admit

that Black Diamond, VCLF, and ERP executed the Commitment Letter on September 21, 2015,

at the offices of Patriot's outside counsel Kirkland & Ellis LLP ("Kirkland").

27.     Defendants admit the allegations in Paragraph 27 of the Complaint.

*A.     The Terms of the Commitment Letter*

28.     Paragraph 28 of the Complaint is comprised, in whole or in part, of conclusions of

law or characterizations of Plaintiff's legal contentions or the relief it seeks rather than

allegations of fact to which a response is required.  To the extent that Paragraph 28 may be

deemed to contain any allegations of fact, Defendandants deny those allegations, except admit

that the Commitment Letter provides:  (i) "Black Diamond, on behalf of its affiliates . . . hereby

commits to provide VCLF with asset based loans and/or term loans in the aggregate principal

amount of $25,000,000.00"; and (ii) "You have advised us that VCLF is desirous of obtain [*sic*]

asset based loans and/or term loans from one or more lenders for the purpose of (a) paying

certain fees, costs and expenses in connection with the consummation of the transactions

contemplated by the VCLF APA, and (b) providing VCLF with working capital from and after

the consummation of such transactions."  Ex. B to Complaint (Commitment Letter), at 1.

29.    Paragraph 29 of the Complaint is comprised, in whole or in part, of conclusions of law or characterizations of Plaintiff's legal contentions or the relief it seeks rather than allegations of fact to which a response is required.  To the extent that Paragraph 29 may be deemed to contain any allegations of fact, Defendandants deny those allegations, except admit that the quoted language in Paragraph 29 appears in the Commitment Letter.

30.    Paragraph 30 of the Complaint is comprised, in whole or in part, of conclusions of law or characterizations of Plaintiff's legal contentions or the relief it seeks rather than allegations of fact to which a response is required.  To the extent that Paragraph 30 may be deemed to contain any allegations of fact, Defendandants deny those allegations, except admit that the term sheet attached to the Commitment Letter as Exhibit A (the "Term Sheet") contains the following provisions:

    a.    "The ABL Loans and the Term Loans shall each bear interest at the fixed rate of 17% per annum, of which (a) 12% shall be paid in cash, and (b) 5% shall be 'paid in kind', *provided* that the interest rate applicable to the ABL Loans shall be reduced to 12%, paid in cash, from and after the date the Adjusted Borrowing Base becomes effective." *Id.*, Ex. A (Term Sheet), at 2-3.

    b.    "On the Closing Date, Borrowers shall create a new intermediate holding company to acquire a 75% interest in ERP Federal Mining Complex, LLC (the entity that owns (or will own) the assets and liabilities associated with the Federal Mine Complex; 'Federal Intermediate HoldCo').  Black Diamond shall receive equity in Federal Intermediate HoldCo representing a 40% interest on a fully diluted basis.

    "In addition, on the Closing Date Borrowers shall create a new entity to acquire the assets and liabilities associated with the workers' compensation programs currently administered by Patriot Coal Corporation and its affiliates ('HealthCo').  Black Diamond shall receive equity in HealthCo representing a 90% interest on a fully diluted basis." *Id.* at 5.

31.    Paragraph 31 of the Complaint is comprised, in whole or in part, of conclusions of law or characterizations of Plaintiff's legal contentions or the relief it seeks rather than

allegations of fact to which a response is required.  To the extent that Paragraph 31 may be

deemed to contain any allegations of fact, Defendandants deny those allegations, except admit

that the quoted language in Paragraph 31 appears in the Commitment Letter.

32.     Paragraph 32 of the Complaint is comprised, in whole or in part, of conclusions of

law or characterizations of Plaintiff's legal contentions or the relief it seeks rather than

allegations of fact to which a response is required.  To the extent that Paragraph 32 may be

deemed to contain any allegations of fact, Defendandants deny those allegations, except admit

that the Commitment Letter contains the following provision:

> VCLF has advised that pursuant to an order of the United States
> Bankruptcy Court for the Eastern District of Virginia, Richmond
> Division, VCLF is entitled to payment of a 'break up fee' and
> expense reimbursement from Patriot Coal Corporation under
> certain circumstances.  By its execution of this Commitment letter,
> VCLF agrees that in the event it is entitled to receive payment of
> the break up fee, it will remit fifty percent (50%) of the amounts so
> received to Black Diamond.  In addition, in the event VCLF is
> entitled to receive payment of any expense reimbursement, it will
> remit to Black Diamond its ratable share of the amount so
> received.  The payments to Black Diamond hereunder shall be
> consideration for Black Diamond's execution and delivery of this
> Commitment.

Ex. B to Complaint (Commitment Letter), at 2-3.

33.     Paragraph 33 of the Complaint is comprised, in whole or in part, of conclusions of

law or characterizations of Plaintiff's legal contentions or the relief it seeks rather than

allegations of fact to which a response is required.  To the extent that Paragraph 33 may be

deemed to contain any allegations of fact, Defendandants deny those allegations, except admit

that the Commitment Letter contains the following provision:  "The Commitment of the Lenders

will terminate at 5:00 p.m., New York City time, on October 8, 2015 if the Approval Order has

not been entered or, if timely entered, on October 23, 2015 if the Closing Date (as defined in the

VCLF APA) shall not have occurred prior to such time."  *Id.* at 2.

34.     Paragraph 34 of the Complaint is comprised, in whole or in part, of conclusions of law or characterizations of Plaintiff's legal contentions or the relief it seeks rather than allegations of fact to which a response is required.  To the extent that Paragraph 34 may be deemed to contain any allegations of fact, Defendandants deny those allegations, except admit that the Commitment Letter and Term Sheet contains the following provisions, respectively:

   a.   "Black Diamond Commercial Finance, LLC ('Black Diamond'), on behalf of certain of its affiliates, is pleased to advise VCLF of its willingness to provide an asset based loan facility and a term loan facility in the aggregate principal amount of $25,000,000.00 on the terms and conditions set forth in the 'Summary of Principal Terms and Conditions' attached hereto as Exhibit A (the 'Term Sheet'), and as otherwise set forth in the definitive Loan Facility Documentation (as defined in the Term Sheet)." *Id.* at 1.

   b.   "Closing of the Senior Secured Facilities and bonowings under the Senior Secured Facilities on the Closing Date, and each borrowing under the ABL Facility thereafter, will be subject to conditions that are usual and customary for facilities and transactions of this type, including completion of Lender's business and legal due diligence; the approval and consummation of a transaction for the Excluded Assets (as defined in the VCLF APA) in form and substance acceptable to Lender; accuracy of representations and warranties; no event of default; the entry of a final, non-appealable order of the United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division, authorizing and approving the VCLF APA; the simultaneous consummation of the transactions contemplated by the VCLF APA; the absence of any event or circumstance that has had or is reasonably likely to have a material adverse effect on VCLF; etc." *Id.*, Ex. A (Term Sheet), at 3.

*B.     The Patriot Bankruptcy Auction*

35.     Defendants admit the allegations in Paragraph 35 of the Complaint.

36.     Defendants admit the allegations in Paragraph 36 of the Complaint.

37.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 37 of the Complaint, except admit that, following execution of the Commitment Letter, VCLF won the Patriot bankruptcy auction and obtained required regulatory approval for the VCLF Transaction.

C.    *Black Diamond Begins Due Diligence*

38.    Defendants deny the allegations in Paragraph 38 of the Complaint, except admit that on September 24, 2015, Black Diamond employees and mining consultants met with VCLF, Teneo, and Patriot employees at the FMC in West Virginia to discuss the mine.

39.    Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 39 of the Complaint.

**IV.    Black Diamond and VCLF Agree to Amend the Commitment Letter.**

40.    Paragraph 40 of the Complaint is comprised, in whole or in part, of conclusions of law or characterizations of Plaintiff's legal contentions or the relief it seeks rather than allegations of fact to which a response is required.  To the extent that Paragraph 40 may be deemed to contain any allegations of fact, Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegation, "On or about October 6, 2015, Black Diamond learned that the Bankruptcy Court would be unable to approve the VCLF APA until after October 8"; admit that, on October 6, 2015, Black Diamond wrote to VCLF on October 6, 2015, to propose that the deadline for the Bankruptcy Court's approval of the VCLF APA be changed from October 8, 2015, to November 9, 2015, and that the deadline for closing of the VCLF APA be changed from October 23, 2015, to November 23, 2015; and otherwise deny the remaining allegations of Paragraph 40.

41.    Defendants admit the allegations in Paragraph 41 of the Complaint.

42.    Defendants admit the allegations in Paragraph 42 of the Complaint.

**V.    Black Diamond Discovers That Further Changes to the Commitment Letter Would Benefit Both Parties.**

43.    Defendants deny the allegations in Paragraph 43 of the Complaint, except admit that Teneo provided financial projections to Black Diamond on October 9, 2015.

44.     Defendants deny the allegations in Paragraph 44 of the Complaint.

45.     Defendants deny the allegations in Paragraph 45 of the Complaint, except admit that, on October 11, 2015, Teneo (on behalf of VCLF and ERP) sent Black Diamond a draft updated 13-week cash flow budget.

46.     Defendants deny, or otherwise lack information or belief sufficient to form a belief as to the truth of, the allegations in Paragraph 46 of the Complaint, except admit that:  (a) on October 15, 2015, Black Diamond, VCLF, and Teneo met at Black Diamond's offices to discuss the financial model; and (b) in the week following the meeting, VCLF provided Black Diamond with further information regarding the financial model.

47.     Defendants deny, or otherwise lack information or belief sufficient to form a belief as to the truth of, the allegations in Paragraph 47 of the Complaint, except admit that, on or about October 20, 2015, Black Diamond proposed modifications to the Commitment Letter, including moving from an asset-based loan structure to a receivables purchasing facility.

48.     Defendants deny the allegations in Paragraph 48 of the Complaint, except admit that:  (a) between October 20 and 22, 2015, Black Diamond proposed to VCLF various changes to the VCLF APA; and (b) on October 22, 2015, VCLF and Patriot agreed to some but not all of these proposed changes.

49.     Defendants deny, or otherwise lack information or belief sufficient to form a belief as to the truth of, the allegations in Paragraph 49 of the Complaint, except admit that:  (a) on October 23, 2015, at 7:01 a.m., Tom Clarke (VCLF) e-mailed Rich Ehrlich (Black Diamond) a document entitled "Federal Mining Complex PL and Balance Sheet Closing To CY2019 10-23-2015," and wrote in the cover e-mail, "You are right . . . we have an abundance of cash in Q4. I am going to write up a couple of thoughts on structure"; and (b) on October 23, 2015, at 7:04

a.m., Tom Clarke (VCLF) e-mailed John Fontana, Rich Ehrlich, Rashid Lattouf (Black Diamond) and Brendan Murphy (Teneo) an updated version of the document entitled "Federal Mining Complex PL and Balance Sheet Closing To CY2019 10-23-2015," and wrote in the cover e-mail, "Updated for 'Receivables Purchase Facility', Penn Virginia proposal, $5,000,000 Term Loan (2 fundings) and $5,000,000 equity proposal."

50.      Paragraph 50 of the Complaint is comprised, in whole or in part, of conclusions of law or characterizations of Plaintiff's legal contentions or the relief it seeks rather than allegations of fact to which a response is required.  To the extent that Paragraph 50 may be deemed to contain any allegations of fact, Defendants deny those allegations, except admit that, on October 23, 2015, at 10:24 a.m., Hugo Gravenhorst (Black Diamond) sent Tom Clarke (VCLF), copying various recipients, which, among other things, (a) noted, "We have completed our diligence," (b) proposed various "changes" to the Commitment Letter, and (c) asked VCLF to "approve and agree to these changes."

51.      Paragraph 51 of the Complaint is comprised, in whole or in part, of conclusions of law or characterizations of Plaintiff's legal contentions or the relief it seeks rather than allegations of fact to which a response is required.  To the extent that Paragraph 51 may be deemed to contain any allegations of fact, Defendants deny those allegations, except admit that, on October 23, 2015, Black Diamond sent three separate e-mails to VCLF at 10:24 a.m., 12:33 p.m., and 2:18 p.m., respectively.

52.      Paragraph 52 of the Complaint is comprised, in whole or in part, of conclusions of law or characterizations of Plaintiff's legal contentions or the relief it seeks rather than allegations of fact to which a response is required.  To the extent that Paragraph 51 may be deemed to contain any allegations of fact, Defendants deny those allegations, except admit that,

on October 23, 2015, Black Diamond and VCLF exchanged e-mails at 10:24 a.m., 12:33 p.m..

and 2:18 p.m.

## VI. VCLF Breaches the Commitment Letter.

53.     Defendants deny the allegations in Paragraph 53 of the Complaint, except admit

that VCLF refused to agree to the changes that Black Diamond had proposed to the Commitment

Letter on October 23, 2015.

54.     Defendants deny the allegations in Paragraph 54 of the Complaint, except admit

that VCLF's counsel Pillsbury e-mailed a letter to Black Diamond's counsel Schulte on October

25, 2015, at 3:42 p.m., and that a correct copy of that letter (without exhibits) is attached to the

Complaint at Exhibit H.

55.     Defendants deny the allegations in Paragraph 55 of the Complaint, except admit

that, on October 25, 2015, at 6:22 p.m., Black Diamond sent an e-mail to VCLF, a correct copy

of which is attached to the Complaint at Exhibit I, and that the language block quoted in

Paragraph 55 appeared in Black Diamond's e-mail.

56.     Paragraph 56 of the Complaint is comprised, in whole or in part, of conclusions of

law or characterizations of Plaintiff's legal contentions or the relief it seeks rather than

allegations of fact to which a response is required.  To the extent that Paragraph 56 may be

deemed to contain any allegations of fact, Defendants deny those allegations, except admit that,

on October 25, 2015, at 8:43 p.m., VCLF e-mailed Black Diamond a letter, a correct copy of

which is attached to the Complaint at Exhibit J, responding to Black Diamond's e-mail sent at

6:22 p.m. that day.

57.     Defendants deny the allegations in Paragraph 57 of the Complaint, except admit

that, on October 25, 2015, at 11:34 p.m., Black Diamond sent an e-mail to VCLF, a correct copy

of which is attached to the Complaint at Exhibit K, and that the language block quoted in

Paragraph 57 appeared in Black Diamond's e-mail.

58.    Defendants deny the allegations in Paragraph 58 of the Complaint.

59.    Paragraph 59 of the Complaint is comprised, in whole or in part, of conclusions of

law or characterizations of Plaintiff's legal contentions or the relief it seeks rather than

allegations of fact to which a response is required.  To the extent that Paragraph 59 may be

deemed to contain any allegations of fact, Defendants deny those allegations.

**CLAIM FOR RELIEF**
**(Breaches of Contract Against Virginia Conservation Legacy Fund, Inc.**
**and ERP Compliant Fuels, LLC)**

60.    Defendants incorporate herein by reference their responses to Paragraphs 1

though 59 above, as if fully set forth.

61.    Paragraph 61 of the Complaint is comprised, in whole or in part, of conclusions of

law or characterizations of Plaintiff's legal contentions or the relief it seeks rather than

allegations of fact to which a response is required.  To the extent that Paragraph 61 may be

deemed to contain any allegations of fact, Defendants deny those allegations, except admit that

the Commitment Letter, as executed September 21, 2015, was a valid and enforceable contract.

62.    Paragraph 62 of the Complaint is comprised, in whole or in part, of conclusions of

law or characterizations of Plaintiff's legal contentions or the relief it seeks rather than

allegations of fact to which a response is required.  To the extent that Paragraph 62 may be

deemed to contain any allegations of fact, Defendandants deny those allegations, except admit

that the Commitment Letter provides:  (i) "Black Diamond, on behalf of its affiliates . . . hereby

commits to provide VCLF with asset based loans and/or term loans in the aggregate principal

amount of $25,000,000.00"; and (ii) "You have advised us that VCLF is desirous of obtain [*sic*]

asset based loans and/or term loans from one or more lenders for the purpose of (a) paying

15

certain fees, costs and expenses in connection with the consummation of the transactions

contemplated by the VCLF APA, and (b) providing VCLF with working capital from and after

the consummation of such transactions." Ex. B to Complaint (Commitment Letter), at 1.

63.    Paragraph 63 of the Complaint is comprised, in whole or in part, of conclusions of

law or characterizations of Plaintiff's legal contentions or the relief it seeks rather than

allegations of fact to which a response is required.  To the extent that Paragraph 63 may be

deemed to contain any allegations of fact, Defendants deny those allegations, except admit that

the Commitment Letter contains the language block quoted in Paragraph 63.

64.    Defendants deny the allegations in Paragraph 64 of the Complaint.

65.    Paragraph 65 of the Complaint is comprised, in whole or in part, of conclusions of

law or characterizations of Plaintiff's legal contentions or the relief it seeks rather than

allegations of fact to which a response is required.  To the extent that Paragraph 65 may be

deemed to contain any allegations of fact, Defendants deny those allegations, except admit that

the Commitment Letter is a valid and enforceable contract.

66.    Defendants deny the allegations in Paragraph 66 of the Complaint.

67.    Paragraph 67 of the Complaint is comprised, in whole or in part, of conclusions of

law or characterizations of Plaintiff's legal contentions or the relief it seeks rather than

allegations of fact to which a response is required.  To the extent that Paragraph 67 may be

deemed to contain any allegations of fact, Defendants deny those allegations or otherwise lack

information or belief sufficient to form a belief as to the truth of those allegations.

## AFFIRMATIVE DEFENSES

Defendants set forth below their affirmative defenses.  Each defense is asserted as to all

claims against Defendants.  By setting forth these affirmative defenses, Defendants do not

assume the burden of proving any fact, issue, or element of a cause of action where such burden properly belongs to Plaintiff.

As separate and distinct affirmative defenses, Defendants allege as follows:

### FIRST AFFIRMATIVE DEFENSE

The federal and state courts of New York lack jurisdiction over the persons of the Defendants, with respect to the Complaint, pursuant to Sections 302(a) and 305(b) of the New York Civil Practice Law and Rules.

### SECOND AFFIRMATIVE DEFENSE

The Complaint fails to state a claim, in whole or in part, upon which relief can be granted.

### THIRD AFFIRMATIVE DEFENSE

The Complaint is barred, in whole or in part, by doctrines of laches, estoppel, ratification, waiver and/or unclean hands.

### FOURTH AFFIRMATIVE DEFENSE

Defendants' performance under the Commitment Letter was excused by, among other things, Plaintiff's repudiation and/or anticipatory breach of the Commitment Letter.

### FIFTH AFFIRMATIVE DEFENSE

The Complaint is barred, in whole or in part, for failure to mitigate, minimize, or avoid damages, if any.

### SIXTH AFFIRMATIVE DEFENSE

The Complaint is barred, in whole or in part, for failure to allege damages to Plaintiff.

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiff would be unjustly enriched by the relief sought in the Complaint.

## COUNTERCLAIM

Pursuant to Federal Rules of Bankruptcy Procedure 7013 and 7018, Counterclaim-Plaintiffs Virginia Conservation Legacy Fund, Inc. ("VCLF") and ERP Compliant Fuels, LLC ("ERP," and together with VCLF, "Counterclaim-Plaintiffs") assert this Counterclaim, seeking damages for breach of contract, against Counterclaim-Defendant Black Diamond Commercial Finance, LLC ("Black Diamond" or "Counterclaim-Defendant") and allege as follows:

## NATURE OF ACTION

1.      This is a civil action seeking damages for Black Diamond's breach of a contractual commitment to provide third-party financing to the Counterclaim-Plaintiffs (the "Commitment Letter") to enable them to purchase certain assets and liabilities (the "VCLF Transaction") from Patriot Coal Corporation and its affiliated debtors (collectively, "Patriot") in Patriot's jointly administered chapter 11 cases, currently pending in the United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division (the "Virginia Bankruptcy Court"), before the Honorable Keith L. Phillips under the caption *In re Patriot Coal Corporation,* et al., Case No. 15-32450 (KLP) (Bankr. E.D. Va.) (the "Patriot Bankruptcy Case").

2.      Black Diamond and the Counterclaim-Plaintiffs entered into the Commitment Letter on September 21, 2015.  Thereafter, through abusive negotiating tactics, Black Diamond attempted to coerce Counterclaim-Plaintiffs to agree to material changes to the Commitment Letter, which would have been to their detriment.  When Counterclaim Plaintiffs refused to accede to Black Diamond's onerous demands, Black Diamond repudiated the Commitment Letter.  As a result, Counterclaim-Plaintiffs closed the VCLF Transaction without any third-party financing.

3.      Black Diamond's repudiation of the Commitment Letter further exposes Counterclaim-Plaintiffs to damages claims by other parties in the Patriot Bankruptcy Case. Patriot's Chapter 11 Plan of Reorganization (the "Chapter 11 Plan"), which was confirmed on October 9, 2015, and became effective on October 26, 2015 (the "Effective Date"), provides that, to the extent Patriot and Counterclaim-Plaintiffs close on the VCLF Transaction without obtaining third-party financing—as has now occurred—Counterclaim Plaintiffs may be liable for payments to members of a so-called "Letter of Credit Facility" in the Patriot Bankruptcy Case, of which Black Diamond is a member.

4.      Upon information and belief, Black Diamond attempted to make material, onerous changes to the Commitment Letter after it had been executed knowing that Counterclaim-Plaintiffs would have no choice but to either accept Black Diamond's onerous changes or else close the VCLF Transaction without financing—and thereby become liable to the Letter of Credit Facility (including Black Diamond) for additional payments.

5.      Accordingly, Counterclaim-Plaintiffs bring this action to recover the damages caused them by Black Diamond's repudiation and anticipatory breach of the Commitment Letter.

## THE PARTIES

6.      Virginia Conservation Legacy Fund, Inc. is a 501(c)(3) Virginia non-profit entity that seeks to conserve Virginia's natural resources to address climate change, educate the public, and provide public access and enjoyment of the outdoors.[2]

7.      ERP Compliant Fuels, LLC is a Virginia limited liability corporation that is partially owned by VCLF, created for the purpose of consummating the VCLF Transaction with Patriot.

---

[2]  *See* Ex. A (Virginia Conservation Legacy Fund home page, http://www.conservationlegacyfund.org/.

8.      According to the Complaint, Black Diamond Commercial Finance, LLC is a

Delaware limited liability company that does business in Greenwich, Connecticut, and Lake

Forest, Illinois.  Black Diamond states that it offers loans and other credit to companies in a

broad range of industries.

**JURISDICTION AND VENUE**

9.      This Court has subject matter jurisdiction over the Counterclaim-Plaintiffs'

counterclaim pursuant to 28 U.S.C. §§ 1334(b) and 1452(a).

10.     Venue lies in the Virginia Bankruptcy Court pursuant to 28 U.S.C. §§ 1409(a) and

1412.

11.     Alternatively, venue lies in this District pursuant to 28 U.S.C. § 1452(a).

**FACTUAL BACKGROUND**

**A.      The Patriot Bankruptcy Case and the VCLF Transaction**

12.     On May 12, 2015 (the "Petition Date"), Patriot and its affiliates filed voluntary

Chapter 11 petitions commencing the Virginia Bankruptcy Case.  As debtor-in-possession,

Patriot continued its pre-petition business of, *inter alia*, operating coal mines and selling coal.

13.     VCLF is a not-for-profit organization devoted to environmental stewardship and

preservation.  Through its president and chief executive officer Tom Clarke, VCLF developed a

strategy in the Patriot Bankruptcy Case designed to acquire and operate or otherwise manage

certain assets not purchased by Blackhawk Mining LLC, in order to, among other things, (a)

engage in substantial environmental cleanup, including reclamation work for 145 permits and

water monitoring and treatment; (b) save at least 400 jobs at Patriot's Federal Mining Complex

in West Virginia; and (c) preserve and ensure satisfaction of worker's compensation claims,

including claims of former workers suffering from black lung disease.

20

14.     Towards this end, VCLF and Patriot entered into an Asset Purchase Agreement, dated August 16, 2015 (as amended, the "APA"), under which VCLF agreed to acquire certain assets and assume certain liabilities from Patriot (the "VCLF Transaction").  (A copy of the APA is attached hereto as Exhibit A.)  Pursuant to the APA, the parties thereto agreed to effectuate the VCLF Transaction, subject, among other things, to the authorization of the Virginia Bankruptcy Court and the confirmation of the Chapter 11 Plan.

15.     To effectuate the VCLF Transaction, VCLF and non-party Iron MANAGEMENT LLC co-founded ERP for the purpose of acquiring Patriot's assets in the VCLF Transaction. VCLF and Iron Management LLC each own 50% of ERP.

16.     Mr. Clarke provided deposition and confirmation hearing testimony in the Patriot Bankruptcy Case.  Among other things, he explained that he wanted to consummate the VCLF Transaction to "do the right thing."  Neither VCLF nor Mr. Clarke will be receiving any commission, fee, or payment as part of the VCLF Transaction.

17.     Between May and October 2015, Mr. Clarke regularly toiled 15-plus hour days, drove thousands of miles, and spent countless nights in hotels away from his family in an effort to negotiate and effect the VCLF Transaction.

18.     VCLF's counsel Pillsbury Winthrop Shaw Pittman LLP ("Pillsbury") and financial advisor Teneo Restructuring ("Teneo") worked similar schedules.  Pillsbury and Teneo support VCLF's vision and cause, and have underwritten VCLF's efforts to consummate the VCLF Transaction.  To date, both Pillsbury and Teneo have been only partially compensated for the services they provided VCLF in connection with the Patriot Bankruptcy Case.

**B.      Black Diamond Enters into a Commitment Letter with VCLF and ERP**

19.      To secure financing for the VCLF Transaction, VCLF and ERP entered into discussions with Black Diamond, which provides third-party financing to entities across multiple industries.  Black Diamond is also a member of the so-called "Letter of Credit Facility" in the Patriot Bankruptcy Case.  While the members of the Letter of Credit Facility are collectively represented in the Patriot Bankruptcy Case by the law firm of Skadden, Arps, Slate, Meagher & Flom LLP, Black Diamond continues to appear independently in the Patriot Bankruptcy Case through its counsel Schulte Roth & Zabel LLP ("Schulte").

20.      At approximately 9:00 a.m. on September 21, 2015, Black Diamond presented a draft commitment letter to VCLF and ERP (previously defined as the "Commitment Letter").  By noon on September 21, 2015, Black Diamond, VCLF, and ERP had signed the Commitment Letter.

21.      Under the Commitment Letter (a copy of which is attached hereto as Exhibit B), Black Diamond committed, *inter alia*, to provide VCLF with asset-based loans and/or term loans in the aggregate principal amount of $25,000,000.00 for the purpose of (a) paying certain fees, costs, and expenses in connection with the VCLF Transaction, and (b) providing VCLF with working capital from and after the consummation of the VCLF Transaction.  The Commitment Letter provided that any modifications thereto must be in writing and signed by the parties.

22.      The Commitment Letter did not require personal guaranties from any VCLF or ERP representatives, including Mr. Clarke.  Likewise, the Commitment Letter did not provide that VCLF's professionals (including Pillsbury and Teneo) would go unpaid for their services in connection with the VCLF Transaction and the Patriot Bankruptcy Case.

23.     The Commitment Letter provided that the confirmation order approving the

VCLF Transaction in the Patriot Bankruptcy Case must be entered by October 8, 2015 (the

"Confirmation Deadline").  The closing for the Commitment Letter was scheduled for October

23, 2015 (the "Closing Deadline").

24.     On September 22, 2015, the day after the Commitment Letter was signed,

Pillsbury attorney Patrick J. Potter e-mailed Black Diamond's counsel Adam Harris of Schulte to

inquire about the legal team that would be working on the transaction documents called for by

the Commitment Letter.  Mr. Harris responded:  "Need to get my team together.  Will let you

know."  (A copy of this e-mail correspondence is attached hereto as Exhibit C.)  Mr. Harris,

however, did not further respond to Mr. Potter, even after Mr. Potter e-mailed further inquiries to

Mr. Harris on September 24 and 26, 2015.

25.     On October 7, 2015, the day before the Confirmation Deadline, Black Diamond

and VCLF exchanged e-mails purporting to extend the Confirmation Deadline and the Closing

Deadline to November 9 and 23, 2015, respectively.  (A copy of this e-mail correspondence is

attached hereto as Exhibit D.)  These modifications to the Commitment Letter, however, were

never memorialized in a writing signed by all parties.

26.     On October 8, 2015, a hearing took place before the Virginia Bankruptcy Court,

at which Patriot's counsel announced that the VCLF Transaction would close, and Patriot's

Chapter 11 Plan would become effective, on October 26, 2015 (the "Effective Date").  At the

hearing, Patriot's counsel further represented that the Effective Date needed to occur by October

26, 2015, because Patriot expected to run out of money before the end of October and its lenders

had not agreed to extend additional funds that would be required to continue Patriot's operations.

Black Diamond's counsel, Mr. Harris of Schulte, participated in this hearing.

27.     Also on October 8, 2015, Black Diamond's counsel sent an e-mail to Patriot's

counsel, copying VCLF's counsel, requesting that Patriot include the following provision in its

Chapter 11 confirmation order (the "Confirmation Order"):

> The transactions contemplated by the VCLF Commitment Letter
> are hereby approved in all respects.  The indebtedness to be
> incurred by VCLF, and the Liens to be granted by VCLF, in
> connection with the transactions contemplated by the VCLF
> Commitment Letter, are valid, binding and enforceable, and
> granted as an inducement to the lenders thereunder to extend the
> credit contemplated thereby, and shall be, and hereby are, deemed
> not to constitute a fraudulent conveyance or fraudulent transfer,
> and shall not otherwise be subject to avoidance under the
> Bankruptcy Code or other applicable law.  In addition, the equity
> interests in Healthco (as defined in the VCLF Commitment Letter)
> to be issued to the lender under the VCLF Commitment Letter are
> issued as a further inducement to the lender to extend the credit
> contemplated thereby, shall be deemed to have been issued for fair
> consideration and reasonably equivalent value, and are deemed not
> to constitute a fraudulent conveyance or fraudulent transfer, and
> shall not otherwise be subject to avoidance under the Bankruptcy
> Code or other applicable law.

(A copy of this e-mail is attached hereto as Exhibit E.)  Patriot agreed to include Black

Diamond's proposed language (the "Proposed Language") in the Confirmation Order.

28.     On October 9, 2015, the Virginia Bankruptcy Court entered an order confirming

Patriot's Chapter 11 Plan (previously defined as the "Confirmation Order," a copy of which,

together with the Chapter 11 Plan, is attached hereto as Exhibit F).  The Confirmation Order

approved the APA, noting, *inter alia*, that "[a]pproval of the VCLF APA, and the prompt

consummation of the VCLF Transaction contemplated thereby, is in the best interests of the

Debtors and their Estates."  Similarly, with respect to the Commitment Letter, paragraph 126 of

the Confirmation Order incorporated Black Diamond's Proposed Language word for word.  The

Chapter 11 Plan, in turn, contained language to the effect that the members of the Letter of

Credit Facility, including Black Diamond, could be entitled to distributions if the Commitment

Letter was not consummated by its closing date.  Ex. F (Chapter 11 Plan), art. I, § A, ¶ 174; *id.*

art. IV § H.

### C.    Black Diamond Attempts to Impose Modifications to the Commitment Letter on VCLF

29.    After not hearing from Black Diamond's counsel for several weeks, VCLF's

counsel Jonathan Whitney (Pillsbury) sent an e-mail to Black Diamond's counsel Mr. Harris

(Schulte) on October 9, 2015 (a copy of which is attached hereto as Exhibit G), asking for a time

to "touch base and discuss the process and timeline" for preparing the documentation for the

transaction documents called for by the Commitment Letter.

30.    Subsequently, VCLF's counsel Mr. Potter (Pillsbury) requested that Mr. Harris

(Schulte) participate in a conference call on October 13, 2015, to discuss the Commitment Letter

documentation.  During that call, Mr. Harris stated that Black Diamond had not authorized him

and Schulte to begin working on the documents required by the Commitment Letter, even though

the Closing Deadline was ten days away.

31.    The Schulte and Pillsbury teams did not have their "kick off" call until Friday

morning, October 15, 2015, eight days prior to the Closing Deadline.  During this call, no

documents to evidence the transaction described in the Commitment Letter were discussed,

drafted, or sent to VCLF or Pillsbury for review.  Schulte was likewise unable to commit to

deadlines by which it could provide such documentation or VCLF or Pillsbury.

32.    Instead of working on documents, Black Diamond required that VCLF's

principals and Teneo spend several days in Black Diamond's offices focusing on business terms,

running projections, and similar issues.  On Tuesday, October 20, 2015, Black Diamond

informed VCLF that it would not provide VCLF and ERP with the funding called for by the

Commitment Letter (as executed September 21, 2015), unless VCLF and Patriot made material

changes to the August 16, 2015 APA.  VCLF, confronted with both the Closing Deadline and the

Effective Date less than a week away, had no choice but to attempt to accommodate Black

Diamond's demand.  VCLF and Pillsbury diligently modified the APA on October 20, 2015.

However, the changes were unsatisfactory to Black Diamond, which continued to review the

document well into the evening on Wednesday, October 21, 2015. As a result, VCLF was unable

to propose the modified APA to Patriot until approximately midnight on October 21, 2015.

33.    On Thursday, October 22, 2015, VCLF's and Patriot's respective principals met

to discuss final business terms for the APA, many of which satisfied Black Diamond's (and

VCLF's) requirements.  During this meeting, Patriot emphasized to VCLF that the VCLF

Transaction needed to close by the Effective Date, and further intimated that there could be

damage claims against VCLF if VCLF did not close by then.

34.    The next morning, Friday, October 23, 2015, at approximately 10:00 a.m.,

Pillsbury, VCLF, Teneo, Black Diamond, and Schulte participated in a conference call to discuss

the final provisions of the APA.  Following this call, Pillsbury's David Baxter wrote up an email

for joint approval by Black Diamond and VCLF to send to Patriot, and circulated the same at

approximately 11:00 a.m.  (A copy of Mr. Baxter's e-mail is attached hereto as Exhibit H.)

Neither Black Diamond nor Schulte ever responded to Mr. Baxter's email.

35.    Instead, and without any notice to Pillsbury or Teneo, between 10:24 a.m., and

2:18 p.m. on October 23, 2015, Hugo Gravenhorst of Black Diamond—having concluded not to

perform under the Commitment Letter—sent Mr. Clarke four separate and different emails

proposing modifications to the Commitment Letter.  (Mr. Gravenhorst's e-mails are attached

hereto as Exhibit I.)  On each of these e-mails, Mr. Gravenhorst copied attorneys from Schulte,

including Mr. Harris, who was simultaneously communicating with Pillsbury and Teneo

regarding changes to the APA, but never informed them that Black Diamond was, at that very moment, also trying to impose modifications to the Commitment Letter on VCLF and ERP. Black Diamond's proposed changes would have (a) required Mr. Clarke to become a personal guarantor on Black Diamond's loans to VCLF and ERP; (b) reconfigured the proposed lending facility and reduce the total financing by at least $5 million; (c) prohibited the full and timely satisfaction of the amounts owed to the professionals (Pillsbury and Teneo) for services rendered in connection with the VCLF Transaction and Patriot Bankruptcy Case; (d) allowed Black Diamond to assume control of the business if VCLF and ERP would be in default for even one day; and (e) required VCLF and ERP to covenant to minimum asset and liquidity requirements upon which they would have been in default immediately.  In each e-mail, Mr. Gravenhorst requested of Mr. Clarke:  "Please confirm by email that you approve and agree to these changes."  Mr. Clarke never responded to any of these e-mails.

36.     Black Diamond's proposed modifications to the Commitment Letter were material changes entailing a financing structure that was fundamentally different and entirely inconsistent with the original Commitment Letter.  Black Diamond's proposed modifications were also materially worse for VCLF than the terms in the original Commitment Letter.  By demanding these changes, Black Diamond was repudiating or anticipatorily breaching its obligations under the Commitment Letter, as executed September 21, 2015.

37.     By midnight on the Closing Deadline, October 23, 2015, VCLF had still not received any proposed documentation from Black Diamond, as called for in the Commitment Letter.

38.     On October 25, 2015, the day before the Effective Date, VCLF's counsel wrote a letter to Black Diamond's counsel (attached hereto as Exhibit J), which recounted the above

history; noted that Black Diamond's demand for modifications to the Commitment Letter, and

failure to provide VCLF with any documentation, constituted an anticipatory breach or

repudiation of the Commitment Letter; and requested that Black Diamond advise VCLF no later

than 6:30 p.m. that evening whether Black Diamond intended to close the following day,

pursuant to the Commitment Letter.

39.    At 6:22 p.m. on October 25, 2015, Black Diamond's counsel responded to

VCLF's counsel via e-mail (attached hereto as Exhibit K), confirming, among other things, that

Black Diamond "cannot close tomorrow."  Black Diamond's counsel further represented that

Black Diamond was unwilling to perform under the Commitment Letter, as executed September

21, 2015, and was only willing to agree to provide funding to VCLF and ERP on the proposed

new terms set forth in Mr. Gravenhorst's four e-mails on October 23, 2015.

40.    At 8:43 p.m. on October 25, 2015, VCLF's counsel e-mailed a further letter to

Black Diamond's counsel (attached hereto as Exhibit L), acknowledging that Black Diamond

"confirmed that [it] is not prepared to close tomorrow on the transaction described in the . . .

Commitment Letter between VCLF and Black Diamond."  VCLF's counsel further noted that, in

light of Black Diamond's confirmation that it was "not prepared to close on the terms in the . . .

Commitment Letter," as well as other reasons, "the September 21, 2015 Commitment Letter is of

no further force or effect . . . [and] any obligations of VCLF under the September 21, 2015 have

terminated."  Ex. L, at 1-2.

41.    In response, Black Diamond's counsel sent a further e-mail to VCLF's counsel at

11:34 p.m. on October 25, 2015 (attached hereto as Exhibit M), in which he, among other things,

threatened that Black Diamond would sue VCLF if it used an alternative source of financing to

facilitate the VCLF Transaction.

42.    As scheduled, Patriot's Chapter 11 Plan became effective on October 26, 2015. However, VCLF closed on the VCLF Transaction with Patriot without the benefit of any third-party financing, which VCLF continues to seek.  As a result, VCLF has been forced to operate the coal mines purchased from Patriot without the liquidity and access to liquidity that VCLF would have enjoyed had Black Diamond provided the financing required by the Commitment Letter.

43.    On October 26, 2015, Black Diamond commenced the present action against VCLF and ERP in the Supreme Court for the State of New York, County of New York.  Black Diamond commenced this action by filing a summons with notice, rather than a summons with a full complaint.

**COUNT I**

**BREACH OF CONTRACT**

**(Against Counterclaim Defendant)**

44.    Counterclaim Plaintiffs incorporate by reference all allegations contained in paragraph 1 through 43 of this Counterclaim as though fully set forth herein.

45.    Black Diamond entered into a Commitment Letter with VCLF and ERP on September 21, 2015.  The closing of the Commitment Letter was scheduled for October 26, 2015.

46.    Under the Commitment Letter, Black Diamond committed, in exchange for consideration from VCLF and ERP, to, *inter alia*, provide VCLF with asset-based loans and/or term loans in the aggregate principal amount of $25,000,000.00 for the purpose of (a) paying certain fees, costs, and expenses in connection with the VCLF Transaction, and (b) providing VCLF with working capital from and after the consummation of the VCLF Transaction.

47.     The Commitment Letter provided that any modifications thereto must be in writing and signed by the parties.

48.     The Commitment Letter is a valid and enforceable contract.  The parties never agreed to any modifications to the Commitment Letter in a signed writing.

49.     Black Diamond never prepared the documentation required by the Commitment Letter.  Instead, on October 23, 2015, the date scheduled for the closing of the transaction contemplated by the Commitment Letter, Black Diamond demanded material modifications to the Commitment Letter—to the detriment of VCLF, ERP, and their principals—and indicated that it would not perform its obligations under the Commitment Letter unless these modifications were accepted.

50.     Black Diamond's actions constitute an anticipatory breach and repudiation of the Commitment Letter.

51.     VCLF and ERP performed and discharged all of their obligations under the Commitment Letter.

52.     As a result of Black Diamond's breach of the Commitment Letter, VCLF was forced to close on the VCLF Transaction without any third-party financing.

53.     VCLF has been, and continues to be damaged as a result of Black Diamond's breach of the Commitment Letter.  In particular, VCLF has been forced to operate the coal mines purchased from Patriot without the liquidity and access to liquidity that VCLF would have enjoyed had Black Diamond provided the financing required by the Commitment Letter.

## PRAYER FOR RELIEF

WHEREFORE, for the reasons stated above, Counterclaim Plaintiffs respectfully request

that this Court enter judgment on their behalf granting relief as follows:

(i)      an award of damages in an amount to be determined at trial, incurred as a result of

Counterclaim Defendants' breach of contract; and

(ii)     an award of Counterclaim Plaintiffs' costs, attorneys' fees, and such other and

further relief as the Court deems just and proper.

Dated: December 4, 2015                    PILLSBURY WINTHROP SHAW PITTMAN LLP
       New York, New York

                                           By:___/s/ William M. Sullivan, Jr._____
                                                 William M. Sullivan, Jr.
                                                 Andrew M. Troop
                                                 Patrick J. Potter (*pro hac vice* motion pending)
                                                 Joshua I. Schlenger

                                                 1540 Broadway
                                                 New York, NY 10036
                                                 Telephone:  (212) 858-1000
                                                 E-mail:  wsullivan@pillsburylaw.com
                                                        andrew.troop@pillsburylaw.com
                                                        patrick.potter@pillsburylaw.com
                                                        joshua.schlenger@pillsburylaw.com

                                                 *Counsel for Defendants/Counterclaim-Plaintiffs*
                                                 *Virginia Conservation Legacy Fund, Inc.*
                                                 *and ERP Compliant Fuels, LLC*