Patrick J. Potter (VSB No. 39766)
PILLSBURY WINTHROP SHAW PITTMAN LLP
1650 Tysons Boulevard, Suite 1400
McLean, Virginia 22102-4856
Telephone:  (703) 770-7900
Facsimile:  (703) 770-7901
E-mail:  patrick.potter@pillsburylaw.com

- and -

Andrew M. Troop (admitted *pro hac vice*)
Samuel S. Cavior (admitted *pro hac vice*)
Joshua I. Schlenger (admitted *pro hac vice*)
PILLSBURY WINTHROP SHAW PITTMAN LLP
1540 Broadway
New York, New York 10036-4039
Telephone:  (212) 858-1000
Facsimile:  (212) 858-1500
E-mail:  andrew.troop@pillsburylaw.com

William M. Sullivan, Jr. (admitted *pro hac vice*)
PILLSBURY WINTHROP SHAW
PITTMAN LLP
1200 Seventeenth Street, NW
Washington, DC 20036-3006
Telephone:  (202) 663-8027
Facsimile:  (202) 663-8007
E-mail:  wsullivan@pillsburylaw.com

*Counsel to Virginia Conservation Legacy Fund, Inc.
and ERP Compliant Fuels, LLC*

## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| PATRIOT COAL CORPORATION, *et al.*, | Case No. 15-32450 (KLP) |
| *Debtors*. | Jointly Administered |
| BLACK DIAMOND COMMERCIAL FINANCE, LLC, | Adv. Proc. No. 16-03105 (KLP) |
| *Plaintiff*, | |
| -against- | |
| VIRGINIA CONSERVATION LEGACY FUND, INC. and ERP COMPLIANT FUELS, LLC, | |
| *Defendants*. | |

VIRGINIA CONSERVATION LEGACY FUND, INC.
and ERP COMPLIANT FUELS, LLC,

                                    *Counterclaim-Plaintiffs*,

             -against-

BLACK DIAMOND COMMERCIAL FINANCE, LLC,

                                    *Counterclaim-Defendant*.

**VCLF'S MEMORANDUM OF LAW IN OPPOSITION TO BLACK DIAMOND'S
RENEWED MOTION TO REMAND OR,
ALTERNATIVELY, FOR DISCRETIONARY ABSTENTION**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................1

FACTUAL BACKGROUND ..................................................................................5

    A.    VCLF and Black Diamond Enter into the Commitment Letter to Facilitate the Chapter 11 Plan in the Patriot Chapter 11 Case..................................5

    B.    Black Diamond Repudiates the Commitment Letter on the Eve of the Closing of the VCLF Transaction..................................9

    C.    Commencement of Action in New York State Court ...........................................10

    D.    Removal to the New York Bankruptcy Court......................................................11

    E.    The Letter of Credit Facility Threatens to Invoke the Federal Mine Profit Interest Provisions of the Plan ..................................12

    F.    The New York Bankruptcy Court Transfers this Action to this Court.................14

    G.    Proceedings in this Court ..................................................................................14

ARGUMENT .........................................................................................................15

I.    THIS CASE PROPERLY BELONGS IN THIS COURT ...............................................15

II.    ONLY THE RAREST, MOST EXCEPTIONAL CIRCUMSTANCES JUSTIFY EQUITABLE REMAND AND DISCRETIONARY ABSTENTION .............................16

III.    THE FACTORS GOVERNING EQUITABLE REMAND AND DISCRETIONARY ABSTENTION ARE NOT MET....................................................18

    A.    This Case is Properly Before this Court and the Court Has a Duty to Resolve It (*Bay Vista* Factor 1)..................................18

    B.    This Adversary Proceeding Implicates and Impacts the Plan and the Administration of the Patriot Chapter 11 Case (*Bay Vista* Factors 4 and 5) .........20

    C.    Remand or Abstention Would Waste Judicial Resources and Create the Possibility of Inconsistent Results (*Bay Vista* Factors 3 and 10)..........................22

    D.    The Convenience of the Parties Supports Maintaining Jurisdiction in this Court (*Bay Vista* Factors 8 and 9).........................................25

i

E.      The Fact that this Action Involves State Law Issues and Non-Debtor
        Parties is of No Consequence Given the Circumstances of this Case (*Bay
        Vista* Factors 2, 6, 7 and 11) ..................................................................................28

F.      No Jury Trial Is Implicated (*Bay Vista* Factor 12)................................................33

CONCLUSION...................................................................................................................34

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*A.H. Robins Co. v. Dalkon Shield Claimants Trust*,
   86 F.3d 364 (4th Cir. 1996) ...................................................................................19

*Abner v. Mate Creek Loading, Inc. (In re Mid-Atlantic Res. Corp.)*,
   283 B.R. 176 (S.D. W. Va. 2002) ............................................................... 18, 29, 30

*Blanton v. IMN Fin. Corp.*,
   260 B.R. 257 (M.D.N.C. 2001) ......................................................................... 19, 30

*Commonwealth of Virginia ex rel. Integra Rec LLC v. Countrywide Sec. Corp.*,
   No. 3:14CV706, 2015 WL 3540473 (E.D. Va. June 3, 2015)................................. 29

*Grausz v. Englander*,
   321 F.3d 467 (4th Cir. 2003) ................................................................................ 19

*Hilton Worldwide, Inc. v. Caesars Entm't Corp.*,
   532 B.R. 259 (E.D. Va. 2015) .............................................................................. 32

*In re Butterfield*,
   339 B.R. 366 (Bankr. E.D. Va. 2004)............................................................... 16, 30

*In re Donoho*,
   402 B.R. 687 (Bankr. E.D. Va. 2009)................................................................... 31

*In re Morgantown Excavators, Inc.*,
   Adv. Proc. No. 13-24, 2013 WL 4829165 (N.D. W. Va. Sept. 9, 2013)..................... 17, 29, 30

*In re Rabex Amuru of N. Carolina, Inc.*,
   198 B.R. 898 (Bankr. M.D.N.C. 1996)............................................................. 27, 28

*In re Tilley*,
   42 B.R. 827 (Bankr. E.D. Va. 1984)................................................................. 23, 31

*In re Walters*,
   Civ. Action No. 5:12–cv–01174, 2013 WL 5505055 (S.D. W. Va. Oct. 2, 2013).................. 31

*In re Willett*,
   No. 95-13066-AM, 1996 WL 910907 (Bankr. E.D. Va. May 9, 1996) ...................... 23, 31, 32

*In re Yates*,
   Nos. 01–32341–T, 02–3053–T, 2002 WL 32140187 (Bankr. E.D. Va. Aug. 16, 2002)..........31

*Kepley Broscious, PLC v. Ahearn (In re Ahearn)*,
   318 B.R. 638 (Bankr. E.D. Va. 2003)................................................................ 17, 30

*Klein v. Vision Lab Telecommc'ns, Inc.*,
   399 F. Supp. 2d 528 (S.D.N.Y. 2005) ................................................................ 25

*Margan v. Chemetron Fire Sys., Inc.*,
   954 F. Supp. 1127 (E.D. Va. 1997) ................................................................ 18

*Massey Energy Co. v. W. Virginia Consumers for Justice*,
   351 B.R. 348 (E.D. Va. 2006) ................................................................ 23, 31

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983)................................................................ 16

*Shaia v. Brown (In re Brown)*,
   Nos. 95-34782-T, 96-3125, 1996 WL 757100 (Bankr. E.D. Va. Dec. 5, 1996) ..................... 30

*Smith v. McLeskey (In re Bay Vista of Va., Inc.)*,
   394 B.R. 820 (Bankr. E.D. Va. 2008)................................................................ *passim*

*Stanworth v. Bank of Am., N.A. (In re Stanworth)*,
   543 B.R. 760 (Bankr. E.D. Va. 2016)................................................................ 33

*Virginia ex rel. Integra REC LLC v. Countrywide Sec. Corp.*,
   92 F. Supp. 3d 469 (E.D. Va. 2015) ................................................................ 29

## Statutes and Codes

United States Code
   Title 28, section 157................................................................ 11, 25
   Title 28, section 158................................................................ 25
   Title 28, section 1331................................................................ 16, 17
   Title 28, section 1334................................................................ 3, 14, 16, 18
   Title 28, section 1409................................................................ 18
   Title 28, section 1446................................................................ 11
   Title 28, section 1452................................................................ 16, 17, 25

## Rules and Regulations

Federal Rules of Bankruptcy Procedure
   Rule 9027................................................................ 11

New York Civil Practice Law and Rules
   Rule 305................................................................ 10

**Other Authorities**

Wright & Miller, 14C Fed. Prac. & Proc. Juris. § 3734 (4th ed.)................................................ 18

Defendants/Counterclaim-Plaintiffs Virginia Conservation Legacy Fund, Inc. and ERP Compliant Fuels, LLC (collectively, "VCLF"), by their undersigned attorneys, respectfully submit this Memorandum of Law in opposition to Plaintiff/Counterclaim-Defendant Black Diamond Commercial Finance, LLC's ("Black Diamond") Renewed Motion to Remand or, Alternatively, for Discretionary Abstention (ECF Doc. No. 12) (the "Renewed Remand Motion").

## PRELIMINARY STATEMENT

At the core of this adversary proceeding is a straightforward question:  Did Black Diamond renege on its promise to finance VCLF's assumption of more than $400 million of Patriot's[1] environmental and employee-related liabilities and VCLF's acquisition of the two Patriot mines with union contracts as part of Patriot's confirmed liquidating plan of reorganization, as required by the express terms of its Commitment Letter with VCLF?

Although Black Diamond contends that it did not breach the Commitment Letter, and that instead VCLF did, neither VCLF nor Black Diamond contests that:

- VCLF is a Virginia-based non-profit dedicated, among other things, to reducing the growth of carbon emissions and cleaning up land and water contaminated as the result of coal mining.

- VCLF's assumption of environmental and employee-related liabilities and its acquisition of two union mines from Patriot were indispensable to Patriot's ability to confirm its liquidating plan of reorganization (the "Plan").

- The Commitment Letter was only contemplated by VCLF and Black Diamond as part of Patriot's Chapter 11 Case to facilitate confirmation of the Plan.

- The Commitment Letter was executed prior to the confirmation hearing on Patriot's Plan.

---

[1]  "Patriot" means Patriot Coal Corporation and its affiliates that were the debtors and debtors-in-possession in the above-captioned chapter 11 case (the "Chapter 11 Case").

1

- The Commitment Letter was included in Patriot's "Amended Plan Supplement," distributed to Patriot's creditors and made a part of the evidentiary record upon which this Court relied in entering an order confirming Patriot's Plan (the "Confirmation Order").

- Black Diamond, which has sufficient resources to litigate in this Court and, in fact, has participated in Patriot's Chapter 11 Case from its start, insisted that this Bankruptcy Court approve the Commitment Letter. Black Diamond provided the language approving the Commitment Letter that it wanted for inclusion in the Confirmation Order (as well as other comments to the Confirmation Order), and that language was included in the Confirmation Order. Black Diamond's bankruptcy counsel also participated in and represented Black Diamond at the Patriot confirmation hearing, as he had in many prior Patriot hearings before this Court.

- Prior to the Plan's Effective Date, VCLF gave notice that Black Diamond had anticipatorily breached the Commitment Letter by adding materially adverse conditions beyond those set forth in the Commitment Letter as requirements for funding, such as a requirement that VCLF's principals provide personal guaranties.

- Black Diamond rushed to New York State Court on the eve of the Plan becoming effective and commenced an action for damages against VCLF by way of a summary notice proceeding generally reserved for circumstances other than those involved in this matter, in order to avoid having this dispute resolved by this Court.

- Under the Confirmation Order and the Plan, this Court expressly retained jurisdiction over pre-Effective Date disputes involving any document entered into by VCLF in connection with its proposed transactions involving Patriot, such as the Commitment Letter.

- The resolution of this adversary proceeding could impact distributions to other Patriot creditors under the terms of the Plan.

- The dispute does not involve unique, unsettled principles of New York law, which governs the Commitment Letter.

Based on these uncontested facts, not one, but two federal courts, the United States

District Court for the Southern District of New York (the "New York District Court") and the

United States Bankruptcy Court for the Southern District of New York (the "New York

Bankruptcy Court"), have concluded that this dispute (i) "arises in," or at the very least is

"related to" (as those words are used in 28 U.S.C. §1334(b)), the Patriot Chapter 11 Case and

falls within a Bankruptcy Court's jurisdiction, and (ii) should be decided by a Bankruptcy Court.

Further, the New York Bankruptcy Court concluded that this adversary proceeding

properly belongs in this Court.  As the New York Bankruptcy Court held in its April 25, 2016

memorandum opinion and order transferring this adversary proceeding to this Court as its proper

venue (the "Transfer Order"):[2]  "the outcome of this case affects the interpretation,

implementation, consummation, or administration of the confirmed Plan," Transfer Order, at 8;

and VCLF proved, by a preponderance of the evidence, that "[e]fficiency and the interests of

justice"—as well as the "convenience of the parties"—"support transfer to [this Court]."  *Id.* at 9

& n.1.

Admittedly, when transferring this proceeding to this Court, the New York Bankruptcy

Court declined to rule on Black Diamond's motion for equitable remand or discretionary

abstention.  Instead, it deferred to this Court to decide these discretionary questions should Black

Diamond press them again.  There is, however, no reason for this Court to exercise discretion to

send this adversary proceeding to New York State Court.  The facts and law compel the

conclusion that this adversary proceeding should stay in this Court.  This Court has, and has

retained, jurisdiction over the dispute; the Commitment Letter was only entered into as part of

Patriot's Chapter 11 Case; the dispute arose in Patriot's Chapter 11 Case and prior to the

Effective Date of the Plan; resolution of the dispute requires interpretation of the Plan that this

Court confirmed and the Commitment Letter this Court approved; resolution of the dispute could

affect the administration of this Chapter 11 Case and the implementation of Patriot's Plan

including creditor recoveries; and, finally, efficiency, the interests of justice, and the convenience

---

[2]  A copy of the Transfer Order is attached as Exhibit L to the Declaration of C. William Phillips, dated May 10, 2016, ECF Doc. No. 14 ("Phillips Declaration" or "Phillips Decl.").

of the parties are all furthered by resolution of this dispute in this Court rather than State Court in New York.

It is important to note that Black Diamond has not introduced a single fact or legal argument to support its contention that this Court should exercise its discretion to remand or abstain that was not fully litigated before, and rejected by, the New York Bankruptcy Court.  For example, Black Diamond argues that this Court should send the case back to New York State Court because this case will have "[n]o [i]mpact [u]pon the [b]ankruptcy [p]roceeding,"[3] but the New York Bankruptcy Court has specifically (and correctly) held to the contrary finding among other things, that the interpretation and implementation of the Plan are directly implicated by this adversary proceeding.  Similarly, Black Diamond argues that the interest of justice will be served by having this dispute resolved in New York State Court, but the New York Bankruptcy Court has held (again correctly) to the contrary, finding that VCLF proved by a preponderance of the evidence that the interest of justice is served by this Court deciding the adversary proceeding. Further, Black Diamond argues that this Court should abstain because the dispute involves two non-debtor parties.  Again, the New York Bankruptcy Court rejected this argument, holding (once again correctly) that the "close nexus" between this adversary proceeding, on the one hand, and the Plan and the Patriot Chapter 11 Case, on the other, confers subject-matter jurisdiction over this dispute in this Court.  *See* Transfer Order, at 5-8.

In short, this Court should keep jurisdiction, as the facts and law support the conclusion that this Court is the proper court to preside over this adversary proceeding.  In contrast, Black Diamond has failed to demonstrate any cause for equitable remand or discretionary abstention, or

---

[3]  *See* Plaintiff's Memorandum of Law in Support of Plaintiff's Renewed Motion to Remand or, Alternatively, for Discretionary Abstention (ECF Doc. No. 13) ("Pl.'s Mem."), at 9.

4

any basis to reverse the reasoned conclusions of the New York Bankruptcy Court that

specifically rejected the very points Black Diamond advances in support of its motion for

equitable remand or discretionary abstention.  As a result, this Court should deny Black

Diamond's motion to send this dispute to New York State Court, and find that the adversary

proceeding is now properly venued before it.

## FACTUAL BACKGROUND

### A.    VCLF and Black Diamond Enter into the Commitment Letter to Facilitate the Chapter 11 Plan in the Patriot Chapter 11 Case

On May 12, 2015 (the "Petition Date"), Patriot commenced the Chapter 11 Case.  As

debtor-in-possession, Patriot continued its pre-petition business of, *inter alia*, operating coal

mines and selling coal.  *See* Phillips Decl., Ex. H (VCLF's Answer and Counterclaim, dated

December 4, 2015) (the "Answer") ¶ 19.

VCLF is a 501(c)(3) Virginia non-profit entity that seeks to conserve Virginia's natural

resources to protect the environment, educate the public, and provide public access and

enjoyment of the outdoors.  *Id.* ¶ 6.  As an integral and indispensable part of Patriot's chapter 11

liquidation, VCLF and Patriot entered into an Asset Purchase Agreement, dated August 16, 2015

(as amended, the "APA"), under which VCLF agreed to acquire certain assets (primarily two

mines and their related union contracts) and assume certain liabilities (no less than $400 million

in environmental clean-up liabilities and employee-related liabilities) from Patriot (the "VCLF

Transaction").  *See id.* ¶ 14.  Effectuating the VCLF Transaction was subject to, among other

things, the authorization of this Court and confirmation of Patriot's liquidating Plan.  *See*

Declaration of Patrick J. Potter ("Potter Decl."), Ex. 1 (APA), Preamble ("[T]he execution and

delivery of this Agreement and the Sellers' ability to consummate the Transaction are subject,

among other things, to the authorization of the Bankruptcy Court pursuant to section 1129 of the

5

Bankruptcy Code and is expected to be consummated concurrently with the effective date of the Plan."). It is undisputed that the VCLF Transaction was critically important to confirmation of Patriot's Plan.

VCLF and Black Diamond entered into the Commitment Letter on September 21, 2015, for the sole purpose of facilitating the VCLF Transaction. *See* Phillips Decl., Ex. B (Commitment Letter). Although VCLF's principal signed the Commitment Letter in New York, the primary purpose of VCLF's trip to New York on September 21, 2015, was not to sign the Commitment Letter, but rather—as Black Diamond admits in its Complaint—to attend the Patriot bankruptcy auction. *See* Phillips Decl., Ex. A (Complaint) ¶¶ 26-27. Under the Commitment Letter, which is governed by agreement by New York law, Black Diamond agreed, *inter alia*, to provide VCLF with asset-based loans and/or term loans in the aggregate principal amount of $25 million for (a) paying certain fees, costs, and expenses in connection with the VCLF Transaction, and (b) providing VCLF with working capital from and after the consummation of the VCLF Transaction. Phillips Decl., Ex. B (Commitment Letter), at 1. The parties did not include a choice-of-forum clause in the Commitment Letter, and further "irrevocably waived all right to trial by jury in any action or proceeding arising out of this Commitment Letter or the transactions contemplated hereby." *Id.* at 4.

After its execution, the Commitment Letter was filed with this Court prior to the confirmation hearing as part of Patriot's "Amended Plan Supplement" on September 25, 2015, together with various other documents related to the feasibility of consummating the VCLF Transaction. *See* Potter Decl., Ex. 2 (Notice of Filing of Amended Plan Supplement, Sept. 25, 2015, Patriot Chapter 11 Case ECF Doc. No. 1405, at Exhibits I-L, consisting of "VCLF Financial Projections," "VCLF List of Officers and Directors," "VCLF Operating Agreement,"

and "VCLF Financing Commitment Letter," respectively).  The Commitment Letter, thus, was provided to Patriot's creditors as they evaluated the Plan, and it was part of the evidentiary record upon which this Court relied in ultimately confirming the Plan.

The VCLF Transaction is not the only way that the Black Diamond corporate family has inserted itself into the Patriot Chapter 11 Case.  Black Diamond's affiliate, Black Diamond Capital Management, is a member of the so-called "Letter of Credit Facility" in the Patriot Chapter 11 Case.  While the members of the Letter of Credit Facility are collectively represented in the Patriot Chapter 11 Case by Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden"), Black Diamond appeared—and continues to appear—independently in the Patriot Chapter 11 Case through Schulte Roth & Zabel LLP ("Schulte").

On October 8, 2015, a hearing took place before this Court, at which Patriot's counsel announced that the VCLF Transaction would close, and Patriot's Plan would become effective, on October 26, 2015 (the "Effective Date").  At the hearing, Patriot's counsel further represented that the Effective Date needed to occur by October 26th because Patriot expected to run out of money before the end of October and its lenders had not agreed to advance additional funds that would be required to continue Patriot's operations.  Black Diamond's counsel participated in this hearing.  *See* Phillips Decl., Ex. H (Answer) ¶ 26.  Patriot called VCLF's president as a witness at its confirmation hearing to testify about the feasibility of the VCLF Transaction.  *See id.* ¶ 16.

On October 9, 2015, this Court entered the Confirmation Order confirming Patriot's Plan. *See* Phillips Decl., Ex. C (Confirmation Order, attaching and incorporating the Plan).  The Confirmation Order approved and incorporated both the APA *and* the Commitment Letter.  With respect to the APA, the Confirmation Order stated, *inter alia*, that "[a]pproval of the VCLF APA, and the prompt consummation of the VCLF Transaction contemplated thereby, is in the

7

best interests of the Debtors and their Estates." *Id.* (Confirmation Order ¶ 85). With respect to

the Commitment Letter, the Confirmation Order provides:

> The transactions contemplated by the VCLF Commitment Letter
> are hereby approved in all respects. The indebtedness to be
> incurred by VCLF, and the Liens to be granted by VCLF, in
> connection with the transactions contemplated by the VCLF
> Commitment Letter, are valid, binding and enforceable, and
> granted as an inducement to the lenders thereunder to extend the
> credit contemplated thereby, and shall be, and hereby are, deemed
> not to constitute a fraudulent conveyance or fraudulent transfer,
> and shall not otherwise be subject to avoidance under the
> Bankruptcy Code or other applicable law. In addition, the equity
> interests in Healthco (as defined in the VCLF Commitment Letter)
> to be issued to the lender under the VCLF Commitment Letter are
> issued as a further inducement to the lender to extend the credit
> contemplated thereby, shall be deemed to have been issued for fair
> consideration and reasonably equivalent value, and are deemed not
> to constitute a fraudulent conveyance or fraudulent transfer, and
> shall not otherwise be subject to avoidance under the Bankruptcy
> Code or other applicable law.

*Id.* ¶ 126. This language was inserted into the proposed Confirmation Order word-for-word at

Black Diamond's insistence on October 8, 2015, the day before this Court entered the

Confirmation Order. *See* Potter Decl., Ex. 3 (E-mail from Adam Harris (Black Diamond's

counsel) to Stephen Hessler and Ross Kwasteniet (Patriot's counsel), dated Oct. 8, 2015).

Indeed, the Commitment Letter was so intertwined with confirmation of the Plan that the Plan

provides that the members of the Letter of Credit Facility (which includes Black Diamond) may

be entitled to additional distributions (defined in the Plan as the "Federal Mine Profit Interest") if

the Commitment Letter was not consummated and Patriot and VCLF agree to alternative,

mutually-acceptable third-party financing. *See* Phillips Decl., Ex. C (Plan, art. I, § A, ¶ 174; *id.*

art. IV § H).

The Plan further specifies that this Court retains jurisdiction over, among other things,

disputes arising in connection with the Commitment Letter. Article XI of the Plan provides:

> Notwithstanding the entry of the Confirmation Order and the
> occurrence of the Effective Date, on and after the Effective Date,
> the Bankruptcy Court shall retain such jurisdiction over the
> Chapter 11 Cases and all matters, arising out of, or related to, the
> Chapter 11 Cases and the Plan, including without limitation
> jurisdiction to: . . .
>
> 9. *resolve any cases, controversies, suits, disputes, or Causes of
> Action that may arise in connection with* the Consummation,
> interpretation, or enforcement of the Plan or any Entity's
> obligations incurred in connection with the Plan, the Blackhawk
> Transaction Documents, *the VCLF Transaction Documents, or any
> actions or courses of dealing related thereto that occurred on or
> prior to the Effective Date*[.]

*Id.* (Plan, art. XI ¶ 9) (emphasis added). The Plan, in turn, defines the "VCLF Transaction

Documents" as "the VCLF APA and each other document contemplated by the VCLF APA or

entered into in connection with the VCLF Transaction." *Id.* art. I § A ¶ 257.

### B. Black Diamond Repudiates the Commitment Letter on the Eve of the Closing of the VCLF Transaction

After confirmation of the Plan, but before the Effective Date, Black Diamond breached

the Commitment Letter. On October 23, 2015, the Friday before the previously-scheduled

Monday Effective Date for the Plan, Black Diamond announced that it would not finance the

VCLF Transaction on the terms set forth in the Commitment Letter. Instead, Black Diamond

demanded that VCLF agree to new, onerous financing terms, such as a requirement that VCLF's

principals provide a personal guaranty and other provisions that would have put VCLF in

immediate default and would have allowed Black Diamond to take control of the assets VCLF

was purchasing in the VCLF Transaction. VCLF never agreed to these substitute lending terms,

and, on October 25, 2015, the day before the Effective Date, Black Diamond's counsel

confirmed in writing that Black Diamond would not perform under the Commitment Letter.

VCLF separately had confirmed in writing that it considered Black Diamond's actions a breach

of the Commitment Letter, terminating VCLF's obligations under the Commitment Letter. (The

9

details of Black Diamond's breach of the Commitment Letter are set forth in VCLF's

counterclaim.  *See* Phillips Decl., Ex. H (Answer ¶¶ 29-41).)  Black Diamond's breach and

repudiation resulted in VCLF closing on the VCLF Transaction on October 27, 2015, without

any third-party financing.  *See id.* ¶ 42.  While VCLF did subsequently obtain modest third-party

financing, this amount was far below the $20 million Black Diamond contracted to provide

VCLF.  As a result of Black Diamond's breach, "VCLF has been forced to operate the coal

mines purchased from Patriot without the liquidity and access to liquidity that VCLF would have

enjoyed had Black Diamond provided the financing required by the Commitment Letter."  *Id.*

### C.   Commencement of Action in New York State Court

On October 26, 2015, before the VCLF Transaction had closed and the Effective Date of

the Plan had occurred, Black Diamond commenced this action against VCLF in New York state

court.  Notably, Black Diamond did so by filing a Summons with Notice, without a complaint, a

summary procedure usually reserved for the rare circumstance in which the statute of limitations

is about the lapse.  Potter Decl., Ex. 4.  Indeed, at oral argument before the New York

Bankruptcy Court on April 21, 2016, described *infra*, VCLF's counsel began to explain why it

was unusual that Black Diamond employed this procedure, but Judge Glenn did not require

explanation and cut VCLF's counsel off, noting, "No, I'm aware.  I understand what happened

here."  Potter Decl., Ex. 5 (4/21/16 Oral Arg. Tr.) 37:3-4.  Black Diamond purported to serve

VCLF with the Summons with Notice in Virginia three days later, on October 29, 2015.  Potter

Decl., Ex. 6.

On November 2, 2015, VCLF filed a motion to dismiss the Removed Action because the

Summons with Notice did not comply with the strict jurisdictional requirements of Section

305(b) of the New York Civil Practice Law and Rules (the "Motion to Dismiss").  The return

date of the Motion to Dismiss was November 18, 2015.  As of November 2, 2015, Black

Diamond had still not served VCLF with a complaint.

On November 5, 2015, Black Diamond filed its Complaint.  *See* Phillips Decl., Ex. A

(Complaint, without exhibits).  The Complaint contains a single cause of action seeking not less

than $20 million in damages from VCLF, based on VCLF's alleged breach of the Commitment

Letter by purportedly failing to abide by its exclusivity provisions.  *Id.* ¶¶ 60-67 (entitled

"CLAIM FOR RELIEF—Breaches of Contract Against Virginia Conservation Legacy Fund, Inc.

and ERP Compliant Fuels, LLC").

### D.    Removal to the New York Bankruptcy Court

On November 12, 2015, VCLF filed a Notice of Removal with the New York District

Court.  *See* Potter Decl., Ex. 7 (Notice of Removal, without exhibits).  That same day, VCLF

filed a Notice of Filing of Notice of Removal with the New York state court (with notice to

Black Diamond), thereby effecting the removal of this action to the federal system.  *See* Potter

Decl., Ex. 8 (Notice of Filing of Notice of Removal, without exhibits); *see generally* 28 U.S.C.

§ 1446(d); Fed. R. Bankr. P. 9027(c).  Prior to VCLF's removal of the action, nothing other than

the filing of the Summons and Notice and the Complaint, and briefing on VCLF's motion to

dismiss on narrow jurisdictional grounds (without an order resolving the motion), had occurred

in state court.  No state court judge had been assigned to the case (although Black Diamond had

filed a letter requesting that the action be handled by the Commercial Division of the New York

State Court), no response to the Complaint had been filed, and no schedule had been set for the

resolution of the case.  As a result of the removal, no portion of this action remains pending in

New York State Court.

By order dated November 23, 2015, the New York District Court referred this action to

the New York Bankruptcy Court pursuant to 28 U.S.C. § 157(a) and the Southern District of

New York's Standing Order of Reference (the "Referral Order").  *See* Potter Decl., Ex. 9

(Referral Order, at 1-2) (ECF Doc. No. 2-26).  The New York District Court noted, as one of the

bases of its Referral Order, that the Removed Action "arises in and is related to a case under title

11 of the United States Code."  *Id.* at 1.  The next day, November 24, 2015, VCLF filed a motion

to transfer this action to this Court (the "Transfer Motion").  *See* ECF Doc. No. 3-1.  On

November 25, 2015, Black Diamond filed a motion to remand the action to New York state court

arguing that bankruptcy courts lack subject-matter jurisdiction over this dispute, or, in the

alternative, that principles of equitable remand or discretionary abstention apply (the "Original

Remand Motion").  *See* ECF Doc. No. 3-20.  Pursuant to a court-approved and stipulated

briefing schedule, briefing on both the Transfer Motion and the Original Remand Motion was

completed by December 31, 2015.  *See* ECF Doc. No. 3-100.

    Pursuant to a stipulation with Black Diamond (*see* ECF Doc. No. 3-68), on December 4,

2015, VCLF filed its Answer, which set forth a single counterclaim against Black Diamond for

breach of the Commitment Letter.  *See* Phillips Decl., Ex. H (Answer ¶¶ 44-53).

### E.    The Letter of Credit Facility Threatens to Invoke the Federal Mine Profit Interest Provisions of the Plan

    Days after the Effective Date, counsel for the Letter of Credit Facility began contacting

VCLF's counsel to discuss distribution of the Federal Mine Profit Interest.  On December 7,

2015, counsel for the Letter of Credit Facility sent a letter to VCLF's counsel Patrick Potter of

Pillsbury Winthrop Shaw Pittman LLP ("Pillsbury").  *See* Phillips Decl., Ex. I (12/7/15 Letter

from Albert L. Hogan III (Skadden) to Patrick Potter (Pillsbury), re "Federal Mine Profit

Interest").  The letter asserts that the prerequisites for payment of the Federal Mine Profit Interest

appear to have been met (given that Black Diamond and VCLF never closed on the Commitment

Letter).  *Id.* at 2.  The letter further threatens that, in the event VCLF "fail[s] to confirm [by

12

December 18, 2015] that the Federal Mine Profit Interest has been triggered; or fail[s] to work with us to promptly document that [*sic*] same, we will seek appropriate relief from the Court." *Id.* In response to this threat of litigation, VCLF's counsel advised the Letter of Credit Facility's counsel of VCLF's triple-pay concerns (once via potential damages to Black Diamond in this action, once via the Federal Mine Profit Interest to the Letter of Credit Facility, and once for the modest third-party financing that VCLF was ultimately able to procure).

To date, the Letter of Credit Facility has not commenced an action against VCLF, and frankly, VCLF hopes that, based on the parties' dialogue and reason, any litigation with the Letter of Credit Facility can be avoided, or at least continue to be deferred. To this end, for example, VCLF has, in response to the Letter of Credit Facility's counsel's request, kept counsel apprised as this dispute develops and provided copies of all pleadings, including the relatively recent Transfer Order.

Despite all of VCLF's efforts, the Letter of Credit Facility has not waived rights, if any, it may have to the Federal Mine Profit Interest and VCLF has no guaranty that the Letter of Credit Facility will not commence a separate action against it to enforce the Federal Mine Profit Interest (which VCLF would move to join with this action) or intervene in this action. As a result, VCLF is faced with the possibility of a second lawsuit arising from Black Diamond's breach of the Commitment Letter from the Letter of Credit Facility, in an action that may be brought against it in this Court to enforce the Federal Mine Profit Interest provisions of the Chapter 11 Plan.

### F.    The New York Bankruptcy Court Transfers this Action to this Court

On Thursday, April 21, 2016, the parties argued the Transfer Motion and the Original

Remand Motion before the New York Bankruptcy Court (Glenn, J.).[4]  In response to Black

Diamond counsel's argument that New York State Court is the proper forum for this action, the

New York Bankruptcy Court noted, among other things, "[Y]our client's not a stranger to the

bankruptcy in Virginia. . . . [Y]ou just won the race to the courthouse in filing in New York

Supreme Court."  Potter Decl., Ex. 5 (4/21/16 Oral Arg. Tr.) 29:13-17.

On Monday, April 25, 2016, the New York Bankruptcy Court granted the Transfer

Motion and, among other things, (i) held that that there is subject-matter jurisdiction over this

action under 28 U.S.C. § 1334(b), (ii) denied the portion of the Original Remand Motion

pertaining to subject-matter jurisdiction with prejudice, and (iii) denied the portion of the

Original Remand Motion pertaining to equitable remand or discretionary abstention without

prejudice.  *See* Transfer Order, at 10.  On April 26, 2016, the clerk of the New York Bankruptcy

Court effectuated the transfer of this case to the Eastern District of Virginia, Richmond Division.

*See* ECF Doc. No. 2-1.

### G.    Proceedings in this Court

On May 3, 2016, this Court set an initial status conference for May 11, 2016 (the "Initial

Status Conference").  *See* ECF Doc. No. 4.  On May 10, 2016, Black Diamond filed the

Renewed Remand Motion.  *See* ECF Doc. Nos. 12-14.

At the Initial Status Conference, this Court asked whether any portion of this case

remains pending in any court in New York, federal or otherwise; all parties responded in the

negative.  All counsel further reported that the parties had reached agreement on a "Joint

---

[4]  A true and correct copy of the transcript of this oral argument is attached to the Potter Declaration as
Exhibit 5.

Scheduling Order," setting forth deadlines for discovery and dispositive motion practice,

culminating in a final pre-trial conference in February or March 2017; the Court directed the

parties to submit the Joint Scheduling Order and said that the Court would so-order it; and the

Court scheduled oral argument on the Renewed Remand Motion for June 16, 2016. *See* ECF

Doc. No. 17.

## **ARGUMENT**

### I.    **THIS CASE PROPERLY BELONGS IN THIS COURT**

Common and legal sense dictate that this case be decided in this Court.  VCLF is a

Virginia resident that stepped up to the plate to provide a Virginia-debtor, Patriot, a viable

opportunity to obtain consensus around a liquidating plan of reorganization by assuming

substantial clean-up and employee-related liabilities and preserving union jobs, where the

alternative likely would have been for Patriot to close its doors, leaving many out of work and

large land areas without a remediation plan.  The VCLF Transaction thus was not only integral

to, but it also was indispensable to, Patriot's ability to confirm its liquidating Plan.  The VCLF

Transaction, including the Commitment Letter, exists only as a result of the Patriot Chapter 11

Case.  And while the Commitment Letter was entered into by non-debtor parties, it was not only

a key document executed in connection with the VCLF Transaction, it was part of the

evidentiary record for confirmation and—at Black Diamond's insistence—was incorporated into

and approved by this Court as part of the Confirmation Order.  Further, the failure to

consummate the financing under the Commitment Letter may impact the viability of the Plan by

endangering VCLF's liquidity if, for example, VCLF ultimately is required to triple-pay for

third-party financing.  At any rate, it will likely impact creditor distributions under the Plan.

It is no surprise, therefore, that this Court specifically retained jurisdiction over disputes

like a pre-Effective Date breach of the Commitment Letter or that the New York Bankruptcy

Court found section 1334(b) jurisdiction over this action and transferred this adversary

proceeding to this Court to promote "efficiency . . . [in] the interests of justice . . . and [for] the

convenience of the parties." Transfer Order, 8, 9 and n.1.  This Court, for a litany of self-evident

reasons, is the natural venue for resolving a dispute that only exists as a result of, and is so

intertwined with, Patriot's Chapter 11 Case and liquidating Plan.  Black Diamond's original,

rushed filings in New York state court, and its renewed effort to have this case transferred back

to that court, are nothing more than an effort to upset this common sense conclusion.  Equity and

discretion, while invoked by Black Diamond, do not support a conclusion other than this

adversary proceeding is now before the proper court.

## II.   ONLY THE RAREST, MOST EXCEPTIONAL CIRCUMSTANCES JUSTIFY EQUITABLE REMAND AND DISCRETIONARY ABSTENTION

Bankruptcy courts, like other federal courts, remand cases on equitable grounds or

abstain from a case on discretionary grounds only in extremely limited, clear and compelling

circumstances.  The norm is for a federal court to retain jurisdiction over matters before it.  This

paradigm flows from the applicable statutes and is applied uniformly by federal courts, including

bankruptcy courts in this district.

Following removal of a civil action from state court to a federal bankruptcy court

possessing subject-matter jurisdiction under 28 U.S.C. § 1334, the bankruptcy court "may"—but

is not required to—"remand such claim or cause of action on any equitable ground."  28 U.S.C.

§ 1452(b).  Alternatively, the bankruptcy court may abstain from hearing such proceeding "in the

interest of justice, or in the interest of comity with State courts or respect for State law."  28

U.S.C. § 1331(c)(1).  "The general rule, however, is that a federal court must accept the

jurisdiction granted it, and only on very rare occasions is discretionary abstention warranted."  *In

re Butterfield*, 339 B.R. 366, 373 (Bankr. E.D. Va. 2004) (Tice, J.) (denying motion for

discretionary abstention); *see also id.* at 374 ("A federal district court may decline to exercise its

jurisdiction because of parallel state-court-litigation only in exceptional circumstances; *only the*

*clearest of justifications will warrant dismissal.*") (quoting *Moses H. Cone Mem'l Hosp. v.*

*Mercury Constr. Corp.*, 460 U.S. 1, 2 (1983) (emphasis added); *In re Morgantown Excavators,*

*Inc.*, Adv. Proc. No. 13-24, 2013 WL 4829165, at *3 (N.D. W. Va. Sept. 9, 2013) ("Generally,

courts agree that abstention should be exercised only in a narrow sphere of cases and that

abstention should be the exception, not the rule.") (citing, *inter alia*, *Smith v. McLeskey (In re*

*Bay Vista of Va., Inc.)*, 394 B.R. 820, 845-46 (Bankr. E.D. Va. 2008) (John, J.)).

"The analysis under permissive abstention [28 U.S.C. § 1331(c)(1)] is largely the same as

under equitable remand [28 U.S.C. § 1452(b)]." *Morgantown*, 2013 WL 4829165, at *5 & n.4

(denying motions for permissive abstention and equitable remand applying the same factors); *see*

*also Kepley Broscious, PLC v. Ahearn (In re Ahearn)*, 318 B.R. 638, 643 (Bankr. E.D. Va. 2003)

(Tice, J.) (noting that, because "similar equitable considerations" govern both equitable remand

and discretionary abstention, the equitable remand issue would be assessed as part of the court's

consideration of the discretionary abstention factors).  Courts in this district generally consider

the following factors when adjudicating a motion for discretionary abstention:

> (1) the court's duty to resolve matters properly before it; (2) the
> predominance of state law issues and non-debtor parties; (3) the
> economical use of judicial resources; (4) the effect of remand on
> the administration of the bankruptcy estate; (5) the relatedness or
> remoteness of the action to the bankruptcy case; (6) whether the
> case involves questions of state law better addressed by the state
> court; (7) comity considerations; (8) any prejudice to the
> involuntarily removed parties; (9) forum non conveniens; (10) the
> possibility of inconsistent results; (11) any expertise of the court
> where the action originated; and (12) the existence of a right to a
> jury trial.

*Bay Vista*, 394 B.R. at 845 (quoting *Ahearn*, 318 B.R. at 644).

Allegations in an answer may be considered in adjudicating a motion for remand. *See*

*Margan v. Chemetron Fire Sys., Inc.*, 954 F. Supp. 1127, 1131 (E.D. Va. 1997) ("the Court may

look beyond the notice of removal and may consider the case as a whole to determine if removal

is proper"); Wright & Miller, 14C Fed. Prac. & Proc. Juris. § 3734 (4th ed.) ("[I]n practice, the

federal courts usually do not limit their inquiry to the face of the plaintiff's complaint, but rather

consider the facts disclosed in the record of the case as a whole, in determining the propriety of

removal.") (citing authorities).

## III.   THE FACTORS GOVERNING EQUITABLE REMAND AND DISCRETIONARY ABSTENTION ARE NOT MET

As previously noted, common and legal sense make clear that this case is properly before

this Court.  Applying *Bay Vista's* twelve factors (which effectively govern both equitable remand

and discretionary abstention for the reasons set for above) results in the same conclusion.  There

is no basis for sending this action back to New York state court.

### A.   This Case is Properly Before this Court and the Court Has a Duty to Resolve It (*Bay Vista* Factor 1)

This action is properly before this Court.  VCLF timely and properly removed the action

from New York state court to the New York District Court; the New York District Court referred

the case to the New York Bankruptcy Court; and the New York Bankruptcy Court transferred the

case here only after both it and the New York District Court found that section 1334(b) "arising

in," or at least "related to," jurisdiction applied to the dispute and the Patriot Chapter 11 Case.

An adversary proceeding is properly before a bankruptcy court when, *inter alia*, the

proceeding "arises in" or is "related to" the underlying chapter 11 case pending before the court,

and once a case is before the bankruptcy court, it has a duty to resolve it.  *See* 28 U.S.C. §1409;

*Abner v. Mate Creek Loading, Inc. (In re Mid-Atlantic Res. Corp.)*, 283 B.R. 176, 189, 191 (S.D.

W. Va. 2002) (denying motion for discretionary remand of mechanics' lien action that the court

determined "arose in" the bankruptcy proceeding, explaining, with respect to the "properly

before [the bankruptcy court]" factor, that "[a]s previously mentioned, Appellants' lien is

inextricably intertwined with the bankruptcy case"); *Blanton v. IMN Fin. Corp.*, 260 B.R. 257,

265-66 (M.D.N.C. 2001) ("[T]he court recognizes the duty to resolve matters properly before it.

As discussed earlier, under the broad construction used by the Fourth Circuit, the present action

'relates to' the bankruptcy proceeding. . . . Therefore, the action is properly in federal court, and

the federal courts have a duty to resolve the matter.").

Here it is clear that this dispute arises in the Patriot Chapter 11 Case.  But for the Patriot

Chapter 11 case, there would be no Commitment Letter and there would be no lawsuit.  *See*

*Grausz v. Englander*, 321 F.3d 467, 471 (4th Cir. 2003) (stating that claims or proceedings

arising in a case under title 11 "are not based on any right expressly created by Title 11, but

nevertheless, . . . would have no practical existence *but for* the bankruptcy") (emphasis in

original) (quoting *A.H. Robins Co. v. Dalkon Shield Claimants Trust*, 86 F.3d 364, 372 (4th Cir.

1996); *see also id.* at 472 (holding that professional malpractice claim arose in the bankruptcy

case even though it was not the "property of [the debtor's] bankruptcy estate").  And, as the New

York Bankruptcy Court noted, even if the dispute did not arise in the Patriot Chapter 11 Case,

the dispute is "related to" the Patriot Chapter 11 Case under all judicial interpretations of "related

to" jurisdiction.

Furthermore, pursuant to the Transfer Order, it is now law of the case that (i) this Court

has subject-matter jurisdiction over this action (on the grounds that it either "arises in" or, at a

minimum, is "related to" the Patriot Chapter 11 Case), as the New York District Court also found

in its Referral Order; and (ii) this Court is the proper venue for this action.  *See* Transfer Order,

at 8, 9.  Additionally, as noted *infra* Point III.B, all parties (and the New York Bankruptcy Court)

19

agree that this case falls within the retention-of-jurisdiction clause in the Plan.  This Court should

hold that this case is properly before it and that the Court, therefore, has a duty to resolve it.

### B.   This Adversary Proceeding Implicates and Impacts the Plan and the Administration of the Patriot Chapter 11 Case (*Bay Vista* Factors 4 and 5)

The dispute between VCLF and Black Diamond arises in, is closely related to, and is

inexorably intertwined with the Patriot Chapter 11 Case and Plan, and the outcome of this

adversary proceeding will likely affect the Patriot Chapter 11 Case and Plan.  Accordingly, the

fourth and fifth factors of the discretionary abstention analysis—"the effect of remand on the

administration of the bankruptcy estate" and "the relatedness or remoteness of the action to the

bankruptcy case" (*Bay Vista*, 394 B.R. at 845) weigh against remand and abstention.  There are

at least three reasons for this:

*First*, there is a "close nexus" between this action and the Patriot Chapter 11 Case and its

resolution will impact the Plan.  As the New York Bankruptcy Court held, "the outcome of this

case affects the interpretation, implementation, consummation, or administration of the

confirmed Plan."  *See* Transfer Order, at 8.  It is not hard to see why.

- This dispute and the underlying Commitment Letter are inextricably the result of, and intertwined with, the Patriot Plan.  As the New York Bankruptcy Court observed, it "is clear that the confirmation order for the Plan approved and incorporated the Commitment Letter into the Plan; it was an important part of the Plan for the sale of assets to VCLF, even though an alternate source of financing was identified."  *Id.* at 3.

- The resolution of the dispute will affect (and has already affected) other Patriot creditors under the Plan.  In this regard, the New York Bankruptcy Court agreed with VCLF that "other parties in the Patriot Coal Case may have a right to additional Plan distributions, payable by VCLF (or possibly by Black Diamond, if VCLF prevails on its counterclaim) resulting from the failure of VCLF to close the asset purchase with the Black Diamond financing."  *Id.* at 3-4.  Indeed, as noted *supra* at 12-13, the Letter of Credit Facility has threatened to sue VCLF to recover the distribution of the Federal Mine Profit Interest provided for in the Plan.

- Although Black Diamond downplays the significance of the Letter of Credit Facility's threat by characterizing it as a mere "reservation of rights" letter, and noting that it is "unaware of any further actions taken with regards to the above payment by VCLF or the Letter of Credit Facility" (Pl.'s Mem. 7), its statements are misplaced and miss the point.  The Letter of Credit Facility could not have been clearer that, in the event VCLF "fail[s] to confirm that the Federal Mine Profit Interest has been triggered; or fail[s] to work with us to promptly document that [*sic*] same, we will seek appropriate relief from the Court."  Phillips Decl., Ex. I.  As noted *supra* at 12-13, while the Letter of Credit Facility appears to have temporarily refrained from mounting such a lawsuit, the Letter of Credit Facility has indicated clearly that, based on developments in this action, it might be in its interest to file suit against VCLF or intervene in this action.  VCLF thus continues to be exposed to litigation risk from the Letter of Credit Facility.  In turn, to the extent that this Court does find VCLF liable to the Letter of Credit Facility for payment of the Federal Mine Profit Interest, any damages award to Black Diamond would have to be offset by this amount given that one of Black Diamond's affiliates is a member of the Letter of Credit Facility, and the Black Diamond family therefore stands to be enriched by double recovery.  Remanding this case to New York state court also raises the specter of inconsistent judgments should the Letter of Credit facility press its claim, as discussed below.

*Second*, the relatedness of this action to the Patriot Chapter 11 Case and its potential effect on the administration of the Patriot estate is clear because this action falls squarely within the retention-of-jurisdiction provision of the Plan.  Indeed, Black Diamond's counsel admitted as much at oral argument before the New York Bankruptcy Court:

> [MR. PHILLIPS:]  The retained jurisdiction clause, (indiscernible) not only doesn't mention the commitment letter, but if you have to work through it, what it does it says retains that under the VCLF transaction documents *which mean the asset purchase agreement and other documents contemplated by the asset purchase agreement*, and goes on, it's the vaguest of definitions.  It calls in lots of things to us.  *Does it call in the commitment letter?  Sure, we don't contest that it doesn't.*  But that's a very . . . slim read.

4/21/16 Oral Arg. Tr. 19:7-18 (emphasis added).  More significantly, the New York Bankruptcy Court has held that the dispute falls within the Plan's retention of jurisdiction to this Court.  *See* Transfer Order at 4 ("[T]he Court concludes that disputes over whether the Commitment Letter was breached, and, if so, by whom, and with what consequences, fall within the retention of jurisdiction clause.").

21

*Third*, this Court's recently-entered Final Decree closing the chapter 11 cases of certain

Patriot affiliates makes clear that cases such as the present one, which arise in or are related to

the Patriot Chapter 11 Case and are transferred to this Court from other jurisdictions, will be

adjudicated by this Court.  *See* Phillips Decl., Ex. K (3/1/16 Final Decree) ¶ 6 ("Notwithstanding

entry of this Final Decree, any and all Actions hereafter commenced, continued, or *transferred* to

this Court . . . shall be heard and resolved in the Lead Case as though the Chapter 11 Cases

remained jointly administered."); *see also id.* ¶ 5 (defining "Actions" as "adversary proceedings,

lawsuits, or other actions (whether pending before this Court or otherwise) that could have

otherwise been commenced in, continued in, or transferred to the Affiliate Cases").  VCLF notes

that the Final Decree was entered on notice to, among others, Black Diamond and Black

Diamond did not object.

### C.   Remand or Abstention Would Waste Judicial Resources and Create the Possibility of Inconsistent Results (*Bay Vista* Factors 3 and 10)

As the New York Bankruptcy Court stated when it transferred this action to this Court,

"This action is closely related to the Patriot Coal Case, the Virginia Bankruptcy Court is familiar

with the facts and circumstances giving rise to the claims in this case, and it can be most

efficiently litigated and resolved in that court."  Transfer Order at 9.  The "economical use of

judicial resources" factor, *Bay Vista*, 394 B.R. at 845, therefore, supports this Court continuing to

exercise jurisdiction over this adversary proceeding.  Likewise, given that there is no related case

pending in New York Supreme Court, there is no risk of inconsistent results by this Court

maintaining jurisdiction over this adversary proceeding.

By contrast, remanding this case to New York Supreme Court would result in a waste of

judicial resources and could lead to inconsistent results.  Black Diamond does not dispute that a

New York state court would not be as familiar as this Court with the facts and circumstances

surrounding this case; this alone would result in the undue prolongation of this action.[5]  *See* Pl.'s

Mem. 12.  Indeed, this Court is not confronted with a well-developed state court action, which

alone distinguishes this case from several of the cases cited by Black Diamond.  *See* Pl.'s Mem.

8, 16 (citing *In re Tilley*, 42 B.R. 827, 828 (Bankr. E.D. Va. 1984) (noting, in support of the

decision to abstain, that it was "highly relevant" that plaintiff sought removal only after its claim

was dismissed for failure to comply with discovery requests and a default judgment was entered

against it on the defendant's counterclaim); *Massey Energy Co. v. W. Virginia Consumers for

Justice*, 351 B.R. 348, 353 (E.D. Va. 2006) (noting that permissive abstention based on comity

considerations was appropriate where state court litigation was "significantly underway," and the

state court had "heard and ruled on a multitude of significant pre-trial motions, scheduled a final

trial, and organized its regular operations to meet this case's needs."); *In re Willett*, No. 95-

13066-AM, 1996 WL 910907, at *10 (Bankr. E.D. Va. May 9, 1996) (remanding where a state

court had already adjudicated proceedings in the matter removed to federal court)).  No New

York State Court proceedings are pending.  No judge was ever assigned to this action, and no

schedule was ever set to resolve it.  *See supra* at 10-11.  Significantly, the New York Bankruptcy

Court, a tribunal familiar with both federal bankruptcy courts and the New York State Court's

Commercial Division (Black Diamond's preferred forum), concluded that this case could be

"most efficiently litigated and resolved" before *this* Court, rather than before a New York State

Court judge.

---

[5]  Black Diamond emphasizes the specialization of New York's Commercial Division.  *See* Pl.s' Br. 17-
18.  However, adjudication in the Commercial Division is no assurance of swift litigation.  For
example, one case that recently completed trial in the Commercial Division, *Hellenic-American
Educational Foundation  v. Trustees of Athens College in Greece*, No. 603770/07 (Sup. Ct., N.Y. Cty.)
(Oing, J.), was initially filed in 2007:  as a result of drawn-out motion practice, discovery, and a prior
appeal, the case did not reach trial for almost ten years.  By contrast, the parties here have already
agreed to a scheduling order, which has now been so-ordered by the Court, under which discovery and
dispositive motion practice will be completed by early 2017.  *See* Scheduling Order, ECF Doc. No. 20.

Moreover, if this Court were to grant the Renewed Remand Motion, the New York court's ultimate disposition of the case could be inconsistent with subsequent decisions issued by this Court in the Patriot Chapter 11 Case.  As noted above, this Court may potentially be required to adjudicate a dispute between the Letter of Credit Facility and VCLF regarding payment of the Federal Mine Profit Interest distribution under the Plan.  A suit between the Letter of Credit Facility and VCLF would fall squarely within this Court's jurisdiction, both as a matter of federal bankruptcy court subject-matter jurisdiction and the retention-of-jurisdiction provisions of the Plan.  To the extent that the New York court finds for Black Diamond, but does not take the Federal Mine Profit Interest and VCLF's payment for reduced third-party financing into account in calculating damages, the New York court's judgment would potentially conflict with a ruling by this Court that is adverse to VCLF in an adversary proceeding between VCLF and the members of the Letter of Credit Facility (including Black Diamond's affiliate).

Black Diamond's only explanation for how transferring this action to New York would *save* judicial resources is that there is "a risk that either party could appeal an unfavorable outcome based on the absence of subject matter jurisdiction.  While the SDNY Bankruptcy Court decided that there is subject matter jurisdiction, either party could ultimately dispute that ruling on appeal.  In that event, the outcome of this case would be delayed and, at worst, this action could need to be re-tried in New York Supreme Court."  Pl.'s Mem. 12.  This Court should not be concerned that Black Diamond may later appeal and argue a lack of subject-matter jurisdiction:  *First*, the supposed waste of judicial resources that Black Diamond identifies would be of Black Diamond's own making, as Black Diamond could avert such waste of judicial resources by applying for interlocutory appeal of the Transfer Order to the district court *now*, rather than continuing to litigate this case, as it appears to be doing, presumably to hedge its bets

24

on the outcome.  *Compare* 28 U.S.C. § 1452(b) ("An order entered under this subsection

remanding a claim or cause of action, or a decision not to remand, is not reviewable by appeal or

otherwise *by the court of appeals* under section 158(d), 1291, or 1292 of this title or *by the*

*Supreme Court of the United States* under section 1254 of this title.") (emphasis added) *with* 28

U.S.C. § 158(a) ("The district courts of the United States shall have jurisdiction to hear

appeals . . . with leave of court, from interlocutory orders and decrees, of bankruptcy judges

entered in cases and proceedings referred to the bankruptcy judges under section 157 of this

title.").  Indeed, the only case Black Diamond cites to support its "judicial resources" argument

dealt with the issue of whether to grant an *interlocutory* appeal precisely in order to avoid the

risk of double litigation.  *See Klein v. Vision Lab Telecommc'ns, Inc.*, 399 F. Supp. 2d 528, 537

(S.D.N.Y. 2005).  Presumably, this is why Black Diamond did not bother to elaborate on the

"different context" that gave rise to that matter.  *See* Pl.'s Mem. 12.  *Second*, if Black Diamond is

correct that equitable remand or discretionary abstention should be granted because one party

might later challenge subject-matter jurisdiction, every litigant would have the absolute ability to

deprive bankruptcy courts of jurisdiction by simply challenging it.  That cannot be the law.

Finally, it is unlikely that an appellate court would upset the New York Bankruptcy Court's well-

reasoned decision finding of subject-matter jurisdiction here.

### D.    The Convenience of the Parties Supports Maintaining Jurisdiction in this Court (*Bay Vista* Factors 8 and 9)

The two factors relating to the relative convenience or prejudice to the parties —"any

prejudice to the involuntarily removed parties" and "forum non conveniens" (*Bay Vista*, 394

B.R. at 845) — also weigh against equitable remand or discretionary abstention.  The

convenience to the parties in maintaining this action in Virginia is manifest.  Indeed, the New

York Bankruptcy Court found that "the convenience of the parties . . . support[s] transfer to the Virginia Bankruptcy Court."  Transfer Order, at 9 n.1.

VCLF is a non-profit organization that is located in Virginia; Virginia is the location of the Patriot Chapter 11 Case, to which this action is related; and, according to the Complaint, Black Diamond conducted a significant amount of its due diligence for the Commitment Letter in West Virginia.  *See* Phillips Decl., Ex. A (Complaint) ¶ 38.  Moreover, Black Diamond has demonstrated its willingness and ability to appear before this Court.  Black Diamond voluntarily appeared in the Patriot Chapter 11 Case through its counsel Schulte.[6]  There is no prejudice to Black Diamond in litigating this case in Virginia.  Furthermore, that fact that VCLF's financial advisor Teneo is located in New York does not show that Virginia is an inconvenient forum. Teneo has not complained that this action is in this Court, and like Black Diamond, Teneo participated in the Patriot Chapter 11 Case throughout 2015 and attended the confirmation hearing.  By contrast, VCLF, as a non-profit, would suffer great prejudice if its principals were forced to stay in New York for potentially weeks on end to participate in a trial in this action.

In its moving memorandum of law, Black Diamond places great emphasis on the fact that New York is "the venue where the parties met, negotiated, and executed the Commitment Letter" to support its position that New York is a convenient forum for VCLF.  Pl.'s Mem. 17.  Black Diamond is wrong.  As indicated in the Complaint, VCLF came to New York on September 21, 2015, not to sign the Commitment Letter but to be present at an auction of Patriot's assets being conducted in New York pursuant to an order of this Court.  Phillips Decl., Ex. A (Compl. ¶¶ 25-27, 35-37).  The mere fact that VCLF's principals were presented with a copy of the

---

[6] Indeed, regardless of how this Court decides the Renewed Remand Motion, Black Diamond's litigation counsel may be required to appear before this Court anyway should VCLF and the Letter of Credit Facility (whose members include a Black Diamond affiliate) litigate a suit over the Federal Mine Profit Interest before this Court.

Commitment Letter by Black Diamond on the sidelines of the Patriot bankruptcy auction (an event subject entirely to this Court's jurisdiction, given its centrality to the Patriot Chapter 11 Case) hardly shows a legally significant connection between this action and New York for the purpose of identifying the most appropriate, convenient forum to resolve this dispute.  If anything, being in New York when the Commitment Letter was signed might be a factor to consider in applying New York law to the Commitment Letter if a choice of law provision did not exist, but of course, it does as the parties chose New York law.  The truly significant point that demonstrates that the signing of the Commitment Letter in New York is irrelevant to venue is that is does not contain a forum selection clause.  VCLF and Black Diamond had no agreement on venue; they placed no priority on New York being the location for dispute resolution; and they did not acknowledge any meaningful connection with New York for dispute resolution purposes by choosing New York law to govern disputes.  If anything, Black Diamond's insistence that the Confirmation Order contain language incorporating and approving the Commitment Letter manifests its original intent that disputes arising out of the Commitment Letter would be adjudicated by this Court.  *See supra* at 7-8.  At bottom, Virginia is the location that is most connected to the parties and the subject-matter of this lawsuit that arises solely as a result of Patriot's Chapter 11 Case.

Black Diamond's reliance on *In re Rabex Amuru of N. Carolina, Inc.*, 198 B.R. 898 (Bankr. M.D.N.C. 1996), to support abstention is misplaced.  Although the court in *Rabex* did abstain in favor of a Japanese court on grounds of *forum non conveniens*, the case is plainly distinguishable from this one.  In that case:  (i) the plaintiff was a Japanese corporation and the individual defendant was a Japanese citizen; (ii) the agreements at issue were "entered into in Japan" and concerned funds that "were deposited into a Japanese bank"; (iii) several of the

27

witnesses did not speak English; and (iv) there was a demand for a jury trial. *See id.* at 900-901.

None of these extreme factors, which supported abstention in *Rabex*, are present in this case.

Furthermore, Black Diamond's choice of a New York forum (*see* Pl.'s Br. 17) should be given no weight. As the New York Bankruptcy Court acknowledged at oral argument, Black Diamond only initiated this lawsuit in New York state court so that this dispute would not be before this Court and so it might obtain quick leverage over VCLF to conclude financing on terms other than as contained in the Commitment Letter. *See supra* at 14 (noting that Black Diamond "raced" to New York State Court to file its complaint before VCLF could act). Black Diamond easily could have brought its breach of contract claim against VCLF to the attention of this Court through an adversary proceeding in the Patriot Chapter 11 Case, especially given the clear language of the Plan's retention-of-jurisdiction provision, if all it wanted to do was to compel VCLF to close on the Commitment Letter as it existed in the record of this Court.

> **E.    The Fact that this Action Involves State Law Issues and Non-Debtor Parties is of No Consequence Given the Circumstances of this Case (*Bay Vista* Factors 2, 6, 7 and 11)**

Contrary to Black Diamond's contentions, the fact that this adversary proceeding involves non-debtors and claims for breach of contract under New York law does not compel equitable remand to, or abstention in favor of, a New York state court, any more than this fact prohibited transfer to this Court. *See* Transfer Order, at 10; *see also id.* at 5-6 (noting with approval VCLF's argument that this case arises in the Patriot Chapter 11 Case, explaining that "it does not matter that the causes of action asserted in the adversary complaint involve exclusively state law created claims"). Rather, the connection of these parties and their state law dispute to the Patriot Chapter 11 Case confirms that venue in this Court is proper, as many courts have found in similar circumstances.

*First*, courts routinely decline to remand or abstain from adversary proceedings among

non-debtors where their dispute arises in or is related to the underlying chapter 11 case.  *See*

*Mid-Atlantic Res.*, 283 B.R. at 191 (holding that the mere fact that adversary proceeding

involved non-debtors only did not weigh in favor of abstention where, *inter alia*, "Appellants'

lien is inextricably intertwined with the bankruptcy case"); *see also id.* at 190 (holding that the

adversary proceeding "arose in" a case under title 11, notwithstanding that "the present case

involves only state-law issues"); *cf. Virginia ex rel. Integra REC LLC v. Countrywide Sec. Corp.*,

92 F. Supp. 3d 469, 473 (E.D. Va. 2015), *motion to certify appeal denied sub nom.*

*Commonwealth of Virginia ex rel. Integra Rec LLC v. Countrywide Sec. Corp.*, No. 3:14CV706,

2015 WL 3540473 (E.D. Va. June 3, 2015) (holding that "related to" jurisdiction existed even

though "none of the parties in the district court action are debtors in the bankruptcy proceeding,"

and denying plaintiff's "Motion to Remand as it pertains to permissive abstention and equitable

remand" to consider potentially determinative issues of federal common law).  This is

particularly true where the non-debtor's involvement in the adversary proceeding resulted from

its participation in the underlying chapter 11 proceeding.  *See Morgantown Excavators*, 2013

WL 4829165, at *5 (holding that "the non-debtor participation in this adversary proceeding is

not of a magnitude that causes this court concern" where, *inter alia*, the non-debtor party

"allegedly bought an asset of one or both bankruptcy estates in violation of state laws").  As

demonstrated above, this adversary proceeding arises in, or at a minimum is related to, the

Patriot Chapter 11 Case.  And, both parties to this adversary proceeding participated in

meaningful ways in the Patriot Chapter 11 Case that gives rises to the contract claims raised in

this adversary proceeding.

29

*Second*, the presence of state law issues weighs in favor of equitable abstention or discretionary remand only where those issues are complex, difficult, or unsettled and are better addressed by a state court applying its own laws. *See Blanton*, 260 B.R. at 266 (denying motion for discretionary abstention because, "while the causes of action asserted by Plaintiffs are based on state law, they do not involve novel legal questions which would be better resolved by the state courts"); *Morgantown Excavators*, 2013 WL 4829165, at *4 (holding that abstention was not warranted in case where "state law issues predominate[d]" because, *inter alia*, "Plaintiffs do not assert that the state-law issues in this case are unique, unsettled or difficult"); *Bay Vista*, 394 B.R. at 846 ("[W]ith all deference to the expertise and ability of the State Court to resolve the issue of the Complaint regarding the alleged overpayment, the state law issues here are similar to issues frequently and routinely resolved by this Court, that of determining how much is owed on an instrument applying Virginia law."); *Ahearn*, 318 B.R. at 644 (noting that the "purely [ ] state law issue" of the "validity of an assignment of a deed of trust note" did not require abstention given that "the issue is not complex"); *Shaia v. Brown (In re Brown)*, Nos. 95-34782-T, 96-3125, 1996 WL 757100, at *3 (Bankr. E.D. Va. Dec. 5, 1996) (Tice, J.) ("Although Virginia law will dictate the outcome, I do not find the question so difficult or unsettled that this court cannot adjudicate it."); *see also Mid-Atlantic Res.*, 283 B.R. at 191 ("[T]he Court finds the state-law issues raised by Appellants in their action are well within the bankruptcy court's and this Court's ability to address, particularly to the extent it involves determining the legitimacy and the priority of the lien.").  In particular, concerns for comity between state and federal courts are reduced when the state law to be applied is *contract* law, which "does not raise questions of important state policy."  *See Butterfield*, 339 B.R. at 374 (denying motion for abstention on the grounds that, while the case raised a "question of contract law [that] arises amidst complex facts

30

of insurance and reinsurance, . . . *at its heart it is a question of contract law with no implications as to vital state policy*") (emphasis added).

Notably, the cases Black Diamond cites where district or bankruptcy courts hesitated to apply state law, and abstained on that basis, did not involve contract law, but rather areas of law that relate directly to vital state interests, such as real property, torts, or domestic relations. *See Massey Energy*, 351 B.R. at 354 ("Plaintiffs allege a Virginia common law cause of action for defamation coupled by [*sic*] a claim under the Virginia Business Conspiracy Act, a unique facet of Virginia law that has been vigorously litigated in State courts."); *In re Walters*, Civ. Action No. 5:12–cv–01174, 2013 WL 5505055, at *1, 10 (S.D. W. Va. Oct. 2, 2013) (finding that adversary proceeding in which plaintiff "asserted claims of (I) unconscionable inducement; (II) illegal loan; (III) fraud; and (IV) illegal debt collection-misrepresentation . . . may present unsettled state law issues"); *In re Donoho*, 402 B.R. 687, 699 (Bankr. E.D. Va. 2009) ("[B]oth the complaint and Brennan Title's demurrer raise important issues of state law concerning the duties and liabilities of a *real estate settlement agent. Because real estate is an area of the law in which state rather than federal interests predominate*, it is appropriate the issues raised by the complaint and demurrer be considered and resolved by the state courts.") (emphasis added); *In re Yates*, Nos. 01–32341–T, 02–3053–T, 2002 WL 32140187, at *1 (Bankr. E.D. Va. Aug. 16, 2002) (Tice, J.) (state court complaint sought to require defendant "to release deeds of trust [defendant] holds against real property"); *Willett*, 1996 WL 910907, at *2 (adversary proceeding arising out of state divorce proceeding). Likewise, the cases cited by Black Diamond that abstained based on comity considerations overwhelmingly involved situations where a significant portion of the suit had already been litigated in state court. *See Massey Energy*, 351 B.R. 348 at 354; *Tilley*, 42 B.R. at 828 ("state court actions were reconsolidated" and "set for

31

joint trial" prior to the filing of the chapter 11 petition); *Willett*, 1996 WL 910907, at \*2

(involving remand of divorce proceeding that predated the chapter 11 proceeding and that, at the

time of removal, had already resulted in a final decree of divorce).

Nothing about this dispute implicates unique, complex or unsettled principles of New

York law or involves a vital New York State interest.  Nothing about this dispute implicates

comity concerns, as there has been no state court action taken in response to this dispute.  In

short, nothing here calls out for the Commercial Division of the New York State Supreme Court

to be the court to resolve this dispute.

This case does not present novel questions of New York law or questions of New York

law affecting vital state policy, and Black Diamond agrees.  *See* 4/21/16 Oral Arg. Tr. 28:4-8

(Mr. Phillips:  "The difficulty o[r] unsettled nature of applicable state law, *I am not going to*

*contend that the state law here is difficult*, although there are issues of when contracts may be

amended and what it takes to amend, which are not straight forward, even under New York

law.") (emphasis added).  Rather, this case requires primarily a simple application of New York

contract law.

And, because no vital New York policy needs to be resolved in this adversary

proceeding, there is no reason, and comity does not require, that this Court should defer in favor

of any New York state court, including the specialized Commercial Division of the New York

Supreme Court.  The Commercial Division's expertise is not implicated by, or needed to resolve,

this dispute that involves a rather straightforward application of New York contract law.  Indeed,

this case is like the scores of other cases in Virginia where federal courts regularly and capably

apply New York contract law to disputes before them.  *See, e.g., Hilton Worldwide, Inc. v.*

*Caesars Entm't Corp.*, 532 B.R. 259, 267 & n.3 (E.D. Va. 2015) (applying New York contract

32

law pursuant to choice-of-law provisions in agreements); *Stanworth v. Bank of Am., N.A. (In re Stanworth)*, 543 B.R. 760, 773 (Bankr. E.D. Va. 2016) (Santoro, J.) ("The Choice of Law Provision directs that New York law applies.  Accordingly, the Court will look to New York law to determine whether the Plaintiff may allege noncompliance with the terms of the [Pooling and Servicing Agreement] . . . .").  There is no reason for a different result to apply here.  As the New York Bankruptcy Court observed when summarily dismissing the notion that this Court could not apply New York law as well as a New York state court:  "You know, I've commented in the *ResCap* case that I've had to decide law of 26 states in the one case.  So I think for a Court in Virginia or elsewhere to have to address issues of New York law is—actually it's pretty common. . . . not a problem.").  *See* Potter Decl., Ex. 5 (4/21/16 Oral Arg. Tr.) 35:18-24.

### F.    No Jury Trial Is Implicated (*Bay Vista* Factor 12)

Neither VCLF nor Black Diamond claims a jury trial in this adversary proceeding.  Consequently, this factor militates against equitable remand or discretionary abstention.

*[The remainder of this page is left blank intentionally.]*

33

## <u>CONCLUSION</u>

This Court should not remand this adversary proceeding to, or abstain from this adversary

proceeding in favor of, a New York state court as Black Diamond has requested.  Every factor

considered by courts in deciding these issues weighs in favor of this adversary proceeding being

retained and decided by this Court.  Accordingly, VCLF respectfully requests that this Court

deny the Renewed Remand Motion, and grant VCLF such other relief as may be just and proper.


Dated: June 1, 2016
      Richmond, Virginia               PILLSBURY WINTHROP SHAW PITTMAN LLP


                                    */s/ Patrick J. Potter*
                                  Patrick J. Potter (VSB No. 39766)
                                  1650 Tysons Boulevard, Suite 1400
                                  McLean, Virginia 22102-4856
                                  Telephone:  (703) 770-7900
                                  Facsimile:  (703) 770-7901
                                  E-mail:  patrick.potter@pillsburylaw.com


                                  William M. Sullivan, Jr. (admitted *pro hac vice*)
                                  PILLSBURY WINTHROP SHAW PITTMAN LLP
                                  1200 Seventeenth Street, NW
                                  Washington, DC 20036-3006
                                  Telephone:  (202) 663-8027
                                  Facsimile:  (202) 663-8007
                                  E-mail:  wsullivan@pillsburylaw.com


                                  Andrew M. Troop (admitted *pro hac vice*)
                                  Samuel S. Cavior (admitted *pro hac vice*)
                                  Joshua I. Schlenger (admitted *pro hac vice*)
                                  PILLSBURY WINTHROP SHAW PITTMAN LLP
                                  1540 Broadway
                                  New York, New York 10036-4039
                                  Telephone:  (212) 858-1000
                                  Facsimile:  (212) 858-1500
                                  E-mail:  andrew.troop@pillsburylaw.com


                                  *Counsel to Virginia Conservation Legacy Fund, Inc. and ERP Compliant Fuels, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that, on June 1, 2016, I caused a true copy of *VCLF's Memorandum of Law in Opposition to Black Diamond's Renewed Motion to Remand or, Alternatively, for Discretionary Abstention* (the "Document") to be (i) filed using the Court's ECF system, which caused the Document to be served on all registered users of the ECF system that have requested electronic notification of filings in the above-captioned adversary proceeding, and (ii) served by First Class Mail and e-mail upon Plaintiff/Counterclaim-Defendant Black Diamond Commercial Finance, LLC's attorneys of record admitted *pro hac vice* in the above-captioned adversary proceeding, listed as follows:

> COVINGTON & BURLING LLP
> C. William Phillips (*cphillips@cov.com*)
> Dianne F. Coffino (*dcoffino@cov.com*)
> David Z. Pinsky (*dpinsky@cov.com*)
> Alexander Setzepfandt (*asetzepfandt@cov.com*)
> Gillian Kassner (*gkassner@cov.com*)
> The New York Times Building
> 620 Eighth Avenue
> New York, New York 10018-1405

Dated: June 1, 2016
      Richmond, Virginia          PILLSBURY WINTHROP SHAW PITTMAN LLP


                          */s/ Patrick J. Potter*
                          Patrick J. Potter (VSB No. 39766)
                          1650 Tysons Boulevard, Suite 1400
                          McLean, Virginia 22102-4856
                          Telephone:  (703) 770-7900
                          Facsimile:  (703) 770-7901
                          E-mail:  patrick.potter@pillsburylaw.com

                          *Counsel to Virginia Conservation Legacy Fund, Inc.*
                          *and ERP Compliant Fuels, LLC*