UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| In re: Patriot Coal Corporation, *et al.,*<br>Debtors. | 15-32450-KLP<br>Chapter 11<br>Jointly Administered |

Black Diamond Commercial Finance, LLC,
    Plaintiff,

v.                                                            Adv. Pro. No. 16-03105-KLP

Virginia Conservation Legacy Fund, Inc.
and ERP Compliant Fuels, LLC,
    Defendants,

Virginia Conservation Legacy Fund, Inc.
and ERP Compliant Fuels, LLC,
    Counterclaim Plaintiffs,

v.

Black Diamond Commercial Finance, LLC,
    Counterclaim Defendant.

## MEMORANDUM OPINION AND ORDER

Before the Court is the "Renewed Motion to Remand, or, Alternatively, for Discretionary Abstention" filed by Plaintiff Black Diamond Commercial Finance, LLC. A hearing on the motion was held on June 16, 2016, at which the Court heard the argument of the parties. After the hearing, the Court took the matter under advisement.

## Background

On May 12, 2015, Debtor Patriot Coal Corporation and certain of its debtor affiliates (hereinafter jointly referred to as "the Debtors") commenced their chapter 11 cases in this Court.[1] The Court granted a motion for joint administration of the cases on May 13, 2015. At the time of the filing of their chapter 11 cases, the Debtors produced and marketed coal in the United States.[2]

---

[1] Related debtors whose cases are jointly administered with that of Patriot Coal Corporation, Inc. include 15-32455-KLP, Apogee Coal Company, LLC; 15-32460-KLP, Appalachia Mine Services, LLC; 15-32469-KLP, Black Stallion Coal Company, LLC; 15-32471-KLP, Brody Mining, LLC; 15-32474-KLP, Catenary Coal Company, LLC; 15-32476-KLP, Central States Coal Reserves of KY, LLC; 15-32479-KLP, Colony Bay Coal Company; 15-32480-KLP, Corydon Resources LLC; 15-32487-KLP, Coyote Coal Company LLC; 15-32482-KLP, Dodge Hill Mining Company, LLC; 15-32484-KLP, Eastern Associated Coal, LLC; 15-32489-KLP, Eastern Royalty, LLC; 15-32448-KLP, Emerald Processing, L.L.C.; 15-32493-KLP, Gateway Eagle Coal Company, LLC; 15-32497-KLP, Grand Eagle Mining, LLC; 15-32499-KLP, Heritage Coal Company LLC; 15-32452-KLP, Highland Mining Company, LLC; 15-23457-KLP, Hillside Mining Company; 15-32461-KLP, Hobet Mining, LLC; 15-32464-KLP, Jupiter Holdings LLC; 15-32449-KLP, Kanawha Eagle Coal, LLC; 15-32468-KLP, Kanawha River Ventures III, LLC; 15-32470-KLP, Little Creek LLC; 15-32473-KLP, Midland Trail Energy LLC; 15-32475-KLP, Midwest Coal Resources II, LLC; 15-32478-KLP, Mountain View Coal Company, LLC; 15-32481-KLP, Panther LLC; 15-32483-KLP, Patriot Coal Company, L.P.; 15-32485-KLP, Patriot Coal Holdings I LLC; 15-32486-KLP, Patriot Coal Holdings II LLC; 15-32490-KLP, Patriot Coal Sales LLC; 15-32492-KLP, Patriot Coal Services LLC; 15-32495-KLP, Patriot Leasing Company LLC; 15-32498-KLP, Patriot Midwest Holdings, LLC; 15-32500-KLP, Patriot Reserve Holdings, LLC; 15-32451-KLP, Patriot Ventures LLC; 15-32453-KLP, Pine Ridge Coal Company, LLC; 15-32454-KLP, Remington LLC; 15-32456-KLP, Rhino Eastern JV Holding Company LLC; 15-32458-KLP, Rivers Edge Mining, Inc.; 15-32459-KLP, Robin Land Company, LLC;15-32462-KLP, Speed Mining LLC; 15-32463-KLP, Thunderhill Coal LLC; 15-32465-KLP, Wildcat Energy LLC; 15-32466-KLP, Wildcat, LLC; 15-32467-KLP, Will Scarlet Properties LLC; and 15-32472-KLP, WWMV JV Holding Company LLC.

[2] In a declaration filed on the petition date and admitted into evidence at a hearing held May 13, 2015, Ray Dombrowski, the Chief Restructuring Officer of the Debtors, described the Debtors' operations as follows:
> The Debtors are a leading producer and marketer of coal in the United States. Patriot's principal business is the mining and preparation of thermal coal, sold primarily to electricity generators, and metallurgical coal, sold primarily to steel and coke producers. The Debtors control approximately 1.4 billion tons of proven and probable coal reserves—including owned and leased assets in the Central Appalachia basin (in West Virginia and Ohio) and Southern Illinois basin (in Kentucky and Illinois)—and their operations

As part of the Debtors' chapter 11 cases, the Debtors and the Virginia Conservation Legacy Fund, LLC, (VCLF), together with its affiliate ERP Compliant Fuels, LLC,[3] entered into an Asset Purchase Agreement, dated August 16, 2015, (the "APA"), under which VCLF agreed to acquire certain assets and assume certain liabilities from Patriot. The APA, which was a critical element of the Debtors' chapter 11 plan, was subject to the approval of this Court and the confirmation of the Debtors' chapter 11 plan. In order to fund its obligations under the APA, VCLF entered into a financing agreement with Black Diamond Commercial Finance, LLC ("Black Diamond"), memorialized by a commitment letter executed September 21, 2015 (the "Commitment Letter").

The Debtors' chapter 11 plan was confirmed on October 9, 2015, and became effective on October 26, 2015. The confirmed plan provided that on the effective date, the Debtors were authorized to consummate the APA, provided that certain conditions precedent had been satisfied. In addition, the plan approved the transactions contemplated by the Commitment Letter. (¶ 126 of order confirming Debtors' Chapter 11 plan, Dkt. 1615).

On November 5, 2015, Black Diamond filed a complaint against VCLF in the Supreme Court of the State of New York (the "New York State Court"),

---

consist of eight active mining complexes in West Virginia. Patriot employs approximately 2,870 individuals on a full-time basis, of which approximately 900 are unionized and represented by the United Mine Workers of America (the "UMWA").
(Case No. 15-32450-KLP, Dkt. 22, pp. 1-2).
[3]Subsequent references to VCLF will also refer to ERP unless otherwise noted.

3

alleging that VCLF had breached the terms of the Commitment Letter postconfirmation by using an alternative source of financing to comply with VCLF's obligations under the APA. Black Diamond sought damages in an amount not less than twenty million dollars. VCLF asserted a counterclaim against Black Diamond, alleging that Black Diamond had anticipatorily breached the Commitment Letter, for which VCLF sought damages.

Upon motion of VCLF, the lawsuit was removed from the New York State Court to the United States District Court for the Southern District of New York, which referred the case to the United States Bankruptcy Court for the Southern District of New York (the "New York Bankruptcy Court"). Black Diamond then moved to have the action remanded to the New York State Court (the "Remand Motion"), while VCLF moved that the action be transferred to this Court (the "Transfer Motion").

In an opinion entered April 25, 2016, the New York Bankruptcy Court granted the Transfer Motion and denied the Remand Motion without prejudice, ruling that this Court, being the "home" bankruptcy court, properly should consider the Remand Motion. As a result, the instant adversary proceeding was opened in this Court on April 26, 2016. On May 6, Black Diamond filed its "Renewed Motion to Remand or, Alternatively, for Discretionary Abstention" (the "Renewed Motion to Remand").

4

## Conclusions of Law

Jurisdiction. In its opinion granting the Motion to Transfer, the New York Bankruptcy Court determined that the bankruptcy court has subject matter jurisdiction over the dispute between Black Diamond and VCLF. In so finding, the court analyzed the law and the facts in depth. This Court concurs with the conclusion of the New York Bankruptcy Court and notes that presently there is no active dispute as to jurisdiction before this Court.[4]

---

[4] Black Diamond points out that the issue of subject matter jurisdiction is subject to later appeal. *See, e.g., Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006). For that reason, this Court supplements the analysis of the New York Bankruptcy Court by noting that the Fourth Circuit's approach to subject matter jurisdiction under 28 U.S.C. § 1334(b) and 28 U.S.C. §157(a) does not require a different result.

As a preliminary matter, 28 U.S.C. § 1334(b) provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 157(a) gives the district courts authority to refer to the bankruptcy courts "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 . . . " The United States District Court for the Eastern District of Virginia has made such a referral by a general order of reference dated August 15, 1984.

A case arises under title 11 if "federal bankruptcy law creates the cause of action or if the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal bankruptcy law." *In re Rowe Furniture, Inc.*, No. 06-11143-SSM, 2007 WL 2481421, at *4 (Bankr. E.D. Va. Aug. 28, 2007). Under that definition, the instant case does not arise under title 11.

A proceeding arises in a bankruptcy case if it is "not based on any right expressly created by Title 11, but nevertheless, would have no existence outside of the bankruptcy." *Bergstrom v. Dalkon Shield Claimants Trust (In re A.H. Robins Co.)*, 86 F.3d 364, 372 (4th Cir. 1996). "Related to" jurisdiction is a much broader concept than "arising in" jurisdiction. The Fourth Circuit follows the mandate of the Supreme Court in *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995) and has held that:

> [a] civil case filed in a district court is related to a case in bankruptcy if the outcome in the civil case "*could conceivably have any effect on the estate being administered in bankruptcy*... if the out-come could alter the debtor's rights, liabilities, options, or freedom of action (positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Celotex,* 514 U.S. at 308, n. 6, 115 S.Ct. 1493 (quoting *Pacor,* 743 F.2d at 994) (internal quotations omitted) (italics in *Pacor*).

*New Horizon of NY LLC v. Jacobs*, 231 F.3d 143, 151 (4th Cir. 2000).

Therefore, under the law as applied in the Fourth Circuit, in order for this Court to have "related to" jurisdiction over the dispute between Black Diamond and VCLF, it must be conceivable that the dispute could have an effect on the bankruptcy estate. The New York Bankruptcy Court found that the "conceivable effect" test had been satisfied, stating that

<u>The Renewed Motion to Remand</u>.  Under 28 U.S.C. § 1452(b), the Court may remand an action on "any equitable ground."  Under 28 U.S.C. § 1334(c)(1), the Court may abstain "in the interest of justice, or in the interest of comity with State courts or respect for State law."  The parties have combined the issues of abstention and remand.  *See Massey Energy Co. v. W. Va. Consumers for Justice*, 351 B.R. 348, 354 n.4 (E.D. Va. 2006) ("Finally, even outside the **abstention** provisions of § 1334, this Court still would find that **remand** is appropriate under § 1452, since the **same** considerations requiring **abstention** from the case under § 1334(c)(1) clearly constitute "equitable ground[s]" for **remand**.") (emphasis in original).

At first blush, this action appears to be solely a state law breach of contract dispute between two non-debtor parties.  Black Diamond argues that the debtor is not a party to this lawsuit and that the outcome will not in any way implicate the liquidating trust that was established upon confirmation of the Debtors' chapter 11 liquidating plan.  However, VCLF counters that in the absence of the Debtors' bankruptcies, which gave rise to the APA, the Commitment Letter and the subsequent breach thereof would not have occurred.  It further argues that the APA and the Commitment Letter were an integral part of the confirmed chapter 11 plan and thus are related to the

---

"regardless of whether the Court applies the conceivable effect or close nexus test, the result of the subject matter jurisdiction inquiry in this case is the same.  Even under the more stringent close nexus test, the Court concludes that the outcome of this case affects the interpretation, implementation, consummation, or administration of the confirmed Plan."  15-01409 (MG), slip op. at 8 (Bankr. S.D.N.Y. April 25, 2016).  Thus, application of Fourth Circuit precedent does not change the jurisdictional analysis and decision of the New York Bankruptcy Court.

6

bankruptcy case. It also urges that discretionary abstention is a doctrine that must be employed in only exceptional circumstances, citing *In re Butterfield*, 339 B.R. 366, 373 (Bankr. E.D. Va. 2004).

VCLF has offered another argument in support of its assertion that the outcome of this lawsuit affects the bankruptcy estate. At the June 16, 2016, hearing on the Motion to Remand, VCLF's counsel stated (and Black Diamond's counsel did not dispute)[5] that when the APA was consummated without the Black Diamond funding, VCLF "arranged through the debtor to obtain five million dollars in financing" in order to close on the APA. (Transcript from hearing held June 16, 2016, p.29, l.4) Its ability to repay that amount to the liquidating trust, it argues, will directly affect the liquidating trust's distribution to creditors.

Furthermore, VCLF claims that if it were to be found liable and required to pay twenty million dollars to Black Diamond, its financial viability may be affected, further impacting its ability to repay its obligation to the liquidating trust. Therefore, VCLF asserts, the liquidating trust and Debtors' creditors may be affected by the outcome of the lawsuit. (Transcript from hearing held June 16, 2016, p.29, ll. 13-16).[6]

---

[5] At the hearing, the Court stated, "They apparently borrowed five million dollars from the debtor to effectuate the closing." Counsel for Black Diamond responded that "I understand that. And that's an arrangement. But that is – they did close that, and they closed it without the financing from my client . . . ." (Transcript from hearing held June 16, 2016, p.42, ll.1-6).

[6] VCLF also argues that if it is required to pay damages to Black Diamond, the issue of federal mine profit interest distribution will have to be figured into the damages calculation. It urges that this is another connection between the subject matter of the lawsuit

7

Both Black Diamond and VCLF cite the twelve-factor *Ahearn* test, in which this Court listed the factors a court should consider when determining whether to exercise permissive abstention:

> (1) The court's duty to resolve matters properly before it; (2) The predominance of state law issues and non-debtor parties; (3) The economical use of judicial resources; (4) The effect of remand on the administration of the bankruptcy estate; (5) The relatedness or remoteness of the action to the bankruptcy case; (6) Whether the case involves questions of state law better addressed by the state court; (7) Comity considerations; (8) Any prejudice to the involuntarily removed parties; (9) Forum non conveniens; (10) The possibility of inconsistent results; (11) Any expertise of the court where the action originated; and (12) The existence of a right to a jury trial.

*Kepley Broscious, PLC, v. Ahearn (In re Ahearn)*, 318 B.R. 638, 644 (Bankr. E.D. Va. 2003).

Below are the parties' arguments as to each factor.

*Duty of the Court to resolve the issue.* Black Diamond argues that the Court has no duty to hear the case because it involves state law issues. VCLF argues that the case is properly before the Court for the same reasons that the New York Bankruptcy Court determined that jurisdiction is proper in the bankruptcy court. It also emphasizes that discretionary abstention must be employed only in exceptional circumstances, which are not present in this case.

*Predominance of state law issues and non-debtor parties.* Black Diamond relies on the fact that the lawsuit involves state law issues and non-

---

and the bankruptcy estate that supports this Court's retention of jurisdiction. (Transcript from hearing held June 16, 2016, p.27, ll. 8-11).

8

debtor parties and argues that the bankruptcy estate is not implicated in any way. VCLF, as outlined above, argues that the action impacts the bankruptcy estate because of, among other things, its five million dollar repayment obligation to the liquidating trustee and the issue of the allocation of federal mine profit interest. *See supra* note 7.

*The economical use of judicial resources.* Black Diamond argues that if the case remains before this Court, the issue of jurisdiction could be raised at any time, which might result in a delay or possible retrial of the issues before this Court. VCLF counters that the New York State Court would not be as aware of the facts and circumstances of the underlying bankruptcy case as this Court is and notes that no substantive action has taken place in the New York State Court, the case having never been assigned a judge before immediately being removed.

*The effect of remand on the administration of the bankruptcy estate.* Black Diamond asserts that remand would not affect the bankruptcy estate, as the estate is not a party to this action. VCLF argues to the contrary, for the reasons stated above, citing in particular the issues of the repayment of the five million dollar loan and federal mine profit interest allocation.

*The relatedness or remoteness of the action to the bankruptcy case.* Black Diamond argues that the action is totally unrelated to the bankruptcy case. VCLF argues that the Commitment Letter is inextricably intertwined with the bankruptcy estate, since it was entered into to enable VCLF to

9

execute the APA. It also points out that the Debtors' confirmed plan contains a retention of jurisdiction provision. In addition, VCLF again raises the issue of VCLF's five million dollar obligation to the liquidating trustee and possible implications to the estate of an award against VCLF. It also argues that its unjust enrichment affirmative defense to the Complaint implicates the bankruptcy estate as it relates to the distribution of federal mine profit interest.

*Comity considerations and whether the case involves questions of state law better addressed by the state court.* Black Diamond argues that this case involves only state law breach of contract issues, which weighs heavily in favor of remand. It also points out that the Commitment Letter was negotiated in New York, executed in New York, and contains a choice of law provision requiring it to be interpreted in accordance with New York law. VCLF argues that the state law issues in the case are not complex or unsettled and do not raise questions of important state policy. It stresses that this Court is competent to adjudicate a contract dispute, whether using New York law or Virginia law.

*Prejudice to the involuntarily removed parties and forum non conveniens.* Black Diamond argues that the matter should remain in New York, which is the forum that it chose in filing the lawsuit. It alleges that many of the events giving rise to the lawsuit, including the negotiation and execution of the Commitment Letter, took place in New York. It also asserts

that Black Diamond does substantial business in New York.  VCLF points out that in determining jurisdiction, the New York Bankruptcy Court found that "the convenience of the parties . . . support[s] transfer to the Virginia Bankruptcy Court."  Further, it argues that VCLF is a non-profit entity located in Virginia, where the underlying bankruptcy case was conducted.  It also notes that the Commitment Letter does not contain a forum selection clause.

*The possibility of inconsistent results.*  Black Diamond argues that there is no possibility of inconsistent results resulting from a remand, as there are no other pending lawsuits.  Conversely, VCLF argues that should the case be heard by the New York State Court, that court's decision might be inconsistent with this Court's decisions should there be future litigation in the underlying bankruptcy case concerning the distribution of federal mine profit interest.

*Any expertise of the court where the action originated.*  Black Diamond argues that the New York State Court is expert at resolving complex commercial transactions interpreted under New York law.  In fact, it points out, this case would be heard in the Commercial Division of the New York State Court, which has experience in presiding over such disputes.  VCLF argues that resolution of the case does not require a court with special expertise but instead requires only a straightforward application of contract law.

11

As noted by this Court in *Hagan v. Lawyers Title Insurance Corp. (In re LandAmerica Financial Group, Inc.)*, Adv. No. 10-03168-KRH, 2011 WL 203986, *5-6 (Bankr. E.D. Va. Jan. 21, 2011), a bankruptcy court has "considerable discretion when deciding whether to abstain from adjudicating a removed action. . . . Unlike the all-or-nothing analysis required for mandatory abstention, the Court is free to consider these factors as it deems appropriate in the full exercise of its discretion." The Court has considered the above factors as they relate to the action before it and finds that the factors primarily support VCLF's position. Although neither of the parties to the adversary proceeding is a debtor before the Court, the APA and Commitment Letter form an integral part of the Debtors' chapter 11 plan and the outcome of the litigation is likely to have a material effect upon the Debtors' liquidating trust. The litigation had not begun in any significant way when the action was removed and transferred. The state law contract issues are not complex. The confirmed plan contains a retention of jurisdiction provision.[7] The Court is not persuaded that remand or

---

[7] While the Commitment Letter does not contain a forum selection clause, Article XI of the Debtors' confirmed chapter 11 plan provides that this Court retains jurisdiction over "all matters, arising out of, or related to, the Chapter 11 Cases and the Plan . . . ." The plan specifically provides that this Court has jurisdiction to "resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan, the Blackhawk Transaction Documents,[or] the VCLF Transaction Documents . . . ." VCLF argues that the Court should take this retention of jurisdiction provision into account when deciding whether to remand the case. Although the confirmed plan itself cannot confer jurisdiction, which is governed solely by 11 U.S.C. § 1334, *see Valley Historic Ltd. P'ship. v. Bank of N.Y.*, 486 F.3d 831, 837 (4th Cir. 2007), the Court notes the plan's retention of jurisdiction provision when evaluating the Renewed Motion to Remand and the twelve factors of *Kepley Broscious, PLC, v. Ahearn (In re Ahearn)*, 318 B.R. 638, 644 (Bankr. E.D. Va. 2003).

abstention is appropriate in this case. Accordingly, Black Diamond's

Renewed Motion to Remand is DENIED.

Signed: September 23, 2016

                                            /s/ Keith L. Phillips
                                  United States Bankruptcy Judge

Entered on Docket: September 23, 2016

Copies:

Dianne F. Coffino
Covington & Burling LLP
620 Eighth Avenue
New York, NY 10018-1405

C. William Phillips
Covington & Burling LLP
620 8th Avenue
New York, NY 10018

David Zorian Pinsky
Covington & Burling LLP
620 8th Avenue
New York, NY 10018

Dion W. Hayes
McGuireWoods LLP
800 East Canal Street
Richmond, VA 23219

John H. Maddock III
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219

Patrick J. Potter
Pillsbury Winthrop Shaw Pittman LLP
1200 Seventeenth Street NW
Washington, DC 20036

13

Joshua I. Schlenger
Pillsbury Winthrop Shaw Pittman LLP
1540 Broadway
New York, NY 10036

William M. Sullivan, Jr.
Pillsbury Winthrop Shaw Pittman LLP
2300 N. Street, NW
Washington, DC 20037

William Michael Sullivan
Pillsburg Winthrop Shaw Pittman LLP
1200 Seventeenth Street, NW
Washington, DC 20036

Andrew M. Troop
Pillsbury Winthrop Shaw Pittman LLP
1540 Broadway
New York, NY 10036