Dion W. Hayes (VSB No. 34304)
John H. Maddock III (VSB No. 41044)
McGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219-3916
Telephone: (804) 775-1178
Facsimile: (804) 698-2186
Email: dhayes@mcguirewoods.com
        jmaddock@mcguirewoods.com

- and -

C. William Phillips (admitted *pro hac vice*)
Micaela McMurrough (admitted *pro hac vice*)
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY  10018
Telephone: (212) 841-1000
Facsimile: (212) 841-1010
Email: cphillips@cov.com
        mmcmurrough@cov.com

*Counsel to Black Diamond Commercial
Finance, LLC*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | |
|---|---|
| In re:<br><br>PATRIOT COAL CORPORATION, *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 15-32450 (KLP)<br><br>Jointly Administered<br><br>Adv. Proc. No. 16-03105 (KLP) |
| BLACK DIAMOND COMMERCIAL FINANCE, LLC,<br><br>Plaintiff,<br><br>v. | |

VIRGINIA CONSERVATION LEGACY FUND, INC. and
ERP COMPLIANT FUELS, LLC,

        Defendants.

---

VIRGINIA CONSERVATION LEGACY FUND, INC. and
ERP COMPLIANT FUELS, LLC,

        Counterclaim-Plaintiffs,

        v.

BLACK DIAMOND COMMERCIAL FINANCE, LLC,

        Counterclaim-Defendant.

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT**

TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................. 1

FACTS ............................................................................................................................ 3
    *Background* ............................................................................................................. 3
    *Discovery* .............................................................................................................. 7
    *Black Diamond's Motion for Sanctions* ............................................................. 10

ARGUMENT .................................................................................................................. 12

POINT I.  Defendants' Summary Judgment Motion Should be Denied  or Postponed Pursuant to Federal Rule of Civil Procedure 56(d) ................................................................. 14

POINT II.  Defendants Are Not Entitled to Partial Summary Judgment ................................ 19

CONCLUSION ................................................................................................................ 23

<u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Admiralty Island Fisheries, Inc. v. Millard Refrigerated Servs., Inc.*,
   No. 805CV541, 2007 WL 1794939 (D. Neb. June 14, 2007) ........................................... 15

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ...................................................................................................... 12, 18

*Ballinger v. N.C. Agr. Extension Serv.*,
   815 F.2d 1001 (4th Cir. 1987) ............................................................................................ 12

*In re Best Payphones, Inc.*,
   432 B.R. 46 (S.D.N.Y. 2010), *aff'd* 450 F. App'x 8 (2d Cir. 2011) ................................. 21

*In re China Merch. Steam Nav. Co.*,
   259 F. Supp. 75 (S.D.N.Y. 1966) ........................................................................................ 16

*Concord Labs., Inc. v. Concord Med. Ctr.*,
   552 F. Supp. 549 (N.D. Ill. 1982) ....................................................................................... 15

*De Lorenzo v. Bac Agency, Inc.*,
   256 A.D.2d 906 (3d Dep't 1998) .................................................................................... 20, 21

*Dejarnette v. Immigration Centers of America-Farmville, LLC*,
   No. 1:13-CV-706, 2014 WL 12575730 (E.D. Va., May 5, 2014) ..................................... 12

*Founding Church of Scientology v. Webster*,
   802 F.2d 1448 (D.C. Cir. 1986) ...................................................................................... 15, 16

*In re French*,
   499 F.3d 345 (4th Cir. 2007) .............................................................................................. 19

*Graham v. Progress Energy, Inc.*,
   385 F. App'x 303 (4th Cir. 2010) ....................................................................................... 12

*Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Balt.*,
   721 F.3d 264 (4th Cir. 2013). ............................................................................................. 13

*Harrods Ltd. v. Sixty Internet Domain Names*,
   302 F.3d 214 (4th Cir. 2002) ......................................................................................... 14, 19

*IBM Credit Fin. Corp. v. Mazda Motor Mfg. (USA) Corp.*,
   92 N.Y.2d 989 (1998) ......................................................................................................... 21

*IBM Credit Fin. Corp. v. Mazda Motor Mfg. (USA) Corp.*,
   245 A.D.2d 78 (1st Dep't 1997) .......................................................................................... 21

*Jackson v. Griffith*
    480 F.2d 261, 267 (10th Cir. 1973) ................................................................................. 18

*Klyczek v. Shannon,*
    No. 1:15-CV-0963 (GTS), 2016 WL 7012650 (W.D.N.Y. Dec. 1, 2016) ................. 13, 18

*McCray v. Maryland Department of Transportation*
    741 F.3d 480, 487 (4th Cir. 2014) ......................................................... 14, 15, 18

*Mills v. Holmes,*
    2014 WL 12656622, at *2 (E.D. Va., Feb. 20, 2014) ...................................................... 19

*O'Connor v. Sleasman,*
    14 A.D.3d 986 (3d Dep't 2005) ........................................................................ 21

*O'Shanter Res., Inc. v. Niagara Mohawk Power Corp.,*
    915 F. Supp. 560 (W.D.N.Y. 1996) ................................................................. 21

*Pesa v. Yoma Dev. Grp., Inc.,*
    18 N.Y.3d 527 (2012) ........................................................................................ 21

*In re Prof'l Coatings (N.A.), Inc.,*
    210 B.R. 66 (Bankr. E.D. Va. 1997) .................................................................. 13

*Pulliam Inv. Co., Inc. v. Cameo Properties,*
    810 F.2d 1282 (4th Cir. 1987) ......................................................................... 13

*River Terrace Assocs., LLC v. Bank of N.Y.,*
    10 Misc. 3d 1052(A) (N.Y. Sup. Ct.), *aff'd*, 23 A.D.3d 308 (1st Dep't
    2005) ........................................................................................................... 21

*Rux v. Starbucks Corp.,*
    No. 2:05-cv-2299-MCE-EFB, 2007 WL 273917 (E.D. Cal. Jan. 29, 2007) ................... 15

*Smith v. Univ. of N. Carolina,*
    632 F.2d 316 (4th Cir. 1980) ........................................................................... 12

*Smith v. Virginia Commonwealth Univ.,*
    84 F.3d 672 (4th Cir. 1996) ............................................................................. 20

*Turchan v. United States,*
    No. 10-CV-11691, 2011 WL 1345032 (E.D. Mich. Apr. 8, 2011) .................................. 15

*Tyree v. United States,*
    642 F. App'x 228 (4th Cir. 2016) (unpublished) ............................................................ 18

*United States v. Bernard*
    941 F.2d 1207, 1991 WL 157264, at *2 (4th Cir., Aug. 19, 1991) ................................ 15

*Webster v. Rumsfeld*, 156 F. App'x 571 (4th Cir. 2005) ................................................. 13, 14

*Wecare Holdings, LLC v. Bedminster Int'l Ltd.*,
    No. 08-CV-6213, 2009 WL 604877 (W.D.N.Y. Mar. 9, 2009) ........................................ 21

**Other Authorities**

Fed. R. Civ. P. 56 ............................................................................................................ 12, 14

Fed. R. Bankr. P. 9506 ......................................................................................................... 12

20 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE &
    PROCEDURE DESKBOOK ..................................................................................................... 15

Plaintiff Black Diamond Commercial Finance, LLC ("Black Diamond"), by its

attorneys McGuireWoods LLP and Covington & Burling LLP, respectfully submits this

Memorandum of Law in Opposition to Defendants' Motion for Partial Summary Judgment.

<u>PRELIMINARY STATEMENT</u>

As courts in this Circuit have held time and again, summary judgment is an

extraordinary remedy that should only be granted when, after the facts and evidence are

collected through discovery, it is clear that there is no genuine issue of material fact in

dispute.  Here, discovery is nowhere near completion:  Among other shortcomings, Black

Diamond has not yet been allowed to depose any of Defendants' witnesses and there is a

significant motion pending regarding Defendants' failures to produce relevant documents.

The facts that are known demonstrate that genuine issues of material fact abound, apparent on

the face of Defendants' brief and on the exhibits attached to their misguided, premature

motion.

It is black-letter law that summary judgment should not be granted before discovery is

complete.  Without complete discovery, a party opposing a summary judgment motion does

not have access to the facts necessary to refute a movant's claims, thereby prejudicing the

non-moving party.  Contrary to Defendants' assertion, a movant cannot circumvent the need

for discovery by introducing self-serving declarations and claiming that additional document

discovery and deposition testimony is unnecessary based on what their own witnesses say.

Courts routinely hold that a party opposing summary judgment is entitled to challenge the

veracity of assertions made in declarations through depositions or other means.  Because

Defendants' motion for partial summary judgment is premature, Black Diamond seeks relief

under Federal Rule of Civil Procedure 56(d) for an order denying Defendants' partial

summary judgment motion.

In addition to the need to complete discovery, summary judgment is wholly inappropriate here in light of the many issues of material fact in dispute. Defendants contend that there is no dispute of material fact with respect to two issues: (1) whether Defendants breached the parties' commitment letter by soliciting alternative financing to fund their attempt to purchase assets from the debtor Patriot Coal Corporation ("Patriot"), and (2) whether Black Diamond breached or repudiated the commitment letter by proposing alternative financing terms shortly before the transaction with Patriot was due to close or delaying the circulation of loan documents. Both contentions are wrong.

With respect to the first issue, numerous documents produced by Defendants show that principals of defendant Virginia Conservation Legacy Fund, Inc. ("VCLF") and affiliate Iron Management, LLC ("Iron Management") solicited financing from alternative funding sources throughout the contractual period, and ultimately closed their transaction with Patriot with financing from other sources. These solicitations were explicitly in breach of the Commitment Letter's prohibition that Defendants may not "solicit or accept an offer by any person other than Black Diamond of any debt or equity financing" in connection with Defendants' transaction with Patriot. Defendants try to explain away these documents by claiming that such communications do not reflect solicitations of financing to "close" their transaction with Patriot, but this argument fails for several reasons. First, the documents in question do not distinguish between financing to "close" the Patriot transaction and financing sought for any other reason, including to "replace" Black Diamond's financing with funds from other sources. The Commitment Letter's prohibition on soliciting alternative financing was never limited to "closing financing" (whatever that is), but instead prohibited any financing that "facilitat[ed] *in any manner* the consummation of the transactions." In any case, the agreement forbids Defendants from engaging in other conduct at issue in this case, including closing the Patriot transaction without providing Black Diamond with promised

equity interests.  Thus, on the face of the documentary record, it is obvious that Defendants

breached the Commitment Letter.

With respect to the second issue—*i.e.*, the allegation that Black Diamond breached or

repudiated the Commitment Letter by proposing amended financing terms on October 23,

2015—Richard Ehrlich, the Black Diamond managing director most closely involved in the

negotiations, directly refutes Defendants' contention.  (*See* Declaration of Richard A. Ehrlich

("Ehrlich Decl."), submitted herewith.)  In particular, Mr. Ehrlich attests to the fact that he

discussed proposed changes to the Commitment Letter with VCLF principal Thomas Clarke

in the days leading up to October 23, 2015, and in fact, Mr. Clarke agreed to these changes no

later than October 22, 2015.  Mr. Clarke never mentions these conversations with Black

Diamond in the declaration that he submitted in connection with Defendants' motion, and he

cannot supplement his story to address these missing details on reply.  Mr. Clarke's

conversations with Black Diamond directly refute Defendants' contention that Black

Diamond breached the commitment letter by proposing revised financing terms along with

any insinuation that VCLF was somehow "surprised" by the change in terms.

In short, there are a host of material facts in dispute, any one of which prevents the

Court from applying the "drastic" remedy of summary judgment under the law.  Defendants'

motion should therefore be denied.

## FACTS[1]

### *Background*

This action arises from Defendants' breach of an exclusive financing agreement with

Black Diamond.  (*See* Complaint ("Compl.") (ECF No. 2-8), at ¶ 1.)

---

[1] In addition to the facts set forth below, Black Diamond respectfully refers the Court to its
Statement of Facts, Alleged by Defendants to be Material, as to Which Black Diamond
Contends a Genuine Issue Exists, filed contemporaneously herewith and incorporated herein
by reference.

On September 21, 2015, Defendants and Black Diamond executed a commitment letter (the "Commitment Letter") pursuant to which Black Diamond agreed to loan Defendants $25 million for, among other things, working capital in connection with their purchase of certain assets from Patriot, including a coal mine in West Virginia (the "Federal Mine"). (Ex. A (BDCF-00028157).)  Defendants, in turn, agreed to work exclusively with Black Diamond and—critically—neither to solicit nor accept financing offers from any other sources that would facilitate in any manner the consummation of the transaction. (*Id.* at -159.):

> [VCLF] *shall not solicit or accept* an offer by any person other than Black Diamond of any debt or equity financing for the purpose of facilitating in any manner the consummation of the transactions contemplated by the VCLF APA.

(*Id.* (emphasis added).)  Defendants also agreed not to pursue Patriot's assets with any person other than Black Diamond and not to purchase those assets without providing Black Diamond with specified equity interests in related companies. (*Id.*)

After executing the Commitment Letter, Black Diamond began working to satisfy the conditions for closing, including legal and business due diligence. (*See* Declaration of Adam Harris ("Harris Decl."), ¶ 8; Declaration of Richard Ehrlich ("Ehrlich Decl."), ¶ 9; Ex. B (Pl.'s Resps. & Objs. to Defs.' First Set of Interrogatories, at 9-10, 16-17).)

████████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████

Because of these issues, on or about October 20, 2015, Black Diamond began

discussing with Defendants certain modifications to the financing structure, including moving

from an asset-based loan structure to a receivables purchase facility.  (Ehrlich Decl., ¶ 15.)

As Black Diamond explained to Defendants, a receivables purchase facility would provide

benefits to both parties, including by affording Black Diamond greater protection if the

Federal Mine filed for bankruptcy, and by freeing up cash flow for Defendants by increasing

the Federal Mine's liquidity.  ████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████

Between October 20 and October 23, 2015, Defendants and Black Diamond

continued to discuss amendments to the financing structure.  During those conversations, the

parties discussed Black Diamond's suggested modifications to the financing structure and

Black Diamond received Defendants' approval for all of the modifications.  Indeed, VCLF

principal Thomas Clarke offered his own proposed amendments to the Commitment Letter,

including by offering to provide a personal guarantee to cover a portion of Defendants'

obligations.  (Ehrlich Decl. ¶ 15.)[2]

---

[2]      In their motion, Defendants assert that the term including the personal guarantee was
"required" by Black Diamond, (Dkt. No. 138, at 9), when in fact the opposite is true.
According to Black Diamond's witnesses, Mr. Clarke affirmatively *offered* the personal
guarantee.   (Ehrlich Decl. ¶ 15.)  This is just one more example of a genuine factual dispute

On October 22, 2015, Black Diamond and Defendants reached agreement on the revised terms of Black Diamond's financing, and on October 23, Black Diamond sent emails to Defendants reflecting the already agreed-upon terms.  (Ex. J (BDCF-00076338); Ex. K (BDCF-00076458); Ex. L (BDCF-00076502); Ex. M (BDCF-00076511).)  After reaching agreement, however, on Friday October 23, Defendants abruptly stopped responding to Black Diamond's calls and emails.  (Ehrlich Decl., ¶ 18.)  Defendants continued to ignore Black Diamond's emails through the next day as well.  (*Id.*, ¶ 20.)

Contrary to Defendants' assertion, Defendants' refusal to respond to Black Diamond was not based on a belief that Black Diamond had breached the parties' agreement.  Indeed, as Defendants' own counsel stated on October 23, 2015:



(Ex. N (KE_BD_0002431) (emphasis added).)  In other words, on October 23—the date Black Diamond supposedly "repudiated" the contract—

After refusing to respond to Black Diamond on October 23 and 24, 2015, Defendants' counsel finally emailed Black Diamond late in the afternoon of Sunday, October 25, 2015, threatening that, unless Black Diamond agreed to close the next day on the terms in the original Commitment Letter (disregarding the parties' recently agreed-upon changes), Defendants would accept alternative financing from another source.  (Ex. O (Ltr. from P.

---

concerning the modification of the Commitment Letter that makes summary judgment inappropriate.

Potter to A. Harris, dated Oct. 25, 2015).) ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████ Defendants replied that they were

no longer bound by the Commitment Letter and would not honor the parties' agreement.  (Ex.

Q (Second Ltr. from P. Potter to A Harris, dated October 25, 2015).)  Instead they informed

Black Diamond that—in flagrant breach of the Commitment Letter—they had already lined

up another financing source and now planned to accept the alternative financing arrangement

that had already been negotiated.  (*Id.*; *see also* Ex. R (BDCF-00077290).)

On October 27, 2015, Defendants closed their transaction with Patriot without any

financing from Black Diamond.  (Ex. S (Notice of Confirmation of Debtors' Chapter 11

Plan).)  Instead, Defendants closed with a ████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

*Discovery*

Black Diamond filed this lawsuit in October 2015, and discovery has so far been

limited to documents.  In fact, Black Diamond requested documents in early August 2016,

but—after numerous extensions of deadlines and amendments to the Court's Scheduling

Order, all sought by Defendants—more than one year later Defendants still had not finished

their production.  Defendants made their latest production of documents on August 28, 2017,

a mere five weeks ago.  Given the slow pace of Defendants' document productions, not a

single deposition has taken place.

Nevertheless, the limited discovery that Defendants have produced confirms that

Defendants breached the Commitment Letter.  In particular, Defendants have produced

numerous documents showing that VCLF and its affiliates started soliciting alternative

financing from sources other than Black Diamond weeks before the critical October 23

weekend when Defendants claimed that Black Diamond repudiated the contract.  For

example:



---

3       Jason McCoy is a principal of Iron Management, LLC ("Iron Management"), an
entity that Defendants have repeatedly asserted is their "affiliate" and working with
Defendants for a common purpose  (*See, e.g.*, Defs.' Opp'n to Pl.'s Mot. to Compel, at 17
(Dkt. No. 81) ("Iron Management had been an affiliate of VCLF and ERP since at least
August 6, 2015."); *see also* VCLF's Pre-Hr'g Mem., at 6 (Dkt. No. 119) ("From and after
early August 2015, the McCoys were an integral part of the VCLF team.")  Iron Management
produced documents to Black Diamond without Bates numbers.



These documents and emails put to rest any question as to whether Defendants were soliciting alternative financing in violation of the Commitment Letter well before the purported October 23 benchmark.

Black Diamond will also prove that Defendants had expressly *agreed to* the changes in the loan agreement before October 23, 2015, and thus the change in loan structure to a receivables purchase facility was neither a surprise nor a breach or repudiation of the Commitment Letter.  As such, all of Defendants' post-October 23, 2015 solicitations of

alternative financing were *also* violations of the Commitment Letter.  Because there have not

been any depositions in this action, however, Black Diamond has been unable to question

witnesses about the events in question or related documents.

### Black Diamond's Motion for Sanctions

As the Court is aware, discovery in this action has been contentious.  Black Diamond

served discovery requests on Defendants on August 5, 2016, but Defendants did not

meaningfully respond to those requests until months later, in January 2017.  Moreover,

Defendants produced a privilege log on January 25, 2017 that listed over ███████████████

███████████████████████████████████████   On February 17, 2017, Black Diamond

was forced to file a motion to compel, (Dkt. No. 69), and the parties' litigated that motion for

months.  Ultimately, Defendants produced hundreds of documents to Black Diamond in

response to the motion, including the last production, which was made on August 28, 2017.

Given Defendants' discovery abuses—including the withholding of non-privileged

documents and the mischaracterization of documents on their privilege log—Black Diamond

informed the Court and Defendants on August 29, 2017 that it was preparing a motion for

sanctions.  Since then, Defendants have engaged in what can only be described as a series of

harassing and vexatious litigation tactics designed to retaliate against Black Diamond.

Specifically:

- On September 5, 2017—and after delaying document production in this case for a
  year—Defendants proposed an expedited discovery schedule that contemplated the
  completion of discovery, summary judgment, and a trial in a matter of weeks.  (Dkt.
  No. 128.)

- On September 7, 2017, just days after proposing the schedule—and before the Court
  had an opportunity to weigh in—Defendants noticed five depositions of Black
  Diamond's witnesses and insisted that all such depositions be completed by the end of
  October.

- Then, on September 12, 2017, only a few days after serving deposition notices, Defendants filed a motion for partial summary judgment. (Dkt. No. 132.)  When Black Diamond asked if Defendants' summary judgment motion meant that they no longer wished to pursue depositions, Defendants insisted that Black Diamond produce its witnesses for depositions by the end of October while *simultaneously* responding to Defendants' summary judgment motion.

- On September 19, 2017, while the parties continued to work out deposition scheduling, Defendants filed a motion to compel depositions. (Dkt. No. 152.) Defendants filed their motion—including a motion for an expedited hearing to take place the next day—without first meeting and conferring with Black Diamond.  When Defendants notified Black Diamond of their intent to file their motion, Black Diamond even *offered* to meet and confer, but Defendants ignored Black Diamond's offer.  (Ex. CC (Email from M. McMurrough to J. Schlenger, dated Sept. 19, 2017).) Ultimately, Defendants filed their motion less than an hour after first notifying Black Diamond of their intent to file, and did not respond to the offer to meet and confer until after the filing of the motion.  When Black Diamond filed its opposition, Defendants immediately reached out to Black Diamond about withdrawing their motion.

On September 15, 2017, Black Diamond filed its motion for sanctions.  The motion sought attorneys' fees as well as an order from the Court deeming Defendants to have waived privilege over the documents listed on their privilege log.  (Dkt. No. 146.)  In the alternative, Black Diamond sought an order from the Court directing Defendants to submit additional documents from their privilege log to the Court or the Examiner for review.  (*Id.*)  Black Diamond's motion for sanctions will be fully briefed as of October 6, 2017.

*          *          *

As explained above, discovery in this action is not complete.  Depositions have not begun as of the filing of this brief, and Black Diamond is seeking the production of additional documents pursuant to its motion for sanctions.  Accordingly, Black Diamond submits that Defendants' motion for summary judgment is premature and should be denied pursuant to

Federal Rule of Civil Procedure 56(d).  Alternatively, Black Diamond submits that there are

issues of material fact in dispute, precluding the entry of summary judgment.

<u>ARGUMENT</u>

Summary judgment is a "drastic . . . remedy" that "should not be granted unless it is

perfectly clear that there are no genuine issues of material fact in the case."  *Ballinger v. N.C.

Agr. Extension Serv*., 815 F.2d 1001, 1004-05 (4th Cir. 1987).  Proving the *absence* of a

genuine issue of material fact is a tall order, particularly under controlling Fourth Circuit case

law.  In the Fourth Circuit, courts evaluating a summary judgment motion must believe "the

nonmoving party's evidence" and draw "all justifiable inferences . . . in [the non-moving]

party's favor."  *Graham v. Progress Energy, Inc.*, 385 F. App'x 303, 304 (4th Cir. 2010)

(quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)).  Courts must deny a summary

judgment motion whenever a fact-finder could reasonably find in favor of the non-moving

party with respect to a material fact.  *See Dejarnette v. Immigration Centers of America-

Farmville, LLC*, No. 1:13-CV-706, 2014 WL 12575730, at *1 (E.D. Va., May 5, 2014)

(citing *In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999)).  Even a single issue of

material fact will preclude the entry of summary judgment.  *Smith v. Univ. of N. Carolina*,

632 F.2d 316, 338 (4th Cir. 1980).

Summary judgment is particularly inappropriate in cases like this one, when a party

moves for summary judgment before discovery has closed.  As the Supreme Court has held,

the federal discovery rules require that "summary judgment be refused where the nonmoving

party has not had the opportunity to discover information that is essential to his opposition."

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 n.5 (1986).  This principle is codified in

Federal Rule of Civil Procedure 56(d), which instructs courts to deny summary judgment

motions whenever a nonmoving party shows that "it cannot present facts essential to justify

its opposition."  Fed. R. Civ. P. 56(d); Fed. R. Bankr. P. 9056.  Rule 56(d) motions are

"broadly favored" and "should be liberally granted because the rule is designed to safeguard non-moving parties from summary judgment motions that they cannot adequately oppose." *Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Balt.*, 721 F.3d 264, 281 (4th Cir. 2013) (internal quotations omitted).  Indeed, relief under Rule 56(d) should be granted as a matter of course whenever a summary judgment motion is made "prior to the completion of discovery."  *Webster v. Rumsfeld*, 156 F. App'x 571, 576 (4th Cir. 2005) (emphasis added).

Furthermore, a party cannot litigate summary judgment by affidavit.  To the contrary, a party opposing summary judgment is entitled to the opportunity to "challenge the veracity of assertions made in [a movant's] affidavit through a deposition or . . . other proper means." *Klyczek v. Shannon*, No. 1:15-CV-0963 (GTS), 2016 WL 7012650, at *8 (W.D.N.Y. Dec. 1, 2016).  A party may not seek to cut off discovery to which a plaintiff is entitled by simply introducing affidavits from critical witnesses.

In all events, the burden is on the party seeking summary judgment to establish that there is no genuine issue of material fact in dispute.  *Pulliam Inv. Co., Inc. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987).  The Court must assess the evidence in a light most favorable to the nonmoving party, *id.*, and a court may only grant summary judgment if "there can be but one reasonable conclusion as to the verdict" and it is impossible that "reasonable minds could differ as to the import of the evidence," *In re Prof'l Coatings (N.A.), Inc.*, 210 B.R. 66, 73 (Bankr. E.D. Va. 1997).

Here, because the parties are in the midst of discovery—and, in fact, not a single deposition has taken place at this writing—Defendants' summary judgment motion should be denied pursuant to Rule 56(d), as Black Diamond is not in a position to present facts essential to justify its opposition to Defendants' motion.  In the alternative, summary judgment should be denied because, even with the limited record developed in the case to date, it is obvious

that there are material facts in dispute—both with respect to whether Defendants solicited

alternative financing in breach of the Commitment Letter and with respect to the parties'

agreement to amend their financing arrangement prior to October 23, 2015.  For these

reasons, summary judgment should be denied under Rule 56(a).

<u>POINT I.</u>

<u>Defendants' Summary Judgment Motion Should be Denied</u>

<u>or Postponed Pursuant to Federal Rule of Civil Procedure 56(d)</u>

Because discovery in this matter is still in progress and Black Diamond has not yet

been afforded the opportunity to take any depositions, Defendants' summary judgment

motion should be denied or postponed so that Black Diamond can take additional discovery

and develop "facts essential to justify" its opposition to summary judgment.

Under Federal Rule of Civil Procedure 56(d), "[i]f a nonmovant shows by affidavit or

declaration that, for specified reasons, it cannot present facts essential to justify its

opposition" to summary judgment, the court may "defer considering the motion or deny it"

and "allow time" for the nonmoving party to "take [additional] discovery."  Fed. R. Civ. P.

56(d).[4]  "Generally speaking, 'summary judgment [must] be refused where the nonmoving

party has not had the opportunity to discover information that is essential to [its] opposition."

*Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting

*Anderson*, 477 U.S. at 250 n.5 (1986)).  "[S]ummary judgment is not appropriate prior to the

completion of discovery."  *Webster*, 156 F. App'x at 576.

Summary judgment is particularly inappropriate where depositions have not yet taken

place.  Courts have repeatedly declined to grant summary judgment where key witnesses

---

[4]     Black Diamond respectfully refers the Court to the Declaration of Micaela
McMurrough, filed contemporaneously herewith, which outlines the "facts essential to
justify" Black Diamond's opposition to summary judgment that will be developed through
fact discovery.

have yet to be deposed.  In *McCray v. Maryland Department of Transportation*, for example, the Fourth Circuit held that the district court abused its discretion by granting summary judgment before the plaintiff had an opportunity to depose her supervisor who was alleged to have information relevant to her claim of employment discrimination.  741 F.3d 480, 487 (4th Cir. 2014).  Similarly, in *United States v. Bernard*,  the Fourth Circuit held that the district court abused its discretion by granting summary judgment prior to any depositions in the case, including witnesses critical to the claims at issue.  941 F.2d 1207, 1991 WL 157264, at *2 (4th Cir., Aug. 19, 1991) (unpublished).

Other federal courts have consistently declined motions for summary judgment where the opposing party has not had an opportunity to conduct depositions.  *See, e.g., Turchan v. United States*, No. 10-CV-11691, 2011 WL 1345032, at *2 (E.D. Mich. Apr. 8, 2011) (holding that summary judgment prior to depositions is improper because the depositions "are likely to result in the discovery of probative evidence");  *Admiralty Island Fisheries, Inc. v. Millard Refrigerated Servs., Inc.*, No. 805CV541, 2007 WL 1794939, at *1 (D. Neb. June 14, 2007) (holding that summary judgment motion was filed prematurely because necessary depositions had not yet been taken); *Rux v. Starbucks Corp.*, No. 2:05-cv-2299-MCE-EFB, 2007 WL 273917, at *1 (E.D. Cal. Jan. 29, 2007) (holding that absence of crucial deposition testimony was "good cause" for continuing motion for summary judgment); *Concord Labs., Inc. v. Concord Med. Ctr.*, 552 F. Supp. 549, 554 (N.D. Ill. 1982) (denying summary judgment when the plaintiff had not yet been able to take key depositions).

The rule against summary judgment when depositions have not started has obvious underpinnings:  Depositions are an essential discovery tool that permit the examination and cross-examination of live witnesses by counsel.  *See* 20 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE DESKBOOK, § 90 (2017).  As courts have explained, depositions "rank high in the hierarchy of pre-trial, truth-finding mechanisms" and

"are a critical component of the tools of justice in civil litigation." *Founding Church of*

*Scientology v. Webster*, 802 F.2d 1448, 1451 (D.C. Cir. 1986). Depositions permit parties to

learn information about issues and events that may not be reflected in the documentary

record, and they allow parties to test their adversaries' counter-narratives by permitting the

"cross-examination of evasive, recalcitrant or hostile witnesses." *In re China Merch. Steam*

*Nav. Co.*, 259 F. Supp. 75, 78 (S.D.N.Y. 1966) (citation and internal quotation marks

omitted). Indeed, our system of civil litigation would be meaningless if parties could simply

advance a version of events and insulate that version from meaningful probing by its

adversary by refusing to make their witnesses available for cross-examination.

Here, as in the cases cited above, Defendants' motion for summary judgment should

be denied because, at the time of the filing of this response, Black Diamond has not yet had

the opportunity to depose a single one of Defendants' witnesses. Indeed, depositions are

crucial in this case because the documentary record indicates that, contrary to Defendants'

assertions, Defendants and their agents *did* solicit alternative financing—*both before and*

*after October 23, 2015*. For example, Defendants and third parties have produced documents

showing that:



█ ████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████

On their face, these documents plainly contradict Defendants' contention that "[a]t no time

prior to the afternoon of October 23, 2015, did VCLF or any of its professionals solicit any

closing financing alternative to that of the $25 million Black Diamond Commitment."  (Dkt.

No. 139  ¶ 67.)

Indeed, ███████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████ Black Diamond is plainly entitled to

question these witnesses about these and other statements.  Moreover, if Defendants seek to

explain away these apparent breaches of the parties' Commitment Letter as somehow

permissible under the terms of the agreement, Black Diamond is entitled to question the

witnesses about precisely why they think it was permissible.

Depositions are also necessary to resolve factual disputes with respect to Defendants'

allegations concerning Black Diamond's purported breach of the Commitment Letter on

October 23, 2015.  In their summary judgment motion, Defendants argue that Black Diamond

breached and repudiated the Commitment Letter by refusing to produce draft transaction

documents, expressly repudiating its funding obligation, and demanding that Defendants

close on the modified October 23 terms.  (*See* Dkt. No. 138, at 21.)   The declarations

introduced by Black Diamond's witnesses, however, directly refute these allegations.  For

example, Defendants claim that Black Diamond "repudiated" the parties' Commitment Letter

by sending Defendants emails on October 23, 2015 that proposed new terms to the parties'

financing arrangement.  (*See id.* at 1.)  Black Diamond's Richard Ehrlich, however, affirms

that Mr. Clarke agreed to these changes over the phone on October 22, 2015, and in fact,

even proposed his own modifications to the Commitment Letter during those phone calls.

(Ehrlich Decl. ¶¶ 15, 16.)  Mr. Clarke unsurprisingly fails to address these telephone calls in

his declaration—completely omitting any mention of the discussions that he had with Black

Diamond on October 22.  Defendants are plainly entitled to question Mr. Clarke about these

conversations, which directly undercut the version of events that he has told in connection

with Defendants' summary judgment motion.

Indeed, Defendants' premature summary judgment filing cannot be seen as anything

other than an attempt to *circumvent* deposition testimony.  Defendants attempt to avoid

submitting their witnesses to deposition by introducing declarations from five witnesses,

attesting to numerous facts that Black Diamond disputes and that are plainly contradicted by

the documentary record.  Not only are these declarations self-serving, but this type of "trial

by affidavit" is wholly inappropriate.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255

(1986) (explaining that the summary judgment standard does not authorize "trial on

affidavits"); *Tyree v. United States*, 642 F. App'x 228, 230 (4th Cir. 2016) (unpublished)

(holding that the district court abused its discretion in failing to rule on the plaintiff's Rule

56(d) motion when the defendants submitted affidavits in support of their motion for

summary judgment and the plaintiff's "discovery requests could result in relevant evidence to

which he would otherwise have no access").

As the Tenth Circuit said in *Jackson v. Griffith*, Rule 56 "does not serve as a

substitute for a trial and bona fide factual disputes may not be disposed of through the use of

affidavits."  480 F.2d 261, 267 (10th Cir. 1973).  This is because "Plaintiffs reasonably need

the opportunity to challenge the veracity of the assertions made in Defendant's affidavit

through a deposition or to dispute those assertions through other proper means."  *Klyczek*,

2016 WL 7012650, at *8.  In other words, "[s]ummary judgment before discovery forces the

non-moving party into a fencing match without a sword or mask."  *McCray*, 741 F.3d at 483.

The Court should not permit Defendants to avoid all depositions by using self-serving declarations to support their motion for summary judgment.

Given that no depositions, including depositions of key witnesses on the issues raised by Defendants' motion for partial summary judgment, have yet taken place, Black Diamond has not had sufficient opportunity to establish all of the facts "essential to justify its opposition." *Harrods*, 302 F.3d at 244. Accordingly, the Court should deny Defendants' motion for partial summary judgment as premature.

## POINT II.

### Defendants Are Not Entitled to Partial Summary Judgment

Summary judgment must be denied if there are genuine issues of material fact. *See Mills v. Holmes*, 1:13cv520 (TSE/JFA), 2014 WL 12656622, at *2 (E.D. Va., Feb. 20, 2014) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). That analysis is performed viewing the evidence in the light most favorable to Black Diamond, and drawing all reasonable inferences in Black Diamond's favor. *See In re French*, 499 F.3d 345, 352 (4th Cir. 2007). Defendants bear the burden of establishing the nonexistence of a genuine issue of material fact. *Id.*

Here, Defendants ask the Court to find that: (1) VCLF did not breach the Commitment Letter by soliciting alternative closing financing prior to October 23, 2015, and (2) Black Diamond breached and repudiated the Commitment Letter by proposing alternative financing terms shortly before the transaction with Patriot was due to close and delaying the circulation of draft loan documents. (*See* Dkt. No. 161-1, at 21). Defendants cannot meet their burden for either of the two issues for which they seek summary judgment.

First, with respect to Defendants' contention that they did not engage in any pre-October 23, 2015 solicitations of alternative financing, the documentary record is replete with direct solicitations by Defendants to third-party financiers seeking loans and other financing

from sources other than Black Diamond.  Contrary to Defendants' assertion, these

solicitations were not for *post*-closure financing.  ████████████████████

████████████████████████████████████████  (*See, e.g.*, Ex.

V (IM0288); Ex. W (IM0342).)   Even if there were some ambiguity as to whether Mr.

McCoy wanted to "take out" Black Diamond before or after the closing, and there is not, such

ambiguity must be resolved in favor of Black Diamond.  *See Smith v. Virginia*

*Commonwealth Univ.*, 84 F.3d 672, 675 (4th Cir. 1996) ("The evidence must be viewed in

the light most favorable to the non-moving party.").

         Second, disputes of material fact abound as to whether the emails that Black Diamond

sent on October 23, 2015 outlining the terms of a receivables purchase facility constituted an

anticipatory repudiation of the parties' Commitment Letter or, as set forth in Mr. Ehrlich's

declaration, a confirmation of the revised agreement already reached between the parties.  As

an initial matter, the parties' Commitment Letter clearly contemplated that Black Diamond

and Defendants could alter the terms of their financing arrangement by agreement.  (*See* Ex.

A (BDCF-00028157), at 160 ("This Commitment Letter may not be amended . . . *except by*

*an instrument in writing signed by the party against whom enforcement of the same is*

*sought*.").)  In fact, the parties did agree to alter the Commitment Letter on October 22, 2015

when Richard Ehrlich and Tom Clarke spoke by telephone and came to an agreement

concerning revised terms.  (Ehrlich Decl. ¶ 16).  When Black Diamond sought to

memorialize these changes in a writing, however, Defendants stopped responding to Black

Diamond and doubled down on securing alternative financing, in violation of the

Commitment Letter.  Defendants dispute these facts, but that only proves that summary

judgment is inappropriate.

         Indeed, New York law confirms that summary judgment should be denied with

respect to Black Diamond's purported breach of the Commitment Letter.  Under New York

law, a party is deemed to have repudiated a contract only when they have indicated "an

unqualified and clear refusal to perform with respect to the entire contract." *De Lorenzo v.*

*Bac Agency, Inc.*, 256 A.D.2d 906, 908 (3d Dep't 1998).  As courts applying New York law

have explained, whether a particular communication or act constitutes the repudiation of a

contract is a fact-intensive inquiry, ill-suited for summary judgment.  *In re Best Payphones,*

*Inc.*, 432 B.R. 46, 55 (S.D.N.Y. 2010), *aff'd* 450 F. App'x 8 (2d Cir. 2011).  In deciding

whether a party has repudiated a contract, courts look to all the circumstances surrounding

the alleged repudiation.  *See, e.g.*, *River Terrace Assocs., LLC v. Bank of N.Y.*, 10 Misc. 3d

1052(A) (N.Y. Sup. Ct.) (declining to find repudiation on summary judgment "tak[ing] in the

context of the circumstances surrounding" the alleged repudiation), *aff'd*, 23 A.D.3d 308 (1st

Dep't 2005).  Accordingly, courts routinely deny summary judgment on repudiation claims.

*See, e.g.*, *O'Shanter Res., Inc. v. Niagara Mohawk Power Corp.*, 915 F. Supp. 560, 567

(W.D.N.Y. 1996); *Pesa v. Yoma Dev. Grp., Inc.*, 18 N.Y.3d 527, 533 (2012); *O'Connor v.*

*Sleasman*, 14 A.D.3d 986 (3d Dep't 2005).[5]

      Here, Defendants have not alleged anything close to the "unqualified and clear refusal

to perform" required under the law of repudiation. ████████████████████

████████████████████████████████████████

████████████████████████████████████

---

[5]     Defendants' cases do not say otherwise.  Indeed, the principal case that they cite in
their motion—*IBM Credit Fin. Corp. v. Mazda Motor Mfg. (USA) Corp.*—affirmed a finding
of repudiation made only after a bench trial (i.e., *not* on a summary judgment motion).  *See*
92 N.Y.2d 989, 992 (1998); *see also IBM Credit Fin. Corp. v. Mazda Motor Mfg. (USA)*
*Corp.*, 245 A.D.2d 78 (1st Dep't 1997) (affirming order "which, after a nonjury trial,
dismissed the complaint").  It appears that Defendants' only case granting summary judgment
on the basis of anticipatory repudiation is *Wecare Holdings, LLC v. Bedminster Int'l Ltd.*, No.
08-CV-6213, 2009 WL 604877, at *7 (W.D.N.Y. Mar. 9, 2009).  But in that case, the
repudiating party made a clear and unequivocal statement that it was "walking away from
the deal." *Id.*  No such unequivocal statement of an intention not to perform exists in this
case.  Accordingly, whether Black Diamond repudiated the agreement is a genuine dispute of
material fact precluding Defendants' motion for summary judgment.

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████ In other words, the documents

plainly refute Defendants' view of the case, demonstrating again why summary judgment is

inappropriate.

Furthermore, any argument that Black Diamond "repudiated" by delaying circulation

of draft loan documents is a complete red herring.  As Black Diamond's transactional

attorney makes clear, the loan documents required to complete the transaction were simple

and could have been prepared and circulated very quickly.  (Harris Decl. ¶ 15.)  Accordingly,

there was no delay in circulating loan documents, nor is there any colorable argument that

any failure to circulate drafts by a certain date constituted a repudiation, which requires an

"unqualified and clear refusal to perform" under the contract.

*              *              *

In sum, Defendants' have made a tactical premature summary judgment motion that is

defective on multiple grounds.  First, the motion should be denied under Rule 56(d) until

Black Diamond has had an opportunity to question Defendants' witnesses concerning the

documents produced in this action and other materials.  Second, genuine issues of material

fact abound concerning the essential issues in this case, including (among others) when and

why Defendants and their affiliates solicited alternative financing from third parties (which

they admit to doing), whether Defendants agreed to modify the Commitment Letter, and

whether Black Diamond remained ready, willing and able to close the transaction.  Summary

judgment is inappropriate and must be denied.

<u>CONCLUSION</u>

For the reasons set forth above, Defendants' motion should be denied.

Dated:  October 6, 2017
Richmond, Virginia

Respectfully submitted,

By : <u>/s/ John H. Maddock III</u>
Dion W. Hayes (VSB No. 34304)
John H. Maddock III (VSB No. 41044)
McGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219-3916
Telephone: (804) 775-1178
Facsimile: (804) 698-2186
Email: dhayes@mcguirewoods.com
        jmaddock@mcguirewoods.com

C. William Phillips (admitted *pro hac vice*)
Micaela McMurrough (admitted *pro hac vice*)
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY  10018
Telephone: (212) 841-1000
Facsimile: (212) 841-1010
Email: cphillips@cov.com
        mmcmurrough@cov.com

*Counsel to Black Diamond Commercial*
*Finance, LLC*

- 23 -

## CERTIFICATE OF SERVICE

I hereby certify that on October 6, 2017, I filed the foregoing document through CM/ECF, which will send a notice of such filing to all CM/ECF participants, and that I served by email a copy on the following counsel of record in this adversary proceeding:

wsullivan@pillsburylaw.com
joshua.schlenger@ pillsburylaw.com
patrick.potter@pillsburylaw.com
andrew.troop@pillsburylaw.com
andrew.lauria@pillsburylaw.com

*/s/ John H. Maddock, III*
John H. Maddock, III