Dion W. Hayes (VSB No. 34304)
John H. Maddock III (VSB No. 41044)
McGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219-3916
Telephone: (804) 775-1178
Facsimile: (804) 698-2186
Email: dhayes@mcguirewoods.com
       jmaddock@mcguirewoods.com

- and -

C. William Phillips (admitted *pro hac vice*)
Micaela R. McMurrough (admitted *pro hac vice*)
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Telephone: (212) 841-1000
Facsimile: (212) 841-1010
Email: cphillips@cov.com
       mmcmurrough@cov.com

*Counsel to Black Diamond Commercial Finance, LLC*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| In re:<br><br>PATRIOT COAL CORPORATION, *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 15-32450 (KLP)<br><br>Jointly Administered<br><br>Adv. Proc. No. 16-03105 (KLP) |
| BLACK DIAMOND COMMERCIAL FINANCE, LLC,<br><br>Plaintiff,<br><br>v.<br><br>VIRGINIA CONSERVATION LEGACY FUND, INC. and ERP COMPLIANT FUELS, LLC,<br><br>Defendants. | |

|  |
|---|
| VIRGINIA CONSERVATION LEGACY FUND, INC. and ERP COMPLIANT FUELS, LLC, <br><br> Counterclaim-Plaintiffs, <br><br> v. <br><br> BLACK DIAMOND COMMERCIAL FINANCE, LLC, <br><br> Counterclaim-Defendant. |

### Declaration of Adam C. Harris

I, ADAM C. HARRIS, declare pursuant to 28 U.S.C. § 1746 as follows:

1. I am an attorney admitted to practice law in the state of New York and a partner with the law firm Schulte Roth & Zabel LLP ("Schulte"). I served as counsel to Black Diamond Capital Management, LLC and its affiliates ("Black Diamond") in connection with its offer to provide financing to Defendants Virginia Conservation Legacy Fund, Inc. ("VCLF") and ERP Compliant Fuels, LLC ("ERP," and with VCLF, "Defendants") in order to facilitate Defendants' acquisition of certain assets from the chapter 11 estates of Patriot Coal Corporation and its affiliates (collectively, "Patriot"), including a coal mine in West Virginia (the "Federal Mine"). Except as otherwise stated herein, I have personal knowledge of the facts stated in this affidavit, and could and would testify competently to them if called upon to do so.

2. On September 21, 2015, Defendants and Black Diamond executed a commitment letter (the "Commitment Letter") pursuant to which Black Diamond agreed to provide Defendants with a credit facility in the aggregate principal amount of $25 million to

-2-

pay costs and expenses associated with Defendants' purchase of certain of Patriot's assets pursuant to the VCLF APA (as defined in the Commitment Letter) and to fund the working capital requirements of Defendants after the consummation of the acquisition. (Ex. A (BDCF-00028157).) Defendants required this financing commitment in order to be deemed a qualified bidder in connection with Patriot's asset auction.

3. Black Diamond's offer to extend financing to Defendants was contingent on a number of conditions precedent. ███████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████ ██

4. Pursuant to the Commitment Letter, Defendants agreed to work exclusively with Black Diamond and not to solicit or accept financing from any other source. (*Id.*) Defendants also agreed not to close their transactions with Patriot without providing Black Diamond with certain equity interests in companies to be formed by Defendants for the purpose of acquiring the Patriot assets. (*Id.*) Specifically, the Commitment Letter provided:



(*Id.*)

5. While negotiating the Commitment Letter, Defendants and Black Diamond did not distinguish between the solicitation of financing designed to close Defendants' transaction with Patriot and the solicitation of other financing, including financing to provide post-closing liquidity or designed to replace Black Diamond's financing after Defendants'

-3-

transaction with Patriot closed. From Black Diamond's perspective, since Black Diamond's financing was specifically designed to provide the liquidity to both close the transaction and fund post-closing working capital, *any* solicitation of alternative financing related to the Patriot transaction while the Commitment Letter was in effect would be a violation of the parties' agreement.

6. When the Commitment Letter was signed on September 21, 2015, the Commitment Letter provided ███████████████████████████████

███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████ ██ ███████████████████████████████
███████████████████████████████████████████
███████

7. On October 9, 2015, the Bankruptcy Court confirmed Patriot's chapter 11 plan. I participated in the confirmation hearing telephonically, and did not participate in any discussions with the Court or other parties concerning the Commitment Letter or Defendants' contemplated transaction with Patriot.

8. After Black Diamond and Defendants signed the Commitment Letter, the parties began working to finalize the structure and terms of the financing. In particular, Black Diamond and Schulte began working to complete legal and business due diligence, including considering the appropriate corporate structure and establishing the corporate entities contemplated by the deal. While Black Diamond and Schulte were completing due diligence, Defendants, Black Diamond, and their respective counsel were in regular contact.

9. In late September 2015, Defendants' counsel, Patrick Potter, emailed me to ask ████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████  ██

██  ████████████████████████████

████████████████████████████████████████████  ████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████  Based on the foregoing, Mr. Potter was aware (or should have been aware) of the identities of my colleagues working on the Black Diamond-VCLF deal. Mr. Potter never indicated that he had any difficulty contacting any of my team members regarding the deal.

11.     On September 26, 2015, nearly a week after the parties' had executed the Commitment Letter, Mr. Potter emailed me to say ████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████  ██  ████████████████████████████

████████████████████████████████████████████

██████████  ██  ████████████████████

12.     On October 15, 2015, my colleague Frank Kwok contacted Mr. Potter's colleague Michael Mueller to discuss ████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████  ██  Prior to Mr. Kwok's email, neither Defendants nor their counsel had broached the subject of having such a call. The call suggested by Mr. Kwok was held on October 16, 2015.

13. As indicated by the subject matter in Mr. Kwok's email, the purpose of the call was not to discuss finalization of loan documentation or the timetable for the drafting of documentation.

14. Contrary to what Mr. Potter has represented in his declaration, Defendants did not attempt to "engage Black Diamond's lawyers in negotiations" concerning loan documentation "weeks" before October 26, 2015. Instead, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

15. The loan documentation that would have been required for the transaction between Black Diamond and Defendants should have been relatively straightforward. Based on my experience as a transactional attorney, and based on the capabilities of the Schulte team that I had assembled, the loan and corporate documentation required for the transaction could have been completed quickly. Indeed, it would have made little sense to draft the documentation before due diligence was completed and before the details of the corporate structure and financing transaction were finalized.

16. In response to the material changes that Defendants and Patriot had made to the VCLF APA (and Defendants' related request that Black Diamond review those changes and provide comments to VCLF), in mid-October 2015, Black Diamond made proposed changes to the APA. These proposed changes were limited in nature and concerned discrete topics that Black Diamond believed were relevant to the financing that they had committed to provide. At no point did Black Diamond or Schulte indicate that these proposed changes were non-negotiable, nor did Black Diamond or Schulte ever engage in anything other than good-faith, commercially reasonable negotiations. At the time that Black Diamond and Schulte transmitted their proposed changes to the VCLF APA, Defendants had adequate time

-6-

to work through those revisions with Patriot and close the transaction by the proposed closing date, October 26, 2015.

17. Representatives of Black Diamond, Defendants, Schulte, and Pillsbury engaged in a series of communications on October 20 and 21, 2015. Over the course of those conversations, the parties discussed, among other things, the possibility of sending a cover letter to Patriot to accompany the parties' proposed revisions to the VCLF APA. Although the parties discussed the cover letter generally, there was no final agreement about the letter's content.

18. On October 20, 2015, Mr. Potter circulated ███████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████

19. After conversations with my client, on the evening of October 21, 2015, I emailed Mr. Potter and asked him to delete the paragraph from his draft cover letter stating that Black Diamond was prepared to fund and close on the transaction set forth in the latest draft of the VCLF APA. Instead, in response to a request for clarification and as an alternative to that passage, I suggested that Mr. Potter include a paragraph stating ███████
████████████████████████████████████████████████████████████████████
████████████████████████████ Mr. Potter never indicated that this alternative language was unacceptable to Defendants. ████████████████████████████
████████████████████████████████████ Between October 20 and October 23, 2015, Black Diamond and VCLF's principal Thomas Clarke engaged in a series of discussions about amendments to the Commitment Letter and the terms of the financing. Black Diamond

-7-

proposed these amendments because the terms of Defendants' deal with Patriot had changed materially since Black Diamond executed the Commitment Letter, and Defendants had recently sent Black Diamond financial projections that were materially different from those that Defendants had disclosed to Black Diamond prior to the execution of the Commitment Letter.

20. On or around October 23, 2015, I came to understand that Black Diamond and Mr. Clarke had come to an agreement about changes to the Commitment Letter and the terms of the financing. Mr. Ehrlich informed me that, among other things, Mr. Clarke agreed to move from an asset based loan facility to an accounts receivables facility. I further came to understand that Mr. Clarke had voluntarily offered to personally guarantee a part of the loan facility.

21. At no point did I believe that Mr. Clarke would fail to tell his counsel or his business partners that he had agreed to changes to the Commitment Letter and the terms of the financing and fail to detail to them what those changes were.

22. On October 23, 2015, Black Diamond's Hugo Gravenhorst sent Mr. Clarke a series of emails memorializing the changes to the Commitment Letter and the terms of the financing to which Mr. Clarke had already agreed. Shortly after Mr. Gravenhorst sent his emails, Defendants and their counsel stopped responding to Black Diamond's calls and emails.

23. Even though Defendants were no longer responding to Black Diamond's requests to finalize the transaction, my colleagues and I continued to work on the transaction, including among other things, the completion of negotiations with workers compensation counterparties relating to the recovery of excess collateral. Our ability to proceed with the documentation, however, was hampered by Defendants' refusal to communicate with Black Diamond.

24. Having failed to respond to Black Diamond's inquiries for nearly 48 hours, Defendants finally reached out to Black Diamond on the afternoon of October 25, 2015. In particular, around 3:42 PM that day, Mr. Potter sent me an email attaching a lengthy letter. Mr. Potter's letter, however, made no attempt to finalize the deal terms, but rather accused Black Diamond of anticipatorily breaching the Commitment Letter, among other accusations. (Ex. O (Ltr. from P. Potter to A. Harris, dated October 25, 2015).) Based on Black Diamond's supposed repudiation, Mr. Potter relayed that Defendants were taking the position that they were no longer bound by the Commitment Letter and owed no obligations to Black Diamond. (*Id.*) Nevertheless, Mr. Potter asked Black Diamond to "advise" him by 6:30 PM that day whether it intended to close the following day under the terms of September 21, 2015 Commitment Letter. (*Id.*) Mr. Potter demanded that Black Diamond close under the terms of the September 21, 2015 Commitment Letter, even though Mr. Clarke had agreed to amendments to the Commitment Letter and the terms of the financing between October 20 and October 23, 2015.

25. On October 25, 2015, prior to the deadline unilaterally set by Mr. Potter, I responded to Mr. Potter's letter on behalf of Black Diamond. (Ex. P (BDCF-00077252).) I explained ███████████████████████████████████████



29. Later that evening, Mr. Potter responded with a second letter. (Ex. Q (Second Ltr. from P. Potter to A. Harris, dated October 25, 2015).) In his second letter, Mr. Potter rejected the contention that his client had agreed to the financing proposal memorialized in Mr. Gravenhorst's emails, and stated that the Defendants would not abide by it. (*Id.*) Mr. Potter also relayed that Defendants had already received an alternative financing proposal, and were now prepared to accept such financing. (*Id.*) In other words, Mr. Potter relayed that Defendants were reneging on the deal that they had agreed to with Black Diamond by agreeing to accept alternative financing in violation of the Commitment Letter.

30. In response to Mr. Potter's second letter, I sent another email to Mr. Potter at 11:34 PM on October 25, 2015. (Ex. R (BDCF-00077290).)

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████ Mr. Potter did not respond to this email.

31.   Having received no response to my email, on October 28, 2015, I sent Mr. Potter another email, reiterating ████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████ ██████████

██████████

32.   Mr. Potter responded to my email on October 29, 2015. (Ex. SS (SRZ-00018794).) In his email, Mr. Potter stated ████████████████████████

████████████████████████

33.   Thereafter, I learned that Defendants had closed their transaction with Patriot without Black Diamond.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on October 6, 2017, in New York, New York.

_____
Adam C. Harris

CERTIFICATE OF SERVICE

I hereby certify that on October 6, 2017, I caused the foregoing *Declaration of Adam C. Harris* to be filed with and uploaded to this Court's CM/ECF system, which will send filing to all CM/ECF participants.

/s/ *John H. Maddock III*
John H. Maddock III