Dion W. Hayes (VSB No. 34304)
John H. Maddock III (VSB No. 41044)
McGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219-3916
Telephone: (804) 775-1178
Facsimile: (804) 698-2186
Email: dhayes@mcguirewoods.com
        jmaddock@mcguirewoods.com

- and -

C. William Phillips (admitted *pro hac vice*)
Micaela R. McMurrough (admitted *pro hac vice*)
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY  10018
Telephone: (212) 841-1000
Facsimile: (212) 841-1010
Email: cphillips@cov.com
        mmcmurrough@cov.com
*Counsel to Black Diamond Commercial Finance, LLC*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| In re:<br><br>PATRIOT COAL CORPORATION, *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 15-32450 (KLP)<br><br>Jointly Administered<br><br>Adv. Proc. No. 16-03105 (KLP) |
| BLACK DIAMOND COMMERCIAL FINANCE, LLC,<br><br>Plaintiff,<br><br>v.<br><br>VIRGINIA CONSERVATION LEGACY FUND, INC. and ERP COMPLIANT FUELS, LLC,<br><br>Defendants. | |

VIRGINIA CONSERVATION LEGACY FUND, INC.
and ERP COMPLIANT FUELS, LLC,

        Counterclaim-Plaintiffs,

        v.

BLACK DIAMOND COMMERCIAL FINANCE, LLC,

        Counterclaim-Defendant.

### Declaration of Richard A. Ehrlich

I, RICHARD A. EHRLICH, declare pursuant to 28 U.S.C. § 1746 as follows:

1.     I am a Managing Director of Black Diamond Capital Management, L.L.C. (together with its affiliates, "Black Diamond"), and I was involved in the financing transaction between Black Diamond and Virginia Conservation Legacy Fund, Inc. ("VCLF") and ERP Compliant Fuels, LLC ("ERP," and with VCLF, "Defendants") that is the subject of this case.  Except as otherwise stated herein, I have personal knowledge of the facts stated in this affidavit, and could and would testify competently to them if called upon to do so.

2.     Black Diamond is an asset management firm that, among other things, offers loans and other credit to companies in a variety of industries on behalf of itself and its affiliates.

3.     On September 21, 2015, Black Diamond executed a commitment letter (the "Commitment Letter") with Defendants pursuant to which Black Diamond agreed to loan Defendants $25 million for, among other things, post-closing working capital in connection with their purchase of certain assets of Patriot Coal Corporation ("Patriot"), including a coal mine in West Virginia (the "Federal Mine").  (Ex. A (BDCF-00028157).)

4.    This offer to extend financing was contingent on a number of conditions,

████████████████████████████████████████████████████████████████████

████████████████████████████████

5.    Pursuant to the Commitment Letter, Defendants agreed to work exclusively

with Black Diamond and not to solicit or accept financing from any other source.  (*Id.*)

Defendants also agreed not to close their transaction with Patriot without providing Black

Diamond with certain equity interests in companies formed for the purpose of acquiring the

Patriot assets.  (*Id.*)  Specifically, the Commitment Letter provided:

████████████████████████████████████████████████████
████████████████████████████████████████████████████
███████████████████████████████████████████████
██████████████████████████████████ ██ ███████
██████████████████████████████████████████████████████
█████████████████████████████████████████████
██████████████████████████████████████████████
████████████████████████████████████████████████████
██████████████████████████████

(*Id.*)

6.    The Commitment Letter's exclusivity provision applied broadly to ██

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████  (*Id.*)

7.    When the Commitment Letter was signed on September 21, 2015, the

Commitment Letter provided ████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████

3

████████████████████████████████████████████

██████████████████████████████████

8.     After Black Diamond and Defendants signed the Commitment Letter, the parties began to work to finalize the financing transaction.

9.     Black Diamond and its counsel, Schulte, Roth, and Zabel LLP ("Schulte") worked on legal and business due diligence.  As part of that due diligence, Black Diamond reviewed the asset purchase agreement between Defendants and Patriot (the "VCLF APA"), financial data, and other information from Patriot, as well as projections, operating plans, and other documents provided by Defendants and their financial advisor, Teneo Restructuring.

10.     Black Diamond also engaged John T. Boyd Co. ("Boyd") to provide an independent assessment of the Federal Mine.  Representatives from Boyd toured the Federal Mine on September 24 and 28, 2015 to evaluate the mine's construction sites and development units and to discuss the mine's operations with Defendants and others.

11.     Following the execution of the Commitment Letter, at least three events took place that had a material impact on the financing transaction between Black Diamond and Defendants.

12.     First, on or around September 26, 2015, Black Diamond learned ██████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████

13.     Second, after touring the Federal Mine in late September 2015, Boyd (Black Diamond's mining consultant) raised concerns about Defendants' business plan and the way in which Defendants planned to operate the mine.  Boyd raised significant concerns as to

-4-

Defendants' ability to meet their operational and financial projections with respect to the Federal Mine.

14.    Third, in October 2015, Defendants provided Black Diamond with revised business plans and projections ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████

█████████████████████████████████

████████████████████████████████████████

█████████████████████████████████████████

████████████████████████████████████

███████████████████████████████████████████

█████████████████████████

██    ████████████████████████████████

████████████████████████████████

████████████████████████ between October 20 and October 23, 2015, I engaged in a series of discussions about revisions to the Commitment Letter with Defendants' principal Thomas Clarke.  During these conversations, Mr. Clarke was receptive to Black Diamond's proposed revisions and agreed that changes to the Commitment Letter could and should be made.  In fact, over the course of our discussions, Mr. Clarke proposed changes to the Commitment Letter himself, including by offering to provide Black Diamond with a personal guarantee.  Black Diamond did not demand or request a personal guarantee from Mr. Clarke as a condition for financing, but accepted Mr. Clarke's offer.

16.     On October 22, 2015, I spoke with Mr. Clarke by telephone to finalize the revised terms of the Commitment Letter. On that call, we came to an agreement concerning the revised terms.

17.     On October 23, 2015, I asked Hugo Gravenhorst, one of my associates at Black Diamond, to send Mr. Clarke a series of emails memorializing the changes to the Commitment Letter to which Mr. Clarke had already agreed. (Ex. J (BDCF-00076338); Ex. K (BDCF-00076458); Ex. L (BDCF-00076502); Ex. M (BDCF-00076511).) On the morning of October 23, 2015, I continued to discuss changes to the Commitment Letter with Mr. Clarke over the telephone, including during the period between Mr. Gravenhorst's emails.

18.     Shortly after Mr. Gravenhorst sent his emails, Defendants abruptly and without explanation stopped responding to Black Diamond's calls and emails. I personally attempted to call Mr. Clarke multiple times, to no avail.

19.     I was ultimately able to speak with Mr. Clarke on the evening of October 23, 2015. During that call, Mr. Clarke never informed me that Defendants would not go forward with Black Diamond, or that Defendants were seeking alternative financing from sources other than Black Diamond. I was left with the expectation that we were still working together and that we would hear from Mr. Clarke further regarding completion of the transaction.

20.     After my call with Mr. Clarke on the evening of October 23, 2015, Mr. Clarke, Defendants, and their counsel did not respond to subsequent calls and emails from Black Diamond.

21.     On October 25, 2015, Defendants, through their counsel, Patrick Potter, sent a letter to Black Diamond's counsel accusing Black Diamond of anticipatorily breaching the Commitment Letter (among other accusations), and stated that Defendants were no longer bound by the Commitment Letter and owed no obligations to Black Diamond.

22.     After additional back-and-forth between the parties' respective counsel on October 25, 2015, Defendants confirmed that they would not perform under the parties' Commitment Letter.

23.     Thereafter, I learned that Defendants had closed their transaction with Patriot on October 27, 2015 with financing from other sources.

24.     Throughout the parties' interactions, Black Diamond did not propose terms that were non-negotiable.   In fact, Black Diamond repeatedly expressed its willingness to continue negotiations with Defendants.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on October 6, 2017, in Greenwich, Connecticut.

Richard A. Ehrlich

## CERTIFICATE OF SERVICE

I hereby certify that on October 6, 2017, I caused the foregoing *Declaration of Richard A. Ehrlich* to be filed with and uploaded to this Court's CM/ECF system, which will send filing to all CM/ECF participants.

*/s/ John H. Maddock III*
John H. Maddock III