**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | |
|---|---|
| In re:<br><br>PATRIOT COAL CORPORATION, *et al.*,<br><br>      Debtors. | Chapter 11<br><br>Case No. 15-32450 (KLP)<br><br>Jointly Administered |
| BLACK DIAMOND COMMERCIAL FINANCE, LLC,<br><br>      Plaintiff,<br><br>      v.<br><br>VIRGINIA CONSERVATION LEGACY FUND, INC. and ERP COMPLIANT FUELS, LLC,<br><br>      Defendants. | |
| VIRGINIA CONSERVATION LEGACY FUND, INC. and ERP COMPLIANT FUELS, LLC,<br><br>      Counterclaim-Plaintiffs,<br><br>      v.<br><br>BLACK DIAMOND COMMERCIAL FINANCE, LLC,<br><br>      Counterclaim-Defendant. | Adv. Proc. No. 16-03105 (KLP)<br><br>**REDACTED AND FILED UNDER SEAL PURSUANT TO ECF DOC. NO. 64** |

**VCLF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Patrick J. Potter
PILLSBURY WINTHROP SHAW PITTMAN LLP
1650 Tysons Boulevard, Suite 1400
McLean, Virginia 22102-4856
Telephone:  (703) 770-7900
Facsimile:  (703) 770-7901
Email:  patrick.potter@pillsburylaw.com

William M. Sullivan, Jr. (admitted *pro hac vice*)
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth Street, NW
Washington, DC 20036-3006
Telephone:  (202) 663-8027
Facsimile:  (202) 663-8007
Email:  wsullivan@pillsburylaw.com

Andrew M. Troop (admitted *pro hac vice*)
Samuel S. Cavior (admitted *pro hac vice*)
Joshua I. Schlenger (admitted *pro hac vice*)
PILLSBURY WINTHROP SHAW PITTMAN LLP
1540 Broadway
New York, New York 10036-4039
Telephone:  (212) 858-1000
Facsimile:  (212) 858-1500
Email:  andrew.troop@pillsburylaw.com

*Attorneys for Virginia Conservation Legacy Fund,
Inc. and ERP Compliant Fuels, LLC*

# TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ...............................................................................................1

ARGUMENT ..........................................................................................................................3

    I.      THIS MOTION IS RIPE FOR REVIEW ...................................................... 3

    II.    BLACK DIAMOND CANNOT IDENTIFY ANY EVIDENCE OF
          SOLICITATION BY VCLF PRIOR TO OCTOBER 23, 2015 THAT
          RESULTED IN A MATERIAL BREACH OF THE COMMITMENT LETTER....... 5

        A.    The Communications Identified by Black Diamond as Solicitations Did Not
             Breach the Commitment Letter's Exclusivity Provision Because They Were
             Solicitations for Take-Out, Not Closing, Financing ....................................................5

        B.    Even If These Communications Could Somehow Be Considered Solicitations for
             Closing Financing, Black Diamond Cannot Establish That Such Conduct
             Resulted in a Material Breach of the Commitment Letter ......................................8

    III.   BLACK DIAMOND FAILS TO RAISE AN ISSUE OF MATERIAL FACT
          THAT BLACK DIAMOND REPUDIATED THE COMMITMENT LETTER ON
          OR PRIOR TO OCTOBER 23, 2015 ....................................................................... 10

CONCLUSION.......................................................................................................................16

## Table of Authorities

### Cases

*Amgen Inc. v. Conn. Retirement Plans & Trust Funds*,
   568 U.S. 455 (2013)................................................................................14

*Cablevision Sys. Corp. v. Town of E. Hampton*,
   862 F. Supp. 875 (E.D.N.Y. 1994), *aff'd*, 57 F.3d 1062 (2d Cir. 1995)...................................9

*Cleveland v. Policy Mgmt. Sys. Corp.*,
   526 U.S. 795 (1999)................................................................................14

*Comp. Possibilities Unlimited, Inc. v. Mobil Oil Corp.*,
   301 A.D.2d 70 (1st Dep't 2002) ......................................................................15

*Dufau v. Prince*,
   – F. App'x –, 2017 WL 3188402 (4th Cir. July 27, 2017) ......................................................3

*Emmett v. Johnson*,
   532 F.3d 291 (4th Cir. 2008) ........................................................................1

*Frank Felix Assocs., Ltd. v. Austin Drugs, Inc.*,
   111 F.3d 284 (2d Cir. 1997)...........................................................................8

*Giles v. Ulep*,
   No. 1:13cv179 (LO/JFA), 2014 WL 1744825 (E.D. Va. Apr. 30, 2014) .................................4

*Howard v. Bioworks, Inc.*,
   83 A.D.3d 1588 (4th Dep't 2011)....................................................................15

*Ingle ex rel. Estate of Ingle v. Yelton*,
   439 F.3d 191 (4th Cir. 2006) .........................................................................3

*Lujan v. Nat'l Wildlife Fed'n*,
   497 U.S. 871 (1990)...................................................................................4

*Mann v. Princeton Cmty. Hosp. Ass'n, Inc.*,
   956 F.2d 1162 (4th Cir. Mar. 3, 1992)................................................................4

*Pot Luck, LLC v. Freeman*,
   No. 06 Civ. 10195(DAB), 2010 WL 908475 (S.D.N.Y. Mar. 8, 2010) .................................10

*Schonzeit v. Wiesen*,
   154 A.D.2d 291 (2d Dep't 1989).....................................................................15

*VFS Fin., Inc. v. Falcon Fifty LLC*,
   17 F. Supp. 3d 372, 383 (S.D.N.Y. 2014) ............................................................9

*Wechsler v. Hunt Health Sys., Ltd.*,
    330 F. Supp. 2d 383 (S.D.N.Y. 2004)......................................................................................9

*York Agents, Inc. v. Bethlehem Steel Corp.*,
    36 A.D.2d 62 (1st Dep't 1971) ...........................................................................................15

Virginia Conservation Legacy Fund, Inc. and ERP Compliant Fuels, LLC ("ERP," and

collectively, "VCLF") respectfully submit this Reply Memorandum of Law in further support of

their motion for partial summary judgment (ECF Doc. No. 132, the "Motion") against Black

Diamond Commercial Finance, LLC ("Black Diamond").[1]

## PRELIMINARY STATEMENT

███████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████  Potter Dec. Ex. R, at 4:1-15.  In its Motion, and through the five attached separate sworn

declarations from the individuals who would know, VCLF established that the answer is "no";

that prior to October 23, 2015, VCLF was not looking for alternative financing to that committed

by Black Diamond.  In its opposition to the Motion (the "Opposition" or "Opp."), Black

Diamond fails to establish the existence of any material disputed fact on this or any other matter

raised by VCLF in its Motion.

Instead, Black Diamond's Opposition is a textbook example of a party grasping at straws

to fabricate disputed issues of material fact in order to avoid summary judgment.  The

Opposition is a hodgepodge of speculation fueled by piling inference upon inference based on a

factually incorrect foundation.   As such, the Opposition fails to establish a genuine issue of

material fact to avoid summary judgment. *See Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir.

2008) (holding that the nonmoving party on a summary judgment motion cannot create a genuine

issue of material fact through "mere speculation or the building of one inference upon another").

---

[1]   All capitalized terms used herein have the meanings given to them in VCLF's opening *Memorandum in Support of Its Motion for Partial Summary Judgment* (ECF Doc. No. 142, the "Opening Brief"), unless otherwise noted herein.  As in VCLF's Opening Brief, witness declarations are cited herein by the witness's last name and the paragraph or exhibit letter (*e.g.*, "Clarke Dec. ¶ __" or "Ken McCoy Dec. Ex. __").

Moreover, the Opposition is but the latest manifestation of Black Diamond's strategy to prolong

this litigation by misconstruing the history of this commercial dispute to paint itself as the victim

of litigation that it instituted two years ago in the wrong forum trying to obtain improper

advantage.  *See* ECF Doc. No. 33 (granting VCLF's motion to transfer this suit to this Court and

denying Black Diamond's motion to remand to New York state court).

Indeed, when boiled down to its essence, Black Diamond's fragile house of cards in

opposition to summary judgment is constructed as follows:

1.  It has identified a mere six emails out of more than 30,000 documents produced by
    VCLF and Iron Management that it asserts are relevant to the question of whether
    VCLF solicited alternative financing during the period of September 22, 2015–
    October 23, 2015.

2.  It misreads those six emails.  *None* support any suggestion or inference of solicitation
    of alternative financing.

3.  It has submitted conclusory declarations that contradict the allegations in its own
    Complaint (Ex. 49 to ECF Doc. No. 3), and the indisputable facts that Black Diamond
    repudiated the Commitment Letter in writing, not once, but four times on October 23,
    2015.[2]

4.  It relies on the speculation in its declarations and its misreading of the six emails to
    argue that VCLF's Motion is premature because deposition discovery is supposedly
    required.

The law is clear, however, that a party cannot avoid summary judgment merely by

drafting opposing declarations to manufacture issues of fact and hoping that even more discovery

---

[2]   As noted below, VCLF has now taken the deposition of Hugo Gravenhorst, the Black Diamond managing
director who ███████████████████████████  That deposition has only served to confirm Black Diamond's bad faith and
repudiation during the September–October 2015 period, as among other things, Mr. Gravenhorst acknowledged
that ███████████████████████████  It has also confirmed, as
expected, that Black Diamond has wrongfully withheld certain key documents on the basis of a tortured claim
of privilege, and otherwise failed to conduct a full collection of its custodians' files in order to respond to
VCLF's discovery requests, as described in the October 13, 2017 letter sent to Black Diamond's counsel,
attached as Exhibit A to the Declaration of William M. Sullivan, Jr., filed herewith.

through depositions will assist its position in this litigation.  After two years of litigation, the time has come for this Court to declare Black Diamond's core contentions meritless, as they are.

## ARGUMENT

### I.   THIS MOTION IS RIPE FOR REVIEW

Rather than establishing the presence of facts, Black Diamond uses more than half of the argument section of its Opposition to dispute the ripeness of this Motion, alleging that it is premature because depositions had not yet begun when the Motion was filed.  *See* Opp. 14-19. This argument is based on the false assumption that depositions would actually help Black Diamond in opposing the Motion.  In light of the massive record of documents and communications in this case, however, Black Diamond cannot demonstrate how fact depositions will be useful to the disposition of any issue in this Motion.  The notion that depositions may unearth additional facts to defeat this Motion is incredibly unlikely in light of the record, which unequivocally demonstrates that VCLF did not solicit closing financing in contravention of the Commitment Letter prior to its repudiation by Black Diamond on or before October 23, 2015. As the Fourth Circuit has recognized, a court can consider a motion for summary judgment where "the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Dufau v. Prince*, – F. App'x –, 2017 WL 3188402, at *2 (4th Cir. July 27, 2017) (quoting *Ingle ex rel. Estate of Ingle v. Yelton*, 439 F.3d 191, 195 (4th Cir. 2006)).

Moreover, nowhere in its Opposition has Black Diamond pointed to any extrinsic evidence to support the notion that it did not repudiate the Commitment Letter on or prior to October 23, 2015 (and indeed it cannot do so).  Rather, Black Diamond attempts to create issues of material fact solely based on self-serving declarations with statements *contradicting* the declarations filed by VCLF in support of this Motion.  *See, e.g.*, Ehrlich Dec. ¶ 16; Harris Dec.

¶¶ 19-20; McMurrough Dec. ¶ 15 (stating that Mr. Clarke agreed orally to terms modifying the Commitment Letter on October 22, 2015); *see also* Clarke Dec. ¶ 16 (affirming that he never agreed to those terms).  Black Diamond, however, cannot rely on declarations that "simply substitut[e] the 'conclusory allegations of the complaint . . . with conclusory allegations of an affidavit" to create an issue of material fact.  *Giles v. Ulep*, No. 1:13cv179 (LO/JFA), 2014 WL 1744825, at *5 (E.D. Va. Apr. 30, 2014) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

In addition, Black Diamond's own documents contradict its new-found assertion (after two years) of an October 22nd *oral* agreement to modify the Commitment Letter (which, of course, expressly prohibits oral modifications).  If there had been an oral agreement reached on October 22, 2015, as Black Diamond's Mr. Ehrlich now contends, then the emails he had Mr. Gravenhorst send on October 23, 2015, would have said something to the effect that, "This email confirms the terms we agreed to yesterday," rather than merely asking for VCLF's agreement to Black Diamond's new, materially different lending terms.  And it would not have taken four *separate* emails from Mr. Gravenhorst (with no responses from VCLF), none of acknowledges any of the others, to have memorialized that alleged oral agreement.  Mr. Gravenhorst's emails are all the more curious since he has no recollection of ever speaking with Mr. Clarke or anyone at VCLF.

A court is also permitted to consider a summary judgment motion where the nonmoving party "had the opportunity to conduct, but [was] slow to pursue, discovery."  *Mann v. Princeton Cmty. Hosp. Ass'n, Inc.*, 956 F.2d 1162, at *1 (4th Cir. Mar. 3, 1992) (table).  As Black Diamond accurately notes, discovery has been ongoing for nearly a year.  The parties had met and conferred repeatedly about scheduling depositions, but depositions were continuously extended

4

by *Black Diamond*'s now resolved motion to compel further document production.  It has been

*Black Diamond*, not VCLF, which has delayed prosecution of the merits of this case.  Indeed,

Black Diamond's complaints about VCLF's (and related non-parties') purportedly slow progress

in turning over documents ring hollow.  Months and months have passed since VCLF and related

non-parties began producing documents, and Black Diamond still has no documentary evidence

to support its case.

## II.    BLACK DIAMOND CANNOT IDENTIFY ANY EVIDENCE OF SOLICITATION BY VCLF PRIOR TO OCTOBER 23, 2015 THAT RESULTED IN A MATERIAL BREACH OF THE COMMITMENT LETTER

### A.  The Communications Identified by Black Diamond as Solicitations Did Not Breach the Commitment Letter's Exclusivity Provision Because They Were Solicitations for Take-Out, Not Closing, Financing

Trying to create an issue of material fact with respect to solicitation by VCLF, Black

Diamond points to just six emails in an effort to establish that VCLF solicited alternative

financing in contravention of the parties' Commitment Letter.  (*See* Opp. 8-9.)

Phillips Dec. Exs. V, W.

Phillips Dec. Exs. X–AA.  All of these emails,

however, on their face reflect that Mr. McCoy was simply seeking take-out financing to quickly

pay off the Black Diamond financing—whose interest rate was an onerous 17% per annum and

carried with it exorbitant fees—*after* the closing of the VCLF–Black Diamond transaction.

5

The provision from the Commitment Letter that Black Diamond cites for the proposition

that the Commitment Letter barred solicitation even of post-closing take-out financing says no

such thing.  Under that provision, VCLF agreed that it would not "solicit or accept an offer by

any person other than Black Diamond of any debt or equity financing for the purpose of

facilitating in any manner *the consummation* of the transactions contemplated by the VCLF

APA."  Phillips Dec. Ex. A, at BDCF-00028159 (emphasis added).  It is clear on its face that

what was forbidden was solicitation of the same kind of financing Black Diamond had

committed to provide—financing to facilitate the *consummation—i.e.*, the closing—of the

VCLF–Patriot transaction.  This provision is not ambiguous (and Black Diamond does not argue

that it is).  Yet, Black Diamond ignores the express language of this provision and improperly

suggests it covers *any* financing that VCLF might obtain *prior to* the consummation of the

transaction, even if it would not facilitate the consummation of the transaction.  *See* Opp. 2.

Because this provision did *not* prohibit VCLF from seeking subsequent "take-out financing,"

financing that would provide VCLF money to *pay Black Diamond* pursuant to the terms of the

Commitment Letter, which were to be memorialized in the parties' never-drafted financing

agreement, any pre-closing effort by VCLF to line up that financing was not a violation of the

Commitment Letter.

Mercuria was one potential, and ultimately unsuccessful, candidate for VCLF to obtain

inventory financing *after* the closing of the VCLF–Patriot transaction, so that VCLF could pay

off the onerous Black Diamond loan while maintaining enough working capital to operate the

Federal 2 Mine.  This type of financing was not, and could not have been used, in order for

VCLF to consummate the APA with Patriot.  Mercuria and Black Diamond are not competitors;

Mercuria's business is limited to "inventory financing," in which the amount of Mercuria's loan

is dependent upon the borrower's inventory output.  *See* Jason McCoy Dec. ¶ 12.  With respect

to VCLF, Mercuria's loan would have been dependent upon the coal output of the Federal 2

Mine.  Therefore, any financing that Mercuria would have provided VCLF would not have been

used to facilitate "consummation of the *transactions contemplated by the VCLF APA*"; rather,

such financing would have been used to pay off VCLF's obligations to Black Diamond *after*

VCLF and Black Diamond closed on the transaction contemplated by the Commitment Letter.

Mr. McCoy's September 25, 2015 email to Mr. Darden (which had no further follow-up)

similarly, on its face, pertained only to take-out financing.  As the pre-September 21st

correspondence between Mr. McCoy and Mr. Darden makes clear, Mr. Darden was Mr.

McCoy's friend and mentor, with whom Mr. McCoy would occasionally discuss financing

opportunities.  The timing of Mr. McCoy's September 25th email makes clear that he could not

have been soliciting *closing* financing from Mr. Darden:  the closing of the VCLF–Patriot

transaction was, at that time, only weeks away, but Mr. McCoy did not mention an amount of

financing that he needed to close on the VCLF–Patriot transaction without Black Diamond.  This

confirms that, to the extent Mr. McCoy was seeking any financing from Mr. Darden, it was to

replace the Black Diamond loan after closing, not before.

Mr. McCoy's statement that he would rather Mr. Darden "get this $ as opposed to BD" (a

phrase he used in a separate email that day to Teneo's Vince Mutolo and Ken Miller) is

consistent with Mr. McCoy's request for take-out financing from Mr. Darden.  If VCLF did not

obtain post-closing take-out financing from a different source, it would have had to continue to

pay exorbitant fees and interest to Black Diamond.  Repaying Black Diamond's financing after

the closing, however, would have stopped that, and had the result of VCLF paying further

interest and fees at a lesser rate on the take-out financing to Mr. McCoy's trusted business

associates, such as Mr. Darden.[3]  Mr. McCoy's turn of phrase in his September 25th emails is

therefore fully consistent with the fact that, at no time on and after September 21, 2015, did he

solicit anything other than take-out financing.

### B. Even If These Communications Could Somehow Be Considered Solicitations for Closing Financing, Black Diamond Cannot Establish That Such Conduct Resulted in a Material Breach of the Commitment Letter

Even if Mr. McCoy's emails sought financing "alternative" to Black Diamond's

financing, these communications occurred a mere four days after the Commitment Letter was

executed.  Nothing resulted from these limited communications which affected VCLF's or Black

Diamond's performance under the Commitment Letter.  Even if Mr. McCoy's September 25,

2015 communication was considered a breach of the Commitment Letter, such a breach is

immaterial as a matter of law.

Black Diamond cannot point to any evidence to establish that Mr. McCoy's emails

constituted a material breach of the Commitment Letter because nothing resulted from these

emails so as to "go to the root of the agreement between the parties."  *Frank Felix Assocs., Ltd.

v. Austin Drugs, Inc.*, 111 F.3d 284, 289 (2d Cir. 1997).  Under New York law, a breach of

contract is considered material so as to excuse the other party's performance only where the

"breach of the contract is so substantial that it defeats the object of the parties in making the

contract."  *Id*.  "It is well-settled that, to find that there was a material breach, the departure from

the terms of the contract or defects of performance must have pervaded the whole of the contract

or have been so essential as substantially to defeat the object that the parties intended to

accomplish. . . . [T]he right of a party to enforce a contract will not be forfeited or lost by reason

---

[3]  It is undisputed that the only reason VCLF chose to obtain financing from Black Diamond in September 2015 was that it had no other alternative:  Teneo solicited closing financing from 40 prospects, but Black Diamond was the only one to respond.

of technical, inadvertent, or unimportant omissions or defects." *Cablevision Sys. Corp. v. Town of E. Hampton*, 862 F. Supp. 875, 885 (E.D.N.Y. 1994), *aff'd*, 57 F.3d 1062 (2d Cir. 1995) (internal quotation marks and citations omitted) (cable company's unilateral rate increase for cable service two days prior to effective date of statute permitting such action was not a "material breach" of the agreement between company and town, as effect of breach on "whole of the contract [was] negligible").  A continuing of the parties' relationship following a breach evinces that the breach was non-material.  *See VFS Fin., Inc. v. Falcon Fifty LLC*, 17 F. Supp. 3d 372, 383 (S.D.N.Y. 2014) (fact that parties "continued to perform" under their agreement following a breach suggested that the breach was non-material); *Wechsler v. Hunt Health Sys., Ltd.*, 330 F. Supp. 2d 383, 419 (S.D.N.Y. 2004) (fact that parties' performance remained unaffected by the sale of non-reimbursable accounts was indicative that sale of non-reimbursable accounts was not material to parties' agreement).

Here, there was no response from Mr. Darden or anyone at Cherokee Partners to Mr. McCoy's September 25th email.  There were no further communications between anyone at VCLF and any other entity that could provide VCLF financing to consummate the VCLF–Patriot deal.  Rather, the documents that VCLF has produced, and its conduct through October 23, 2015, show that VCLF was only committed to pursuing the VCLF–Black Diamond transaction pursuant to the Commitment Letter. ███████████████████████████
█████████████████████████████████████████████████████████
███████████████████████████████████████████████████████
██████████████████████████ *See, e.g.*, Clarke Dec. ¶¶ 11-13; Potter Dec. ¶¶ 10-11, 15-26 & Exs. F, I, J, L.

Further, the party asserting a breach of contract must establish that it suffered damages as a result of the breach. *See, e.g.*, *Pot Luck, LLC v. Freeman*, No. 06 Civ. 10195(DAB), 2010 WL 908475, at *2 (S.D.N.Y. Mar. 8, 2010) (holding breach of contract claim requires proof of "damage suffered as a result of the breach"). Black Diamond cannot establish any damages because the September 25, 2015 emails from Jason McCoy did not result in Black Diamond losing its financing deal with VCLF, nor did it affect either party's ability to perform in accordance with the Commitment Letter. Since any potential "breach" caused by Mr. McCoy's September 25th emails was not material, it is legally irrelevant, and Black Diamond was still bound to perform under the Commitment Letter.

## III.   BLACK DIAMOND FAILS TO RAISE AN ISSUE OF MATERIAL FACT THAT BLACK DIAMOND REPUDIATED THE COMMITMENT LETTER ON OR PRIOR TO OCTOBER 23, 2015

Black Diamond's only attempt to defeat VCLF's argument that the record conclusively shows that Black Diamond repudiated to Commitment Letter on or prior to October 23, 2015 is an assertion that VCLF cannot establish as a matter of law that Black Diamond "unqualified[ly] and clear[ly] refus[ed] to perform" its obligations under the Commitment Letter. To do so, Black Diamond cites to three communications allegedly showing Black Diamond was prepared to proceed with financing for VCLF. Opp. 20-21 (citing Phillips Dec. Exs. P, R, RR). But these communications do not establish that Black Diamond was willing to proceed with the financing for VCLF *pursuant to the terms of the parties' Commitment Letter*, and that the October 23rd emails did not reflect an intention only to close on materially different terms. *Post hoc* email communications from Black Diamond's lawyer that were not demonstrated in fact by any actions by Black Diamond and that were sent in response to VCLF's letter notifying Black Diamond that its October 23rd communications effected a repudiation do not change this conclusion. *Id.* Moreover, it is evident that from the documentary evidence produced (*see, e.g.*, Potter Dec. Ex.

10

N) and from what the documentary evidence does *not* show, Black Diamond was, in fact, nowhere near a position to close.

The Opposition does not refute that neither Black Diamond nor its counsel ever presented any documentation setting forth the agreements that were to be drawn pursuant to the Commitment Letter.  Black Diamond did not turn over any draft loan documents to VCLF or its counsel, even as late as the last business day before the scheduled VCLF–Patriot closing date. *See* Potter Dec. ¶¶ 10-11, 17.  According to Black Diamond's counsel, since the VCLF–Black Diamond transaction was "simple" and "could have been prepared and circulated very quickly," Black Diamond still could have fulfilled its contractual obligations by drawing up the transaction documents between October 23 and October 26, 2015.  Opp. 22 (citing Harris Dec. ¶ 15).  Black Diamond's attorney on the VCLF–Black Diamond transaction, Adam Harris, a bankruptcy, not a dedicated finance or transaction lawyer (*see* https://www.srz.com/lawyers/adam-c-harris.html), provides no basis for this characterization in his declaration, aside from his general and non-specific "experience as a transactional attorney."  Harris Dec. ¶ 15.

Of course, the documents that would have been required to close with Black Diamond would not have been simple, quick to conclude or limited in number.  As the Commitment Letter makes clear, Black Diamond was to give a secured loan and become an equity interest holder. Consequently, documentation would have included, at the very least, documents necessary to evidence the loan, security agreements and interests and operating agreements or equity holder agreements proscribing, among other things, operating and governance protocols.  The only way that Black Diamond and Mr. Harris could have anticipated during the week before the scheduled closing of the VCLF–Patriot transaction that documenting the multi-faceted deal between VCLF and Black Diamond would be simple and quick is if they thought (as they apparently did) that

11

they had so much leverage that VCLF would not only agree to Black Diamond's new lending terms on October 23, 2015, but also to anything that Black Diamond would propose in related, similarly oppressive and one-sided lending/transaction documents between October 23 and October 26, 2015.   In fact, Mr. Harris's declaration effectively acknowledges the one-sided representations about simplicity and time.  He does not opine that the documents could have been finalized if they were to be negotiated:  only that he and his firm could prepare and circulate them "very quickly."

Additionally, Black Diamond does not present any evidence to rebut Black Diamond's intention to repudiate the Commitment Letter based on Black Diamond's refusal to confirm to Patriot ██████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ Potter Dec. ¶ 19 & Ex. G (emphasis added).  ████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████   ████████████████████████████████ ██████████████████ Potter Dec. Ex. H.  This further proves Black Diamond's intended repudiation, since it refused to represent that it would provide financing "consistent with its pre-existing commitment letter."

Incredibly, Black Diamond fails to acknowledge the materially different lending/transaction terms proposed in Hugo Gravenhorst's October 23, 2015 emails from those in the Commitment Letter.  *See* Clarke Dec. ¶ 16 & Ex. B; Opening Brief at 9-10.  Instead, Black Diamond asserts that Mr. Clarke, as VCLF's principal, orally agreed to the proposed BD Terms on October 22, 2015.  *See* Ehrlich Dec. ¶ 16; Harris Dec. ¶¶ 19-20; McMurrough Dec. ¶ 15.  Mr. Clarke denies that any agreement was reached, and Black Diamond offers no direct or

circumstantial evidence to support its contrary assertion other than self-serving declarations.

That said, the baselessness of this allegation is clear from what in fact happened on October 23,

2015.  First, minutes before Mr. Gravenhorst sent his first email to Mr. Clarke that day, VCLF

(including Mr. Clarke), Black Diamond, and their respective counsel held a conference call to

discuss the final items in the VCLF APA.  During that call, neither Black Diamond nor its

counsel ever mentioned that Mr. Clarke had agreed to modifications to the Commitment Letter.

*See* Clarke Dec. ¶ 15; Potter Dec. ¶ 25.  Second, when Mr. Gravenhorst sent his emails only to

Mr. Clarke and the Black Diamond business and legal team (excluding the VCLF legal team), he

never indicated that Black Diamond was memorializing an oral agreement (because he could

not), only that Black Diamond was prepared to lend on materially different terms than set forth

in the Commitment Letter and asking Mr. Clarke to confirm.  *See* Clarke Dec. Ex. B.  Third,

when Mr. Gravenhorst apparently had to modify further the new terms on which Black Diamond

would proceed three times (resulting in four separate emails that never acknowledged the

existence of the other emails), he never once explained the reasons for the changes or suggested

that they reflected some further agreement (or even discussion) with VCLF (again because he

could not).  *See id*.

     Even worse, Black Diamond's declarations directly contradict the allegations in its own

Complaint, making them quintessential examples of "self-serving" declarations.  For example, in

its Complaint, Black Diamond has alleged that "on October *23*, 2015, Black Diamond and VCLF

discussed and agreed in principle upon changes to the Commitment Letter."  Compl. ¶ 50.  Faced

with the conclusive evidence that VCLF has presented in connection with this Motion that it did

not agree to any changes to the Commitment Letter on October 23rd (Mr. Clarke has denied any

agreement was reached and not one of Mr. Gravenhorst's October 23rd emails was confirmed

orally or in writing), Mr. Ehrlich now swears in his declaration, two years after the relevant

events occurred and the Complaint was filed, and without any supporting extrinsic evidence, that

he and Mr. Clarke "came to an agreement concerning the revised terms" of the Commitment

Letter "[o]n October *22*, 2015." Ehrlich Dec. ¶ 16 (emphasis added).  The law does not permit

Black Diamond to create a disputed material fact for the purposes of summary judgment by

contradicting its own factual allegations in the Complaint.  As a result, the Court cannot even

consider Mr. Ehrlich's assertion that an oral agreement was reached on October 22, 2015, or any

assertions that fly in the face of Black Diamond's pleadings, because Black Diamond is bound

by those allegations which qualify as judicial admissions.  *See Amgen Inc. v. Conn. Retirement*

*Plans & Trust Funds*, 568 U.S. 455, 470 n.6 (2013) ("Factual assertions in pleadings and pretrial

orders, unless amended, are considered judicial admissions conclusively binding on the party

who made them."); *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999) (holding

that a "party cannot create a genuine issue of fact sufficient to survive summary judgment simply

by contradicting" a previous statement "without explaining the contradiction or attempting to

resolve the disparity").

 In an effort to avoid the clear repudiation of the Commitment Letter evidenced by the

language Mr. Gravenhorst used in each of his October 23rd emails to Mr. Clarke, the Opposition

cites to emails sent by Black Diamond's counsel *after* those emails were sent.  *Compare* Clarke

Dec. Ex. B (emails from Mr. Gravenhorst sent on Oct. 23, 2015 between 10:24 a.m. and 2:18

p.m.) *with* Phillips Dec. Exs. P, R, RR (emails from Mr. Harris sent between 6:21 p.m. on Oct.

25, 2015, and 11:57 a.m. on Oct. 28, 2015).  Mr. Gravenhorst's emails, however,

"unqualified[ly] and clear[ly]" (*see* Opp. 20-21) established Black Diamond's rejection of the

existing Commitment Letter terms by requiring VCLF to accept new material and  unreasonably

14

onerous terms substantially altering the Commitment Letter in the eleventh-and-a-half hour of the VCLF–Patriot transaction as a condition to any lending (*see* Opening Brief at 9, 18-20). That Mr. Harris may have tried two days later to "take it back" does not alter the fact that Black Diamond repudiated the Commitment Letter on October 23, 2015. Indeed, even a cursory reading of Mr. Harris's October 25, 2015 emails confirms the fact of repudiation and that Mr. Gravenhorst's October 23rd emails reflected new lending terms by Black Diamond. *See* Potter Dec. Ex. N ("Black Diamond is prepared to proceed with the consummation of the financing for VCLF *on the terms set forth in Mr. Gravenhorst's emails to Mr. Clarke from Friday, October 23rd.*") (emphasis added).

All of the "circumstances surrounding the alleged repudiation," which Black Diamond acknowledges the Court must consider (*see* Opp. 21), are uncontroverted and definitively establish that Black Diamond was not prepared to finalize an agreement and complete the transaction pursuant to the terms of the Commitment Letter. Therefore, the court should grant summary judgment that Black Diamond repudiated the Commitment Letter on or prior to October 23, 2017, just as several other courts applying New York law have. *See, e.g., Howard v. Bioworks, Inc.*, 83 A.D.3d 1588, 1588–89 (4th Dep't 2011) (affirming summary judgment on liability for anticipatory repudiation based upon defendant's communication that it would not perform its contractual obligations); *Comp. Possibilities Unlimited, Inc. v. Mobil Oil Corp.*, 301 A.D.2d 70, 77-80 (1st Dep't 2002) (affirming grant of summary judgment that plaintiff repudiated contract by entering into an agreement with a third-party); *Schonzeit v. Wiesen*, 154 A.D.2d 291 (2d Dep't 1989) (affirming grant of summary judgment on repudiation counterclaim); *York Agents, Inc. v. Bethlehem Steel Corp.*, 36 A.D.2d 62, 64 (1st Dep't 1971) (affirming grant of summary judgment that defendant repudiated contract by asserting it would

15

not remain bound to the existing terms and that it would proceed with the transaction only upon

new proposed terms).

## <u>CONCLUSION</u>

For the reasons stated above and in its Opening Brief, VCLF respectfully requests that

the Court grant summary judgment in its favor and against Black Diamond finding that:

1.  VCLF did not solicit alternative closing financing prior to October 23, 2015, and did not breach the Commitment Letter; and

2.  Black Diamond breached and repudiated the Commitment Letter by (a) refusing to ever produce draft transaction documents reflecting the terms of the Commitment Letter, (b) expressly repudiating its funding obligation on October 21, 2015, and (c) demanding that VCLF close on the October 23 BD Terms.


Respectfully submitted,

Dated: October 13, 2017          */s/ Patrick J. Potter*
McLean, Virginia          Patrick J. Potter (VSB No. 39766)
PILLSBURY WINTHROP SHAW PITTMAN LLP
1650 Tysons Boulevard, Suite 1400
McLean, Virginia 22102-4856
Telephone:  (703) 770-7900
Facsimile:  (703) 770-7901
Email:  patrick.potter@pillsburylaw.com

William M. Sullivan, Jr. (admitted *pro hac vice*)
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth Street, NW
Washington, DC 20036-3006
Telephone:  (202) 663-8027
Facsimile:  (202) 663-8007
Email:  wsullivan@pillsburylaw.com

Andrew M. Troop (admitted *pro hac vice*)
Samuel S. Cavior (admitted *pro hac vice*)
Joshua I. Schlenger (admitted *pro hac vice*)
PILLSBURY WINTHROP SHAW PITTMAN LLP
1540 Broadway
New York, New York 10036-4039
Telephone:  (212) 858-1000
Facsimile:  (212) 858-1500

16

Email:  andrew.troop@pillsburylaw.com

*Counsel to Virginia Conservation Legacy Fund,
Inc. and ERP Compliant Fuels, LLC*

17

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on October 13, 2017, I filed the foregoing *Reply Memorandum of Law in Further Support of Partial Summary Judgment* by uploading it to this Court's CM/ECF system, which will send notification of such filing to all CM/ECF participants, and that I served a copy on opposing counsel of record in this adversary proceeding by email and Federal Express overnight.

 */s/  Patrick J. Potter*
Patrick J. Potter